**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

        *-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York

1:19-cv-09227

| | |
|---|---|
| Quincy Steele Jimmy Arriola, individually and on behalf of all others similarly situated, | |
| Plaintiffs | |
| - against - | Class Action Complaint |
| Wegmans Food Markets, Inc., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Wegmans Food Markets, Inc. ("defendant") manufactures, distributes, markets, labels and sells ice cream products purporting to contain vanilla ice cream under the Wegmans brand ("Products").

2.      The Products are available to consumers from defendant's approximately 90 stores in states from Virginia to Massachusetts, and directly from defendant's website.

1

3.     The Products are sold in containers of 1.5 quarts and 1.0 pints cartons and represented as containing vanilla ice cream on the labels, in point-of-sale marketing, store display ads and print circulars and promotions, websites, television and/or radio ads.

4.     The Products include approximately eighty (80) flavors across three (3) distinct Product Lines – Regular, Premium and Organic.

5.     Within the Regular Product Line, defendant sells standard 10% milkfat ice cream and versions of ice cream modified by express nutrient content claims.

6.     No fewer than twenty-two (22), or 27.5%, of the Products purport to contain types of vanilla ice cream, some of which are indicated below.[1]

| Product Name | Statement of Identity | Product Line |
|---|---|---|
| Chocolate Chip | Vanilla Ice Cream with Chocolate Flakes | Regular |
| Cookies & Cream | Vanilla Ice Cream with Chocolate Flavored Crème Filled Cookie Pieces | Regular |
| French Vanilla | French Vanilla | Regular |
| Lactose Free* Vanilla | Lactose Free* Vanilla Ice Cream | Regular |
| Light* Cappuccino Chip | Coffee Ice Cream with Vanilla Swirls & Mocha Chips | Regular; Light |
| Light* Cookies & Cream | Vanilla Ice Cream with Cookie Pieces | Regular; Light |
| Light* French Vanilla | Light* French Vanilla Ice Cream | Regular; Light |
| Light* Peanut Butter Swirl | Vanilla Ice Cream with Real Peanut Butter Swirls | Regular; Light |
| Light* Pecan Praline | Vanilla Ice Cream with Ribbons of Caramel & Praline Pecan Pieces | Regular; Light |
| Light* Raspberry Truffle | Vanilla Ice Cream with Ribbons of Natural Raspberry & Chocolate Flavored Flakes | Regular; Light |
| Light* Vanilla | Light* Vanilla Ice Cream | Regular; Light |

---

[1] 21 C.F.R. § 135.110(f)(6) (applying identical labeling for vanilla ice cream when combined with other flavors, i.e., Neapolitan).

| Neapolitan | Chocolate, Strawberry and Vanilla Ice Creams. | Regular |
| No Sugar Added Vanilla Light | Vanilla Light Ice Cream | Regular; Light; No Sugar Added |
| Nutter Batter Premium | Vanilla Ice Cream with Peanut Butter Dough, Caramel & Peanut Butter Swirls | Premium |
| Peanut Chocolate Stampede | Vanilla Ice Cream with Peanut Butter & Fudge Swirls, Fudge Covered Peanuts, Fudge Covered Pretzels & Praline Peanuts | Regular |
| Root Beer Float | Vanilla Ice Cream with Root Beer Flavored Swirls | Regular |
| Scrapin' the Bowl | Vanilla & Chocolate Swirled Ice Cream with Chunks of Cookie Dough & Brownie Dough Pieces | Premium |
| Vanilla | Vanilla Ice Cream | Organic; Premium |
| Vanilla | Vanilla Ice Cream | Premium |
| Vanilla & Chocolate Twist | Chocolate Ice Cream Swirled with Vanilla Ice Cream | Organic; Premium |
| Vanilla and Chocolate | Vanilla and Chocolate Ice Cream | Regular |
| Vanilla Orange | Vanilla Ice Cream Swirled with Orange Sherbet | Regular |

I.   Ice Cream Products

7.      Ice cream is a year-round treat enjoyed by 96% of Americans.[2]

8.      Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[3]

9.      Ice cream is defined by a minimum of 10 percent milkfat, weighing no less than 4.5 pounds to the gallon and containing less than 1.4 % egg yolk solids.[4]

---

[2] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[3] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.
[4] 21 C.F.R. § 135.110(a)(2) ("Ice cream and frozen custard.").

10.     When ice cream has 1.4% or more egg yolk solids as part of its base, it is referred to as "french ice cream."[5]

11.     According to ice cream lore, Thomas Jefferson may have discovered vanilla ice cream when a bottle of vanilla extract accidentally spilled into the frozen milk and cream dessert he was preparing during the summer he wrote our Constitution.[6]

## II.  Vanilla is Perennial Favorite Ice Cream Flavor

12.     Vanilla is the consistent number one flavor for 28% of consumers, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

13.     The reasons for vanilla's staying power are "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[7]

14.     By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[8]

15.     The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge and sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[9]

---

[5] 21 C.F.R. § 135.110(f)(1).
[6] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013
[7] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[8] Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[9] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.

## III. Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

16.    The tropical orchid commonly known as "vanilla" does not develop its prized flavor on its own.

17.    By law, vanilla refers to the "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[10]

18.    Shortly after the passage of the Pure Food and Drugs Act of 1906, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[11]

19.    This demand could not be met by the natural sources of vanilla, leading manufacturers to devise methods to imitate vanilla's flavor and appearance.

20.    Though the Pure Food and Drugs Act was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[12]

21.    Daily headlines tell a story of a "resurgent" global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[13]

---

[10] 21 C.F.R. §169.3(c)

[11] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

[12] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[13] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

22.    While "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

23.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[14]

24.    The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities.[15]

| Type of Food Fraud | Application to Vanilla |
| --- | --- |
| ➢ Cheating on analytical tests by containing markers specifically tested for | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Cheating by giving consumers the impression the food or ingredient is present in greater amounts and/or higher quality form than it actually contains | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla bean, when the ground beans have been exhausted of flavor, and any vanilla flavor tasted may not even be due to the presence of real vanilla |
| ➢ Substitution or Replacement a food product/ingredient with an alternate food product/ingredient of lower quality | • Tonka beans, which are banned from entry to the United States, instead of vanilla beans<br>• Coumarin, phytochemical found in Tonka beans, to increase the vanilla flavor perception |
| ➢ Coloring agents to produce a | • Caramel in vanilla extracts to darken the |

_____

[14] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.
[15] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

| more attractive color | substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla[16] |
| | • Annatto and turmeric in dairy products purporting to be flavored with vanilla, to darken the color to better resemble the hue of rich, yellow butter |
| ➤ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar |
| ➤ Ingredient list deception[17] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list – "ground vanilla beans" as containing actual vanilla flavor when they are devoid of any naturally occurring vanilla flavor |
| | • "Vanilla With Other Natural Flavor" sold by flavor suppliers to manufacturers, which contains vanillin as part of the "WONF," in violation of vanilla-vanillin regulations; manufacturers then deceive consumers by labeling ingredient "natural flavor" |
| ➤ Diluting/Extending | • Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[18] |

---

[16] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

[17] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar

[18] Berenstein, 423.

➢ Compounding – "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste."[19]

- "Spiking" or "fortification" of vanilla through addition of natural flavors including vanillin, which simulates vanilla taste but obtained from tree bark

- "Flavor Compounding Is a Skilled Art and Science Designed to Produce a Flavor Perception That Seems to be Authentic or at Least Derived from a Natural Source"[20]

- 2018: According to the head of "taste solutions" at global conglomerate Kerry, "The challenge is to find a vanilla flavor that matches the taste of pure vanilla natural extracts."[21]

- The solution? "[G]et creative" and "build a compounded vanilla flavor with other natural flavors," Mr. Curtis said. "This solution can provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."

- 1911: The "public should clearly understand" that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label."[22]

## IV. What Consumers Expect from Ice Cream Labeling

25.    To prevent deception of consumers, the labeling of ice cream is divided into three

---

[19] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.

[20] Charles Zapsalis et al., Food chemistry and nutritional biochemistry. Wiley, 1985, p. 611.

[21] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

[22] Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168.

categories which differ based on factors including (1) the source(s) of the characterizing flavor, (2) the flavor which predominates, (3) the amount of each flavor component and (4) the percent of the total flavor component represented by a flavor component.[23]

26.    For ice cream, any flavor not derived from the characterizing flavor is considered an artificial flavor.

A.  Category 1 Ice Cream Products

27.    For decades, consumers have expected products containing vanilla ice cream to be exclusively flavored by real vanilla derived from the vanilla plant and contain a sufficient amount of vanilla to characterize the food.

28.    This requirement is contained at 21 C.F.R. §135.110(f)(2)(i), which states that where an ice cream contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla," in letters not less than one-half the height of the letters used in the words "ice cream."

29.    Because ice cream is a standardized food and the vanilla ingredients are subject to their own standards, the designation of the vanilla flavoring is controlled by 21 U.S.C. §343(g):

> A food shall be deemed to be misbranded –
>
> (g) Representation as to definition and standard of identity
>
> If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food.

30.    This means that where an ice cream characterized by a vanilla and does not contain

---

[23] 21 C.F.R. § 135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).

artificial flavor, its ingredient list is required to bear "the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food."[24]

31.    For vanilla ice cream, the common names of the flavorings include Vanilla Extract, Concentrated Vanilla Extract, Vanilla Flavoring and Concentrated Vanilla Flavoring, specified in the regulations for vanilla ingredients. *See* 21 C.F.R. §§ 169.175 to 169.178.

B.  Category 2 Ice Cream

32.    If an ice cream contains a natural characterizing flavor (i.e., vanilla) and an artificial flavor simulating it, and if the natural flavor predominates, a non-misleading label would be expressed in the following form:

["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream."[25] ("Category 2").

33.    Under these assumptions, 21 C.F.R. §135.110(f)(2)(ii) is applicable:

C.  Category 3 Ice Cream

34.    If an ice cream contains a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates, or if only artificial flavor is used, a non-misleading label would be expressed in the following form:

["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream."[26] ("Category 3").

V.  The Vanilla Ice Creams or Products Containing Vanilla Ice Cream Varieties are Misleading

35.    The Products' principal display panels all indicate they contain vanilla ice cream as

---

[24] 21 U.S.C. § 343(g)(2) read with 21 C.F.R. § 135.110(f)(2)(i) and 21 C.F.R. §§ 169.175 – 169.178.
[25] 21 C.F.R. § 135.110(f)(2)(ii).
[26] 21 C.F.R. § 135.110(f)(2)(iii).

part of their product name or statement of identity.

36.   The representations of the "vanilla" in the name "vanilla ice cream" are unqualified and the labels and packaging do not disclose the addition of non-vanilla flavors as part of vanilla ice cream.

37.   The Regular and/or Premium Vanilla Ice Cream Products are misleading because they do not contain the amount, type and percentage of vanilla as a component of the flavoring in the product which is required and consistent with consumer expectations.

A.   Ingredient Lists Reveal Products Contain Flavoring Not from Vanilla

38.   The front label statements of "vanilla ice cream" are understood by consumers to identify a product where the characterizing flavor is vanilla and supplied to the Products only from the vanilla plant.

39.   The Products' vanilla ice cream is not flavored only by vanilla but contains flavors derived from non-vanilla sources, which is misleading to consumers.

40.   This is revealed through the ingredient lists indicating the Products contain "natural flavors" as indicated in the sections below corresponding to the different product lines.

41.   The Products' flavor components are identical across the Products purporting to be vanilla ice cream varieties.

VI. Regular Products' Representations are Misleading

42.   For the purpose of this section, "Regular" will exclude those Products in the Regular Product Line that are modified by an express nutrient content claim.

43.   The Regular Products give consumers the impression that vanilla is the sole flavor source due to one or more of the statements or representations on the front label.

11

- "vanilla ice cream" as part of the statement of identity;[27]
- "No Artificial Colors, Flavors or Preservatives;"
- Scoops of ice cream which have orange and/or yellow hue.



44.   The above Vanilla Ice Cream Product is also misleading because the front label states "Made with Milk, Cream and Natural Vanilla Flavor."

45.   The Product's ingredient list discloses the presence of "Natural Flavor," which means that the "Natural Vanilla Flavor" is *part* of the "Natural Flavor."

46.   Consumers are misled by a material omission – failing to disclose that the flavoring component is not only comprised of "Natural Vanilla Flavor.

47.   The Premium Products contain a vignette of the vanilla flower.

---

[27] Category I.



48.    The Regular and Premium Products are not flavored only by vanilla but contain flavors derived from non-vanilla sources, which is misleading to consumers.

49.    This is revealed through the ingredient lists indicating the Regular and Premium Products contain "Natural Flavor" for the Vanilla Ice Cream and Organic Vanilla Ice Cream, below.[28]

<div style="display:flex">

Front Label



Ingredient List

**Ingredients:** Milk, Cream, Corn Syrup, Liquid Sugar, Skim Milk, Buttermilk, Milkfat, Whey, Natural Flavor, Mono- and Diglycerides, Guar Gum, Cellulose Gum, Carrageenan, Dextrose, Annatto (color).

</div>

---

[28] The flavor is listed as "Natural Flavor" for all varieties of Regular and Premium items purporting to contain vanilla ice cream.





**Ingredients:** Organic Cream, Organic Skim Milk, Organic Sugar, Organic Egg Yolks, <mark>Natural Flavor</mark>.

50.   The Products contain "Natural Flavor" as the flavoring ingredient.

51.   "Natural Flavor" means the Products contain flavor not derived from vanilla beans, which is inconsistent with an ice cream flavor represented by an unqualified "Vanilla."[29]

VII. Products Labeled as or with Vanilla Ice Cream Modified by Express Nutrient Content Claims[30]

A.   Differences between Standard Vanilla Ice Cream and Version Modified by Express Nutrient Content Claims

i.   Allowance Made for Variations in Fat, Sugar and Calories in Ice Cream

52.   Until the early 1990s, any product with "ice cream" (or a standardized food) in its name had to meet requirements set in its standards of identity which required a dairy product with "not less than 10 percent milkfat, nor less than 10 percent nonfat milk solids."[31]

53.   Around this time, express nutrient content claims were introduced, which meant

---

[29] 21 C.F.R. § 135.110(f)(2)(ii).
[30] 21 CFR § 130.10 – Requirements for foods named by use of a nutrient content claim and a standardized term.
[31] 21 C.F.R. § 135.110(a)(2).

companies could make "direct statement[s] about the level (or range) of a nutrient in a food, e.g., 'low sodium' or 'contains 100 calories,'" milkfat or sugar.[32]

54.     In all other respects, the product has to maintain conformity to the standard so consumers will not expect a product to taste and/or perform in a certain way when that product departs in significant and/or material ways from what they are accustomed to receiving.

55.     For example, instead of requiring ice cream to have 10% milkfat, "lowfat ice cream" could contain a maximum of 3 grams of total fat per serving (½ cup) and "nonfat ice cream" could contain less than 0.5 grams of total fat per serving.[33]

56.     The following table contains variations of ice cream with express nutrient content claims.

| Nutrient Content Claim + Ice Cream[34] | Difference between Modified and Standardized Ice Cream |
|---|---|
| Reduced Fat Ice Cream | • 25% less fat than a reference product[35] |
| Light Ice Cream | • 50% reduction in total fat from the reference product, or one-third reduction in calories if fewer than 50% of the calories are from fat[36] |
| No Sugar Added Ice Cream | • No amount of sugars or ingredient that contains sugars is added during processing or packaging; • The food does not contain an ingredient containing added sugars[37] |
| Low Fat Ice Cream | • Not more than 3 g of total fat per serving[38] |

---

[32] 21 C.F.R. § 101.13(b)(1).
[33] 21 21 C.F.R. § 130.10(a).
[34] 21 C.F.R. § 130.10(e) ("*Nomenclature.* The name of a substitute food that complies with all parts of this regulation is the appropriate expressed nutrient content claim and the applicable standardized term.")
[35] 21 C.F.R. § 101.62(b)(4)
[36] 21 C.F.R. § 101.56
[37] 21 C.F.R. § 101.60(c)(2)
[38] 21 C.F.R. § 101.62(b)(2)

| Nonfat or Fat Free Ice Cream | • Less than 0.5 g of fat per serving[39] |

### ii.   Performance Characteristics

57.   Modified versions of standardized foods were permitted to deviate from the standard with respect to performance characteristics like moisture content, food solids content requirements, or processing conditions.

### iii.   Ingredient Deviations

58.   In modified foods, the ingredients were required to be those permitted by the particular standard, subject to certain exceptions.[40]

59.   If an ingredient or component was specifically required by the standard, it could not be replaced or exchanged with a similar ingredient from another source unless the standard allows it, i.e., vegetable oil shall not replace milkfat in light sour cream).[41]

60.   If a standard prohibited an ingredient, that ingredient could not be added in a modified version of the food.[42]

61.   All ingredients required by a standard have to still be present in a significant amount in a modified version of the food, *viz*, at least that amount that is required to achieve the technical effect of that ingredient in the food.[43]

### B.   The Products' Representations are Misleading

62.   The Products represented as Modified Versions of the Standardized Vanilla Ice

---

[39] 21 C.F.R. § 101.62(b)(1)
[40] 21 C.F.R. § 130.10(d)(1).
[41] 21 C.F.R. § 130.10(d)(2).
[42] 21 C.F.R. § 130.10(d)(3).
[43] 21 C.F.R. § 130.10(d)(4).

Creams are misleading

63.    Two examples of Modified Ice Cream Products are represented below, the Light

Vanilla Ice Cream No Sugar Added Light Vanilla Ice Cream.

<div align="center">

Front Label       Ingredient List

</div>



**Ingredients:** Milk, Skim Milk, Buttermilk, Corn Syrup, Liquid Sugar, Cream, Microcrystalline Cellulose (Celluslose Gel), Mono- and Diglycerides, Cellulose Gum, Guar Gum, Locust Bean Gum, Carrageenan, Maltodextrin, Milkfat, Whey, <mark>Natural Flavor</mark>, Dextrose, Annatto (color), Vitamin A Palmitate.



**Ingredients:** Milk, Skim Milk, Buttermilk, Erythritol, Maltodextri, Cream, Mono- and Diglycerides, Cellulose Gel, Cellulose Gum, Locust Bean Gum, Carrageenan, <mark>Natural Flavor</mark>, Annatto (color), Rebaudioside A (Stevia Extract), Vitamin A Palmitate, Vitamin D.

64.    The Products contain "Natural Flavor" as the flavoring ingredient.

65.    "Natural Flavor" means the Products contain flavor not derived from vanilla beans,

which is inconsistent with an ice cream flavor represented by an unqualified "Vanilla."[44]

66.    Vanilla ice cream modified by an express nutrient content claim requires that the

---

[44] 21 C.F.R. § 135.110(f)(2)(ii).

flavor is derived exclusively from the characterizing flavor, vanilla, and in sufficient amounts to characterize the product – it is a required ingredient in a Category 1 vanilla ice cream.

67.   The standard for vanilla ice cream does not permit the Products to replace or substitute the flavors obtained from a non-vanilla source for flavors obtained from the vanilla plant, i.e., vanilla flavoring or vanilla extract.  *See* 21 C.F.R. § 130.10(d)(2).[45]

68.   Vanilla ice cream modified by express nutrient content claim does not permit non-vanilla bean derived flavors in a Category 1 vanilla ice cream where there is an unqualified representation the food is flavored by the characterizing flavor. *See* 21 C.F.R. § 130.10(d)(3).[46]

69.   The prohibited ingredient or ingredient component in the Products is the non-vanilla part of the "Natural Flavor."

70.   Because "Natural Flavor" is not permitted by the standard, it is by definition used in excess of levels provided for by the standard.

71.   Even if "Natural Flavor" was permitted in a Category 1 vanilla ice cream, the Products' labels would still be misleading because the ingredient lists do not identify the "Natural Flavors" with an asterisk, such as "*Ingredient(s) not in regular vanilla light ice cream" or "*Ingredient(s) in excess of amount permitted in regular vanilla light ice cream."[47]

---

[45] 21 C.F.R. § 130.10(d)(2) ("An ingredient or component of an ingredient that is specifically required by the standard (i.e., a mandatory ingredient) as defined in parts 131 through 169 of this chapter, shall not be replaced or exchanged with a similar ingredient from another source unless the standard, as defined in parts 131 through 169 of this chapter, provides for the addition of such ingredient (e.g., vegetable oil shall not replace milkfat in light sour cream); 21 C.F.R. § 135.110(f)(2)(i)

[46] 21 C.F.R. § 130.10(d)(3) ("An ingredient or component of an ingredient that is specifically prohibited by the standard as defined in parts 131 through 169 of this chapter, shall not be added to a substitute food under this section."); 21 C.F.R. § 135.110(f)(2)(i)

[47]   21 C.F.R. § 130.10(f)(2) ("Ingredients not provided for, and ingredients used in excess of those levels provided for, by the standard as defined in parts 131 through 169 of this chapter, shall be identified as such with an asterisk in the ingredient statement, except that ingredients added to restore nutrients to the product as required in paragraph (b) of this section shall not be identified with an asterisk. The statement "*Ingredient(s) not in regular ___" (fill in name of the traditional standardized food) or "*Ingredient(s) in excess of amount permitted in regular ___" (fill in name of the traditional standardized food) or both as appropriate shall immediately follow the ingredient statement in the same type size.); 21 C.F.R. § 135.110(f)(2)(i).

C.   <u>Express Nutrient Content Claim Does Not Relate to Flavoring Used in Ice Creams</u>

72.   The only authorized deviations from the standard by express nutrient content claims are those that (1) are necessary to make the nutrient content claim, (2) to ensure that the food meets the performance characteristics of the traditional standardized food and (3) to ensure the food is not nutritionally inferior to the traditional standardized food.

73.   The allowed modifications to standardized foods related to direct statements about the level or range of a nutrient in the food such as fat, sugar and calories, <u>as opposed to the amount and composition of the flavoring</u>.

74.   Modification of a food by an express nutrient content claim does not provide justification or authority for deviating from the vanilla flavor requirement of a Category 1 ice cream because:

- The nutrient content claims modify the term "ice cream" by adjusting the nutrient composition of the Products;

- the modified products are called "vanilla *light* ice cream" and not "*light* vanilla ice cream,"[48]

- Vanilla and its flavorings are not nutrients, but flavorings;

- Vanilla extract and vanilla flavorings are insignificant sources of calories and contributors to fat and sugar content and other nutrients which are subject to express nutrient content claims; and

- Simple enough to designate an ice cream with the term "vanilla flavored" or a similar variation, the amount, type and/or percentage of vanilla is

---

[48] 21 C.F.R. § 130.10(e) ("Nomenclature. The name of a substitute food that complies with all parts of this regulation is the appropriate expressed nutrient content claim and the applicable standardized term.")

not permitted to be adjusted – companies have viable alternatives to making modified versions of vanilla ice cream such that no justification for replacing vanilla or using less of it.

VIII.   French Ice Cream Varieties are Misleading

75.   The term "French" is not a license to provide consumers a different amount, type and modify the amount of vanilla or proportion of vanilla compared to the total flavoring ingredients percentage of vanilla, when it comes to ice cream.

76.   The descriptor "French" or "french" preceding "vanilla" does not modify the word "vanilla."

77.   Instead, "French" means amount the ice cream base contains 1.4% or more egg yolk solids.[49]

78.   The egg yolk solids with the vanilla distinguish a french vanilla ice cream variant by contributing to a:[50]

- smoother consistency and mouthfeel than typical vanilla ice cream;

- caramelized, smoky and custard-like taste; and

- pale-yellow color.

79.   The French Vanilla Ice Cream Products are misleading because though the front label states "French Vanilla Ice Cream," it does not derive its characterizing flavor exclusively from vanilla beans, as indicated through the ingredient list which lists "Natural Flavor."

---

[49] 21 C.F.R. § 135.110(f)(1) ("The name of the food is 'ice cream'; except that when the egg yolk solids content of the food is in excess of that specified for ice cream by paragraph (a) of this section, the name of the food is 'frozen custard' or 'french ice cream' or 'french custard ice cream'.)
[50] Sheela Prakash, What's the Difference Between Vanilla and French Vanilla Ice Cream?, The Kitchn, June 7, 2017.



**Ingredients:** Milk, Cream, Corn Syrup, Liquid Sugar, Skim Milk, Buttermilk, Custard Base (Sugar, Sugared Egg Yolk [Egg Yolks, Sugar], Water), Milkfat, Whey, Natural Flavor, Mono- and Diglycerides, Guar Gum, Cellulose Gum, Carrageenan, Dextrose, Annatto (Color).

IX. "Natural Flavor" is Not Consistent with What Consumers and Law Requires for Vanilla Ice Cream

80.    All of the Products across all Product Lines indicate they contain "Natural Flavor" as the only flavoring ingredient listed on the ingredient list, making them all misleading since they purport to contain vanilla ice cream.

A.    Natural Flavor is not a Synonym for Vanilla Flavor or Vanilla Extract in the Products

81.    A natural flavor in the context of ice cream is different than a natural flavor provided for by the general flavoring regulations.

82.    In ice cream, a natural flavor means a flavor that was derived from the product whose

flavor is simulated – i.e., in a product which is, or contains vanilla ice cream, a natural flavor means the flavor derived from the vanilla plant.[51]

83.    "Natural Flavor" is listed on the ingredient list because the flavor (i) imparted to the Products is not solely and exclusively supplied by the Natural Vanilla Flavor and (ii) contains flavor not derived from vanilla beans.

84.    Defendant's listing of "natural flavor" is not another way to refer to the exclusively vanilla flavoring ingredients that consumers expect, and the law requires.

85.    These exclusively vanilla ingredients – vanilla flavoring, vanilla extract, etc. – differ only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than this amount.[52]

86.    If the Products contained any of the exclusively vanilla ingredients, there would not be a need to declare or identify "Natural Flavor" in the ingredient list.

87.    Additionally, it would be illogical to use a more expensive and higher quality ingredient (vanilla extract or vanilla flavoring) but designate it with a vague term perceived less favorably by consumers due to its opaque components, lower cost and ubiquity.

B.    Natural Flavor does not refer to the Standardized Vanilla-Vanillin Ingredients

88.    The vanilla standards reference three vanilla-vanillin combinations – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[53]

89.    The standardized vanilla ingredients – vanilla extract, vanilla flavoring, concentrated vanilla flavoring, and vanilla powder – could be understood as complying with the requirements

---

[51] Compare 21 C.F.R. § 101.22 (natural flavor) with 21 C.F.R. § 169.175 (Vanilla extract.) and § 169.177 (Vanilla flavoring.).
[52] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.); also concentrated versions of each of these.
[53] 21 C.F.R. § 169.180, § 169.181, § 169.182.

for "natural flavor."[54]

90.    However, the "vanillin" referred to in the standardized combination ingredients is produced from non-vanilla bean materials, like wood pulp, coal tar or plant fiber.

91.    While vanillin is a main flavoring component of vanilla, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant.

92.    This type of "natural vanillin" is rarely produced, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

93.    For the purposes of ice cream flavor labeling, vanillin (from non-vanilla sources) cannot be designated as a "natural flavor" because it implies it derives from vanilla beans, whose flavor it simulates.[55]

94.    This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

95.    This means if a vanilla flavor is derived from any source other than vanilla, it is accurately designated as an artificial flavor.[56]

96.    Therefore, the standardized vanilla-vanillin combination ingredients are not the ingredients used in the Products but for some reason, designated as "natural flavor."

C.    "Natural Flavor" May Refer to "Vanilla with Other Natural Flavors" ("Vanilla WONF")

97.    A typical ingredient used when giving consumers less vanilla than they are expecting and entitled to is "Vanilla With Other Natural Flavors" or "Vanilla WONF."

98.    When adding complicated flavors to a product, a flavor supplier typically mixes

---

[54] 21 C.F.R. § 169.175 (Vanilla extract.), § 169.176 (Concentrated vanilla extract.), § 169.177 (Vanilla flavoring.), § 169.178 (Concentrated vanilla flavoring.) and § 169.179 (Vanilla powder.).
[55] 21 C.F.R. § 101.22(a)(3)
[56] In contrast to the regulations at 21 C.F.R. § 101.22.

various flavors together into one package, for reasons including convenience and processing.

99.   Since vanilla is the world's second most valuable flavor ingredient, flavor suppliers and the companies they work with are continually exploring new ways to increase profits at the margins, which is at the expense and to the detriment of consumers and in violation of law.

100.   By formulating a flavor ingredient that includes an unspecified amount of vanilla – likely less than half – and compounding, extending and/or diluting it with "other natural flavors," or flavors not derived from vanilla, they can plausibly call this ingredient "Vanilla With Other Natural Flavors."

101.   No standardized vanilla ingredients provide for "other natural flavors" to be added with a vanilla flavoring or vanilla extract because this would result in the spiking or fortification of the vanilla flavor.

102.   On the Products' ingredient lists, "Vanilla WONF" is designated through the term "Natural Flavor."[57]

103.   In an ice cream represented as flavored only from the characterizing flavor, it is:[58]

1.   deceptive and unlawful to include flavoring that is not derived from the characterizing flavor, vanilla; and

2.   misleading and unlawful to simulate, reinforce and "extend" the taste of vanilla through "Natural Flavor" because consumers will:

i.   think they received more real vanilla than they actually did;

ii.   expect all of the vanilla flavor or taste imparted by the Products to be from vanilla beans; and

---

[57] The natural flavor as part of the vanilla ice cream component is distinct from any natural flavor that may be used in the inclusions such as the chocolate chips or cookie dough.
[58] 21 C.F.R. § 135.110(f)(2)(i).

    iii.  pay more for such product.

X.  Coloring Misleads Consumers to Expect Products Contain More Vanilla Than They Do

104.   Many of the Products contain extracts of annatto and turmeric for coloring purposes, indicated on their ingredient lists and reproduced in the below table.

105.   Annatto and turmeric extracts are often used in cheddar cheese to provide a rich yellow-orange shade evocative of milkfat associated with butter, produced by dairy cattle in the United States.

106.   No allegation is made with respect to how annatto and turmeric are declared or about their use, which is specifically permitted by regulation.[59]

107.   The added coloring provided to the Products by annatto and turmeric modifies the color of the vanilla ice creams to a color closer to a vanilla ice cream flavored exclusively by flavor from the vanilla plant.

108.   The result is a darker color as indicated below, which is similar in appearance to color of the ice cream scoops on the front labels.



109.   The darker color makes the consumer (1) less likely to question or be skeptical of the amount and type of vanilla in the Products, (2) expect the Products to be similar to other, accurately

[59] 21 C.F.R. § 101.22(k)(3)

labeled vanilla ice creams and (3) expect the Products contain more vanilla than they actually do.

XI. Products are Misleading Because They are Labeled and Named Similar to Other Products

110.  Competitor brands to defendant's are labeled as or containing vanilla ice cream and are not misleading because they do not contain non-vanilla flavoring.

A.  "French Vanilla" of Competitor and Defendant

111.  The following is an example of French Vanilla Ice Cream of defendant and a competitor product.

<div align="center">

Competitor Product[60]                              Product

</div>




Ice Cream Made with Egg Yolks, Pure
Vanilla Extract and Ground Vanilla Beans

112.  The ingredients in the Competitor Product and Product are presented below.

---

[60] Publix Premium Ice Cream, French Vanilla 0.5 GL (1.89 LT), accessed September 10, 2019.

<u>Ingredients</u>

Milk, Cream, Sugar, Corn Syrup, Stabilizer (Carob Bean Gum, Guar Gum), Pasteurized Egg Yolks, Color (Annatto And Turmeric), Pure Vanilla Extract And Ground Vanilla Beans.

<u>Competitor Product</u>

Milk, Cream, Sugar, Corn Syrup, Stabilizer (Carob Bean Gum, Guar Gum), Pasteurized Egg Yolks, Color (Annatto And Turmeric), Pure Vanilla Extract And Ground Vanilla Beans.

<u>Product</u>

Ingredients: Milk, Cream, Corn Syrup, Liquid Sugar, Skim Milk, Buttermilk, Custard Base (Sugar, Sugared Egg Yolk [Egg Yolks, Sugar], Water), Milkfat, Whey, Natural Flavor, Mono- and Diglycerides, Guar Gum, Cellulose Gum, Carrageenan, Dextrose, Annatto (color).

**Ingredients:** Milk, Cream, Corn Syrup, Liquid Sugar, Skim Milk, Buttermilk, Custard Base (Sugar, Sugared Egg Yolk [Egg Yolks, Sugar], Water), Milkfat, Whey, Natural Flavor, Mono- and Diglycerides, Guar Gum, Cellulose Gum, Carrageenan, Dextrose, Annatto (Color).

B.   <u>"Vanilla" of Competitor and Defendant</u>

113.   The following is an example of Vanilla Ice Cream of defendant and a competitor product.

<u>Competitor Product</u>            <u>Product</u>

 



**INGREDIENTS:** CREAM, SKIM MILK, CANE SUGAR, EGG YOLKS, <mark>VANILLA EXTRACT</mark>.

**Ingredients:** Organic Cream, Organic Skim Milk, Organic Sugar, Organic Egg Yolks, <mark>Natural Flavor</mark>.

114.   The competitor product lists "Pure Vanilla Extract" on its ingredient list and does not indicate the presence of other flavors not derived from vanilla, such as "Natural Flavor," as listed in defendant's Products.

C.   "Vanilla Light Ice Cream" of Competitor and Defendant

115.   The following is an example of Vanilla Light Ice Cream of defendant and a competitor product.

Competitor Product              Product

 

**Ingredients:** Milk, Skim Milk, Buttermilk, Liquid Sugar, Corn Syrup, Cream, Milkfat, Water, Whey, Maltodextrin, <mark>Vanilla Extract</mark>, Mono- and Diglycerides, Guar Gum, Xanthan Gum, Carrageenan, Dextrose, Annatto Color, Vitamin A Palmitate.

**Ingredients:** Milk, Skim Milk, Buttermilk, Corn Syrup, Liquid Sugar, Cream, Microcrystalline Cellulose (Celluslose Gel), Mono- and Diglycerides, Cellulose Gum, Guar Gum, Locust Bean Gum, Carrageenan, Maltodextrin, Milkfat, Whey, <mark>Natural Flavor</mark>, Dextrose, Annatto (color), Vitamin A Palmitate.

D. Misleading to Have Identical or Similar Product Names Where Significant Differences in Product Quality or Composition

116. Product names for ice cream are established through application of the relevant regulations.

117. This product naming framework is intended to ensure that products of different quality, i.e., one product contains a greater amount, type and/or proportion of a characterizing and valuable ingredient, are not named in such a way that the consumer will be deceived into purchasing the lower quality product under the false impression that it contains the equivalent amount of said ingredients or components. *See* 21 C.F.R. § 135.110(f) and 21 C.F.R. § 102.5(a) ("General principles.").[61]

XII. Conclusion

118. The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

119. Had Plaintiff and Class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

120. The Products contain other representations which are misleading and deceptive.

121. As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $4.79, per 1.5 quart (1.42L) (across the Products), excluding tax – compared to other similar products represented in a non-misleading way.

---

[61] "The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods."

Jurisdiction and Venue

122.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

123.   Plaintiff Quincy Steele is a citizen of Pennsylvania and seeks to represent a class of all citizens of Pennsylvania who purchased any of the relevant Products during the statutes of limitation.

124.   Plaintiff Jimmy Arriola is a citizen of New York and seeks to represent a class of all citizens of New York who purchased any of the relevant Products during the statutes of limitation.

125.   Plaintiffs will seek amendment to include affected persons from States other than Pennsylvania and New York who will represent classes of citizens from their respective States.

126.   Defendant Wegmans Food Markets, Inc. is a New York corporation with a principal place of business in Rochester, New York.

127.   Since plaintiff Steele is a citizen of Pennsylvania and defendant is a citizen of New York, diversity of citizenship is satisfied.  28 U.S.C. § 1332(d)(2)(A) ("Under CAFA, [t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant").

128.   Certain exceptions preclude diversity jurisdiction. 28 U.S.C. § 1332(d)(4).

129.   The "local controversy" exception does not apply because less than two-thirds of the putative class members are citizens of New York.

130.

131.   Under the "local controversy" exception, a district court must decline jurisdiction if "(1) more than two-thirds of the putative class members are citizens of the state in which the action

was originally filed; (2) there is at least one defendant from whom `significant relief' is sought by the class members, whose alleged conduct forms a `significant basis' for the asserted claims, and who is a citizen of the state in which the action was originally filed; (3) the principal injuries suffered by the class were incurred in the state in which the action was originally filed; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the past three years." *Green v. Sweetworks Confections, LLC*, No. 18-cv-902 (LTS) (SN) (S.D.N.Y. Aug. 21, 2019) quoting 28 U.S.C. § 1332(d)(4)(A).

132. At bar, the "local controversy" exception is not satisfied because (1) less than two-thirds of proposed class members are citizens of New York.

133. This fact can plausibly be alleged because defendant has "more than ninety stores across seven states" – Maryland, Massachusetts, New York, New Jersey, North Carolina, Pennsylvania and Virginia.[62]

134. Forty-seven (47) of defendant's stores are located in New York and at least forty-three (43) are located in the states other than New York where it has stores.

135. For more than two-thirds of class members to be citizens of New York, defendant's would need to get two-thirds (66.6%) of its customers from New York, even though its stores in New York comprise 52.2% of its total stores.

136. Defendant's stores serve a population of 73,103,961 citizens based on the 2019 population estimates contained in the below table.[63]

---

[62] https://www.wegmans.com/stores.html
[63] https://simple.wikipedia.org/wiki/List_of_U.S._states_by_population

| State | Population |
|-------|-----------|
| Maryland | 6,042,718 |
| Massachusetts | 6,902,149 |
| New York | 19,542,209 |
| New Jersey | 8,908,520 |
| North Carolina | 10,383,620 |
| Pennsylvania | 12,807,060 |
| Virginia | 8,517,685 |

137.  New York contains 26.7% of the population who have defendant's stores in their state.

138.  For the local controversy exception to apply, defendant would need to receive more than two-thirds of its customers from a state that contains less than 27% of all possible customers across seven other states.

139.  Further, all of defendant's stores in New York, save one which was recently opened in Brooklyn, are located in the less populated region of the State and outside of the populous downstate area including New York City and Long Island.

140.  Under the "home state controversy" exception to CAFA, a district court "shall decline to exercise jurisdiction" if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

141.  For the same reasons that the local controversy exception does not apply, the home state controversy does not apply.

142.  This is because less than two-thirds of the members of all proposed plaintiff classes are citizens of New York. 28 U.S.C. § 1332(d)(4)(B).

143.  Defendant is a citizen of New York because it is incorporated in New York and has

its principal place of business in New York. *Andrews v. Citimortgage, Inc.*, No. 14-cv-1534 (JS)(AKT) (E.D.N.Y. Mar. 31, 2015) ("[a] corporation has dual citizenship for purposes of a federal court's diversity jurisdiction under 28 U.S.C. § 1332; namely, it is a citizen of the state of its incorporation and of the state where it has its principal place of business.").

144.   Under 28 U.S.C. § 1391(c)(2), defendant, a corporation, is considered a resident "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question...."). *Gen. Elec. Capital Corp. v. Titan Aviation, LLC*, No. 06-cv-4795 (LTS)(FM), 2007 WL 107752, at *6 (S.D.N.Y. Jan. 16, 2007) ("A corporate entity or multi-member partnership is considered a resident of any district where it is subject to personal jurisdiction.")

145.   Since New York has more than one judicial district and defendant is a corporation subject to personal jurisdiction in New York at the time of filing, defendant is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d); *Abergel v. Atlas Recovery Sober Living*, No. 19-cv-6339 (CM) (S.D.N.Y. Aug. 19, 2019) ("Where a state has more than one judicial district, a defendant corporation generally "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d)").

146.   Because defendant is deemed to reside in this judicial district, venue is proper in this district.  28 U.S.C. § 1391(b)(1) ("Venue in General. – A civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located").

147.   In 2016, defendant's stores had sales of $7.9 billion across all products.

148.   Though the Products identified here are a small fraction of defendant's total products, the aggregate amount of defendant's total sales means that even if the Products identified are a small percentage of the total, it is sufficient to exceed $5,000,000 exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

149.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

150.   A substantial part of events and omissions giving rise to the claims occurred in this District and State.

<div align="center">Parties</div>

151.   Plaintiff Quincy Steele is a citizen of Pike County, Pennsylvania.

152.   Plaintiff Jimmy Arriola is a citizen of Bronx County, New York.

153.   Defendant is a New York corporation with a principal place of business in Rochester, New York, Monroe County.

154.   During the class period, Plaintiffs purchased one or more of the Products identified herein for personal use, consumption or application based on the above representations, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

155.   Plaintiffs would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<div align="center">Class Allegations</div>

156.   The classes will consist of consumers in all  states where defendant operates its retail stores.

157.   Plaintiffs will represent their Pennsylvania and New York state sub-class of persons who purchased any Products containing the actionable representations during the statutes of

limitation.

158.  Plaintiffs will be joined by class representatives from the other states where defendant operates is retail stores.

159.  Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Plaintiffs and class members are entitled to damages.

160.  Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

161.  Plaintiffs are adequate representatives because her interests do not conflict with other members.

162.  No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

163.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

164.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

165.  Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>and Consumer Protection Statutes of Other States and Territories</u>

166.  Plaintiff asserts causes of action under the consumer protection statutes of Pennsylvania, Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 et. seq. and New York, General Business Law ("GBL") §§ 349 & 350;

167.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

168.   Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

169.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products are only flavored by the characterizing ingredient and contains more of the characterizing ingredient than they actually do and (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients.

170.   Plaintiff and class members relied on the representations and omissions, paying more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

171.   Plaintiff incorporates by reference all preceding paragraphs.

172.   Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount and proportion than it was and affirmatively representing the Products was flavored only by this ingredient or component.

173.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

174.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

175.   The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

176.   Plaintiff and class members reasonably and justifiably relied on these negligent

misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

177.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

178.  Plaintiff incorporates by reference all preceding paragraphs.

179.  Defendant manufactures and sells products which contain the identified characterizing ingredients and/or flavors which are desired by consumers.

180.  The Products warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

181.  Defendant's front labels informed and warranted to Plaintiff the Products contained only the characterizing ingredients to impart flavor, and that they were present in amounts sufficient to independently characterize the food and that the flavor imparted to the Products was a result of the food ingredients and not "natural flavors" or "other natural flavors."

182.  Defendant had a duty to disclose and/or provide a non-deceptive description of the Products flavoring on the front labels and knew or should have known same were false or misleading.

183.  This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

184.  Plaintiff provided or will provide notice to defendant and/or its agents, representatives, retailers and their employees.

185.  The Products did not conform to their affirmations of fact and promises due to

defendant's actions and were not merchantable.

186.  Plaintiff and class members relied on defendant's claims, paying more than they would have.

<div align="center">Fraud</div>

187.  Plaintiff incorporates by references all preceding paragraphs.

188.  Defendant's purpose was to sell products which purported to contain valuable and desired characterizing ingredient(s) or flavor(s), and represent the Products were exclusively or predominantly flavored from that ingredient and contained sufficient independent amounts of same.

189.  The Products were not flavored exclusively from the characterizing ingredient but from flavor compounds blended together and labeled as "natural flavor."

190.  Defendant's fraudulent intent is evinced by its failure to accurately indicate the Products contained flavor from non-vanilla sources on the front label, because it knows consumers prefer foods that are flavored from food ingredients instead of added flavor ingredients and contain enough of the characterizing food ingredients to flavor the Products.

191.  Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with sufficient amounts of the characterizing ingredients for the above-described reasons.

192.  Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<div align="center">Unjust Enrichment</div>

193.  Plaintiff incorporates by references all preceding paragraphs.

194.  Defendant obtained benefits and monies because the Products were not as

represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

   **WHEREFORE,** Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 4, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
_____
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

*-and-*

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com

1:19-cv-05566
United States District Court
Southern District of New York

Quincy Steele Jimmy Arriola, , individually and on behalf of all others similarly situated

Plaintiffs

- against -

Wegmans Food Markets, Inc.

Defendant

## Complaint

```
          Sheehan & Associates, P.C.
           505 Northern Blvd., #311
             Great Neck, NY 11021
             Tel: (516) 303-0552
             Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 4, 2019

  /s/ Spencer Sheehan
  Spencer Sheehan