**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Quincy Steele and Jimmy Arriola, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-09227-LLS |
| Plaintiffs, -against- | ORAL ARGUMENT REQUESTED |
| Wegmans Food Markets, Inc., | |
| Defendant. | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT</u>

FOLEY HOAG LLP

August T. Horvath
(*ahorvath@foleyhoag.com*)
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel:  (646) 927-5500
Fax:  (646) 927-5599

*Attorneys for Defendant Wegmans*
*Food Markets, Inc.*

B5027443.4

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................3

PLAINTIFFS' ALLEGATIONS .........................................................................................6

ARGUMENT .......................................................................................................................7

**I.**    Plaintiffs' Attempt at Private Enforcement of the FDCA Is Preempted............................7

**II.**    Plaintiffs Fail to Allege a Plausible Deception ................................................................12

        **A.**    Legal Standard .......................................................................................................12

        **B.**    No Reasonable Consumer Believes that Identifying "Vanilla" as a Flavor of Ice Cream Has Any of the Implications Alleged by Plaintiffs .............................13

        **C.**    Plaintiffs Have No Basis for Their Assumptions about the Product Ingredients............................................................................................................16

        **D.**    The Allegations of Insufficient Quantity of Vanilla Extract Are Completely Unsupported..........................................................................................................18

        **E.**    "Made with … Natural Vanilla Flavor" Is Not Plausibly Deceptive....................19

        **F.**    The Ice Cream's Color Is Not Plausibly Deceptive..............................................20

**III.**    Plaintiffs Fail to Plead with the Requisite Particularity....................................................21

        **A.**    Plaintiffs Do Not Identify Most of the Products and Claims They Purport to Challenge ...............................................................................................................22

        **B.**    Nothing of Substance is Pled about Plaintiffs Steele and Arriola ........................23

**IV.**    Plaintiffs' Ancillary Causes of Action are Improperly Pled and/or Inappropriate ............24

        **A.**    Plaintiffs Fail to State a Claim for Breach of Express Warranty or Implied Warranty of Merchantability....................................................................................24

        **B.**    Plaintiffs Fail to State a Claim for Negligent Misrepresentation..........................25

        **C.**    Plaintiffs Fail to State a Claim for Fraud .............................................................26

        **D.**    Plaintiffs Fail to State a Claim for Unjust Enrichment .........................................27

i

**V.**    Plaintiffs Lack Standing to Seek Injunctive Relief............................................................28

CONCLUSION....................................................................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 21, 22

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*,
  115 A.D.3d 128 (App. Div. 2014) .......................................................... 26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 21, 22

*Bowring v. Sapporo U.S.A., Inc.*,
  234 F. Supp. 3d 386 (E.D.N.Y. 2017) .................................................... 13, 27

*Buonasera v. Honest Co., Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016) .................................................... 27

*Campbell v. Freshbev LLC*,
  322 F. Supp. 3d 330 (E.D.N.Y. 2018) .................................................... 13

*Campbell-Clark v. Blue Diamond Growers*,
  No. 1:18-cv-5577-WFK (E.D.N.Y. Dec. 17, 2019) .............................. 12-13

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) .................................................................... 27

*Cohen v. S.A.C. Trading Corp.*,
  711 F.3d 353 (2d Cir. 2013) .................................................................... 26

*Davis v. Hain Celestial Grp., Inc.*,
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) .................................................... 28

*Elkind v. Revlon Consumer Prods. Corp.*,
  No. 14-2484, 2015 U.S. Dist. LEXIS 63464 (E.D.N.Y. May 14, 2015) ............................... 28

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) .................................................................... 12

*Fermin v. Pfizer Inc.*,
  215 F. Supp. 3d 209 (E.D.N.Y. 2016) .................................................... 12, 13, 14

*Freeman v. Time, Inc.*,
  68 F.3d 285, 289 (9th Cir. 1995) ............................................................ 12

B5027443.4

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
  148 F. Supp. 3d 285 (S.D.N.Y. 2015) .................................................................. 28

*In re Frito-Lay North America All Natural Litigation*,
  12-MD-2413, 2013 U.S. Dist. LEXIS 123824  (E.D.N.Y. Aug. 29, 2013)....................... 24, 27

*In re Trader Joe's Tuna Litig.*,
  289 F. Supp. 3d 1074 (S.D. Cal. 2017)..................................................................... 9

*International Prods. Co. v. Erie R. R. Co.*,
  244 N.Y. 331 (1927) ............................................................................................ 25

*J.A.O. Acquisition Corp. v. Stavitsky*,
  8 N.Y.3d 144 (2007) ........................................................................................... 26

*Kimmell v. Schaefer*,
  89 N.Y.2d 257 (1996) .......................................................................................... 26

*Kusek v. Family Circle*
  894 F. Supp. 522 (D. Mass. 1995) ......................................................................... 17

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*
  501 U.S. 350 (1991), *reh'g denied*, 501 U.S. 1277 (1991) ....................................... 17

*Larios v. Victory Carriers, Inc.*
  316 F.2d 63 (2d Cir. 1963)................................................................................... 18

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ................................................................................ 26

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) ......................................................................................... 25

*McBeth v. Porges*,
  171 F. Supp. 3d 216 (S.D.N.Y. 2016) .................................................................... 26

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015)................................................................................. 12

*Patane v. Nestle Waters North America, Inc.*,
  314 F. Supp. 3d 375 (D. Conn. 2018)............................................................... passim

*Patane v. Nestle Waters of North America, Inc.*,
  369 F. Supp. 3d 382 (D. Conn. 2019)............................................................... 10, 11

*PDK Labs, Inc. v. Friedlander*,
  103 F.3d 1105 (2d Cir. 1997)................................................................................ 8

iv

*Price v. L'Oreal USA, Inc.*,
No. 17-civ-0614, 2017 U.S. Dist. LEXIS 165931 (S.D.N.Y. Oct. 5, 2017) ............................ 27

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971 (E.D.N.Y. July 26, 2019) .......................... 13

*Sarr v. BEF Foods*,
No. 18-cv-6409-ARR, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020) ........ 12, 17, 27

*Schwartzco Enterprises LLC v. TMH Mgmt., LLC*,
60 F. Supp. 3d 331 (E.D.N.Y. 2014) ........................................................................................ 26

*Solak v. Hain Celestial Grp., Inc.*,
No. 3:17-cv-0704-LEK-DEP, 2018 U.S. Dist. LEXIS 64270 (N.D.N.Y. April 17, 2018) ...... 13

*Tomasino v. Estee Lauder Cos., Inc.*,
44 F. Supp. 3d 251 (E.D.N.Y. 2014) ....................................................................................... 28

*Verzani v. Costco Wholesale Corp.*,
No. 09-cv-2117, 2010 U.S. Dist. LEXIS 107699 (S.D.N.Y. Sept. 28, 2010) ..................... 8, 12

*Weisblum v. Prophase Labs, Inc.*,
88 F. Supp. 3d 283, 296-97 (S.D.N.Y. 2015) .......................................................................... 27

## Statutes & Regulations

10 N.Y.C.R.R. § 5-6.3 ................................................................................................................ 10

21 C.F.R. § 135.110 (3)(i) .......................................................................................................... 17

21 U.S.C. § 337 ...................................................................................................................... 8, 10

21 U.S.C. § 343 .................................................................................................................... 10, 16

Fed. R. Civ. P. 9(b) .................................................................................................................. 3, 26

New York GBL §§ 349-350 ............................................................................................ 2, 8, 9, 12

Sherman Food, Drug, and Cosmetic Law, H.S.C. §§ 109875 .................................................... 10

U.C.C. § 2-314 ........................................................................................................................... 25

v

## INTRODUCTION

This case is about Wegmans Food Markets, Inc.'s ("Wegmans'") private-label vanilla ice cream products, and whether the designation of certain flavors of such ice cream as "vanilla ice cream" communicates to consumers an extensive series of implied messages about the source of the vanilla flavoring in the ice cream.  Plaintiffs allege that it does, and then further allege – unsupported by any factual basis – that the contents of Wegmans' vanilla ice creams contradict those implied messages.  Common sense and common knowledge dictate the opposite conclusion – that consumers understand "vanilla" as a flavor designator, not an ingredient claim. A reasonable consumer would not perceive the misleading messages alleged by Plaintiffs to be communicated about the products, and the remedies suggested by Plaintiffs would make no difference in a reasonable consumer's interpretation of the packaging.

Despite extensive allegations, many of them unrelated to the facts and substantive allegations of the lawsuit, Plaintiffs have failed to plead any plausible basis on which a consumer would either (1) receive any specific message from Wegmans' vanilla ice cream labeling as to the source of its vanilla taste, or (2) care what the source is, so long as the vanilla ice cream tastes of vanilla.  Consumers do not desire vanilla bean extract for its nutritive properties, for it is not a nutrient – it is strictly a flavoring, as Plaintiffs concede (Complaint, Dkt. 1 ("Comp.") ¶ 74).  Some consumers prefer that flavorings and other ingredients be naturally derived, but Plaintiffs do not dispute that this is true of the flavorings used in Wegmans' ice creams, so that the label claim "No artificial colors, flavors or preservatives" is truthful and accurate.

Even if Plaintiffs could establish that the Products' labeling communicates what they think it does, Plaintiffs have failed to allege plausibly that the contents of the Products differ from what is allegedly represented.  Plaintiffs have no basis for anything that they allege about

1

the contents of the products other than the occurrence of one term – "natural flavor" – in their ingredient statements, to which Plaintiff attach unwarranted interpretations and exaggerated significance.  Designation of "natural flavor" as an ingredient is consistent with many different flavoring ingredient combinations, some of which even Plaintiffs would not find objectionable. Plaintiffs have absolutely no factual basis for any of their allegations about the flavorings included in the Products.

Plaintiffs' substantive allegations are concerned almost entirely with accusations that Wegmans violated the Food, Drug & Cosmetic Act (FDCA), as interpreted by Plaintiffs. Plaintiffs' entire basis for asserting consumer deception is that a violation of the FDCA is, *per se*, a deceptive practice under state consumer protection laws such as New York's GBL §§ 349-350. This theory is fatally flawed, for two primary reasons.  First, Plaintiffs incorrectly interpret the FDCA.  They mischaracterize and misconstrue the regulations under the statute, and rely on unreliable third-party sources and their own non-expert intuition for their interpretations.  In fact, Wegmans' practices comply with the FDCA.  Second, and moreover, the parties should not be litigating whether Wegmans violated the FDCA before this Court in the guise of GBL §§ 349-350 claims.  Not only are alleged violations of the FDCA not *per se* deceptive practices under GBL §§ 349-350, but Plaintiffs are expressly preempted from attempting to enforce the FDCA privately by positing state-law duties that are tantamount to FDCA compliance.

To plead a cause of action, Plaintiffs must step away from alleged technical violations of the FDCA, and plausibly plead that a reasonable consumer would interpret the phrase "vanilla ice cream" to mean that all of the vanilla flavor in an ice cream comes from vanilla bean extract, yet not interpret the phrase "vanilla flavored ice cream" – which Plaintiffs contend would cure both the regulatory non-compliance and any alleged deception – as meaning the same thing.

2

This, Plaintiffs are utterly unable to do.  Plaintiffs' strategy with this, and with the over 30 other lawsuits their counsel have filed against producers of vanilla-containing products in the past nine months, is to spot what they believe is a technical violation of FDA flavoring regulations and then hold up food companies for expensive settlements.

Further, Plaintiffs' claims sound in fraud and therefore must be pled with the particularly required by Fed. R. Civ. P. 9(b).  There are almost no allegations specific to Wegmans' ice cream products in the Complaint, most of which is copy-and-pasted from one of Plaintiffs' counsels' many related lawsuits, and contains discourses on the history of vanilla, sweeping generalizations about the food industry's purportedly deceptive labeling practices, and so forth. Plaintiffs' factual allegations about Wegmans' conduct and the contents of the Wegmans ice cream products are based on unfounded speculation about the meaning of their ingredient statements.

Plaintiffs plead assorted secondary causes of action that should all fail together with their core false-advertising claims, but in the alternative, should be dismissed because they are inappropriate for the situation alleged by Plaintiffs, who therefore do not and cannot plead necessary elements of these causes of action.

Finally, Plaintiffs Steele and Arriola plead for injunctive relief, which should be dismissed because, by their own admission, they are now aware of the alleged deception, and are at no risk of being deceived and injured in the future.

## FACTUAL BACKGROUND

Wegmans is a supermarket chain based in Rochester, New York, with over 100 locations in New York, Pennsylvania, New Jersey, Maryland, Massachusetts, Virginia and North Carolina. Wegmans markets and sells several varieties of ice cream and other frozen desserts under its

store brand.  These include the regular, Premium, Organic, and Light product lines referenced by Plaintiffs (Comp. ¶ 6).  (Plaintiffs fail to define precisely the products whose labeling is challenged in their lawsuit – itself a fatal defect in their pleading – but for convenience, the products loosely defined or mentioned in the Complaint will be termed the "Products.")  Many of Wegmans' regular, Premium, Organic, and Light ice cream products are labeled as vanilla flavored, often in combination with other flavors, such as chocolate.  Like most retailers, Wegmans does not manufacture its private-label ice cream, but obtains it from a supplier, which develops its formulation and labeling in consultation with Wegmans.

For many food companies, developing a vanilla ice cream is not as simple as adding vanilla extract to the basic ice cream ingredients, as Plaintiffs pretend.  Flavoring only with vanilla extract is sometimes done, but if it were the universal practice, every producer's vanilla ice cream would taste similar, and consumers would have little reason to prefer one brand over another.  In a highly competitive market for consumer taste, ice cream producers seek not just a vanilla ice cream, but a different and better tasting vanilla ice cream than their competitors.  To this end, many manufacturers flavor their vanilla ice creams not just with vanilla extract, but with a package of flavorings of which vanilla extract is the predominant, but not the only, flavoring component.  These flavoring packages often are carefully developed by specialized flavor suppliers, with their proprietary formulations kept as a trade secret.  Generically, these packages are termed "vanilla with other natural flavors," or "vanilla WONF."

Most, and sometimes all, of the secondary flavorings included in these flavor packages do not taste of vanilla, but contribute additional, subtle flavor notes to the finished product.  These flavor notes have names in the industry, such as roundness, smoothness, creaminess, nuttiness, and so forth, that contribute to a vanilla ice cream with a rich, complex, and

4

differentiated flavor profile.  Another important purpose is often to provide consistency in the product's taste.  Consumers want not only a great tasting vanilla ice cream; they also want their current carton to taste just like the previous ones.  Vanilla, as an agricultural product requiring careful cultivation produced primarily in distant, developing countries whose practices can be difficult to control, can vary in taste from region to region, season to season, and grower to grower.  Small amounts of additional flavorings, whether they taste of vanilla or not, help ensure the consistent product that consumers demand.  The inclusion of such flavors does not mean that there is not enough vanilla extract to supply the vanilla taste of the final product, or that the ice cream would not still taste like vanilla if the other natural flavors were removed.  It simply helps produce a satisfying, consistent, high-quality product.

Although Plaintiffs tend to make sweeping allegations covering all of the Products, each Product has its own formulation, with differing amounts of different ingredients, including flavorings, and is differently labeled.  Even for those Products that feature "vanilla" as their only designated characterizing flavor, there are differences in the nature and amount of included flavorings and other ingredients depending on whether the product is, for example, Premium, or Organic, or contains a variation of vanilla flavoring such as "French Vanilla."  In ice creams that incorporate a vanilla WONF package, the flavor supplier, without disclosing its exact ingredients, generally certifies that the flavoring meets any requirements set by the ice cream manufacturer, such as being all-natural, organic, and so forth, as well as providing guidance on the declaration of the flavoring in the ingredient statement.  The ice cream manufacturer, and also the retailer in the case of a private-label product such as the Products here, create labeling for the ice cream that meets the requirements of the Food, Drug & Cosmetic Act and also is truthful and transparent to consumers.

5

Ice cream manufacturers, and retailers with private-label brands, change their product formulations and their labeling from time to time. Several Products challenged in this suit likely had different flavoring ingredients and/or labeling at different times within whatever unspecified span Plaintiffs mean when they allege a "class period." Like many of their allegations, Plaintiffs' assertion that "The Products' flavor components are identical across the Products purporting to be vanilla ice cream varieties" (Comp. ¶ 41) is completely fabricated, has no factual basis, is implausible given the variety of Products challenged and the unspecified time period, and is false.

## PLAINTIFFS' ALLEGATIONS

None of the above-described sophisticated process of developing a great tasting ice cream fits into Plaintiffs' simplistic, cynical worldview. Plaintiffs, at various points, allege that the designation of a product as "vanilla ice cream," regardless of the nature or context of the representation, implies one or more of the following:

1.      Vanilla bean extract is the only flavoring of any kind in the Products (Comp. ¶¶ 27, 66);

2.      Vanilla bean extract is the only vanilla flavoring in the Products (Comp. ¶¶ 38, 67); or

3.      Vanilla bean extract is present in an amount sufficient to impart vanilla taste to the Products (Comp. ¶¶ 27, 37, 66).

Plaintiffs allege that these implied statements are deceptive because, allegedly, there are other flavorings in the products besides vanilla extract (Comp. ¶¶ 36, 39, 48, 51, 65, 69); there are simulated vanilla flavorings in the products (Comp. ¶¶ 79); and/or there is insufficient vanilla extract in the products to impart vanilla flavor (Comp. ¶¶ 37). The entire basis for the first two

6

of these allegations is that the ingredient lists on the side or back labels of the Products include the item "natural flavor" rather than specifying "vanilla extract."  Comp. ¶¶ 13, 40, 49-51, 64-65, 79-80, 81-87.  There is no factual support pled anywhere in the Complaint for the third allegation, that the Products contain insufficient vanilla extract to impart their vanilla flavor, a contention that is unrelated to whether the Products also contain other flavorings.

Plaintiffs also challenge labeling statements featuring particular ingredients, such as "Made with Milk, Cream, and Natural Vanilla Flavor," alleging that such statements contain the "material omission" of not also disclosing that there are other natural flavors – despite the obvious fact that the "Made with" statement does not purport to be an exhaustive ingredient list, and therefore cannot have material omissions.  Comp. ¶¶ 45-46.  Plaintiffs even take issue with the color of the ice cream itself as depicted on the package, asserting that its "orange and/or yellow hue" somehow imply that "vanilla is the sole flavor source."  Comp. ¶¶ 43, 104-109.[1]

## ARGUMENT

### I.    Plaintiffs' Attempt at Private Enforcement of the FDCA Is Preempted

Plaintiffs' Complaint is largely an epistle on Food and Drug Administration regulations. It contains no less than 49 citations to chapter 21 the Code of Federal Regulations implementing

---

[1] The Complaint also contains allegations regarding the regulatory definitions of light ice cream, no sugar added ice cream, and French vanilla ice cream, which ultimately are irrelevant, because Plaintiffs do not contend that any of these product designations are misleading and merely repeat their flavoring allegations as to these Products. Comp. ¶¶ 52-61, 72-78.  These appear to be vestigial allegations from previous lawsuits in which Plaintiffs' counsel have challenged the designations of such products, and are ignored here.

B5027443.4

the FDCA, and most of the Complaint is spent arguing the intricacies of FDA regulations as they apply to various categories of ice cream and related products. The only factual bases for Plaintiffs' allegations that Wegmans' ice cream labels deceive consumers are conclusory allegations that any Products not conforming to FDA regulations, as interpreted by Plaintiffs, are deceptive. Comp. ¶¶ 25, 27-28, 37, 71, 80,

This reveals the Complaint for what it is: Plaintiffs' attempt to privately enforce the FDCA, filed because Plaintiffs' counsel believes it has spotted a technical violation of FDA regulations. But Plaintiffs are not the FDA, and are neither competent to interpret FDA regulations nor empowered to enforce them. The right to enforce the FDCA rests exclusively with the FDA. *See* 21 U.S.C. § 337(a); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (there can be no private cause of action if a plaintiff's "true goal is to privately enforce alleged violations of the FDCA"); *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 U.S. Dist. LEXIS 107699, at *8 (S.D.N.Y. Sept. 28, 2010) ("The FDCA lacks a private right of action and therefore [a plaintiff] cannot rely on it for purposes of asserting a state-law consumer claim under G.B.L. § 349"), aff'd, 432 Fed. Appx. 29 (2d Cir. 2011).

Not only can Plaintiffs not explicitly seek to enforce the FDCA directly, they also cannot do so, under New York law, under the guise of a state-law cause of action. Such claims are impliedly preempted by the federal statute. "Where a state law claim would not exist but for a FDCA regulation, [21 U.S.C.] § 337(a) impliedly preempts the claim." *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp. 3d 375, 387 (D. Conn. 2018) (dismissing state-law deceptive practices claims where "Each and every one of plaintiffs' claims are wholly FDCA-dependent"). "[I]n New York and many other states, courts have concluded that where a state has not adopted statutes that expressly mirror the FDCA, like California's Sherman Law, a plaintiff's claim that

8

relies on the defendant's failure to comply with federal regulations is impliedly preempted." *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1086 (S.D. Cal. 2017) (dismissing New York G.B.L. §§ 349-350 claims). "Where, like here, a plaintiff's true purpose is to enforce federal regulations, masquerading as a state-law claim where the state has not adopted a parallel statutory scheme is not sufficient to escape preemption." *Trader Joe's*, 289 F. Supp. 3d at 1086.

There could be no clearer example of a lawsuit that seeks to enforce the Food, Drug & Cosmetic Act, thinly veiled as a state consumer protection law claim, than this case. Every aspect of Plaintiffs' claims centers on one of the many FDA regulations cited throughout the Complaint, with no allegations of any independent state-law duty and no independent supporting factual contentions. The positions Plaintiffs adopt with respect to the interpretation of Wegmans' labeling and ingredient statement would be implausible on their own merit, and Plaintiffs can argue that they are unlawful only because they purportedly constitute technical violations of the FDA and its implementing regulations. This is truly a case that "would not exist but for a FDCA regulation." *Patane*, 314 F. Supp. 3d at 387.

Plaintiffs' core claims, and the almost exclusive focus of their Complaint, is on the three-word phrase "vanilla ice cream," which is not just a marketing claim. It is, as Plaintiffs correctly allege, the "statement of identity" of the Products. Comp. ¶ 6. "Statement of identity" is the FDA's term of art for the formal name of a product, and it is among the most closely regulated things on a product label. Plaintiffs are correct in alleging that dozens, if not hundreds, of regulations govern the phrasing of the statement of identity, and manufacturers, given a particular product formulation, have relatively little discretion in how to construct it. This is why Plaintiffs must rely so heavily on their FDA regulatory discussion in challenging the phrase "vanilla ice cream," but is also why it must be preempted.

9

An especially instructive case is *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp. 3d 375 (D. Conn. 2018) ("*Patane I*").  In that case, as here, Plaintiff challenged a food's statement of identity – "spring water" in that case – and contended that it was deceptive because, allegedly, it did not conform to the FDCA's requirements, lodging its claims under the laws of several states, including New York.  *Id.* at 378.  The court initially dismissed the case as to all states, noting that one preemption provision in the FDCA prevents anyone except the U.S. government from enforcing its providions (*id*. at 385, citing 21 U.S.C. § 337(a)), while another preempts any state from imposing standards of identity that are "not identical" to those of the FDCA (*id*. at 384-85, citing 21 U.S.C. § 343-1(a)(1)).

The one exception to FDCA preemption is that if a state has enacted food regulations imposing standards identical to those of the FDCA, then states may enforce those laws, and they may provide private rights of action to do likewise.  Some states, such as California, have enacted broad mini-FDCAs (the Sherman Food, Drug, and Cosmetic Law, H.S.C. §§ 109875), which may provide plaintiffs with broad scope for, in effect, enforcing the FDCA, if they are careful to plead violations of the Sherman Law instead of the federal statute.  Some other states have enacted more limited laws regulating particular foods, again imposing requirements identical to the FDCA, which may enable plaintiffs effectively to enforce the FDCA as to those products – again, provided they are careful to plead state, not federal, regulatory violations.  The plaintiffs in *Patane* thus amended their complaint, and ultimately were allowed to proceed in New York, among other states, because New York has a limited law defining "spring water" as part of its Sanitary Code, consistently with the FDCA.  *Patane v. Nestle Waters of North America, Inc.*, 369 F. Supp. 3d 382, 392-93 (D. Conn. 2019) ("*Patane II*"), citing 10 N.Y.C.R.R. § 5-6.3.  As to that product, plaintiffs' amendments met the requirement of pleading an

B5027443.4

independent state-law duty that could serve as the basis for their claims.  *Patane II*, 369 F. Supp. 3d at 388.

New York has no comprehensive state food regulatory law like California's Sherman Law, and it has no special regulation of vanilla ice cream like its regulation of spring water. Therefore, under the logic of *Patane I* and *Patane II*, Plaintiffs' attempts to enforce the FDCA are preempted and should be dismissed.  Further, because there exists no independent state law duty that Plaintiffs could allege, amendment of the Complaint would be futile and should not be allowed.

Although this is not the forum to litigate Wegmans' FDCA compliance in this motion, one aspect of Plaintiffs' FDA argument merits attention because it underscores the implausibility of Plaintiffs' consumer deception argument.  In Plaintiffs' view, assuming the Products' vanilla taste comes predominantly from vanilla bean extract but is supplemented by vanilla-imparting flavors naturally derived from other plants, everything can be cured by inserting the word "flavored" between "vanilla" and "ice cream" in the Products' statement of identity.  Comp. ¶ 32.  In a nutshell, the whole Complaint is about the alleged omission of this one word, which Plaintiffs contend, wrongly, is required by FDA regulations and would make the statement of identity "non-misleading."  *Id*.  But it is implausible that consumers would interpret "vanilla flavored ice cream" so differently from "vanilla ice cream."  If, as Plaintiffs contend, consumers read "vanilla" as "vanilla bean extract," then why wouldn't "vanilla flavored ice cream" imply "ice cream flavored with vanilla bean extract"?  Plaintiffs have no plausible answer to this, because they have no genuine interest in how consumers understand the Products' labeling, and have conducted no investigation into this topic.  Plaintiffs mistakenly believe they have caught

11

Wegmans, as well as many other companies, in technical violations of the FDCA that Plaintiffs can convert into a series of lawsuits.

## II. Plaintiffs Fail to Allege a Plausible Deception

### A. Legal Standard

To prove conduct is materially misleading as required under New York General Business Law §§ 349 and 350, a plaintiff must demonstrate that "a reasonable consumer acting reasonably under the circumstances" would be misled. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). A court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). In so doing, courts consider the entire context of the alleged misrepresentations, including disclaimers and other disclosures elsewhere on the packaging. *See Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211-12 (E.D.N.Y. 2016); *Freeman v. Time, Inc*., 68 F.3d 285, 289 (9th Cir. 1995) (considering both large and small print in ad in dismissing consumer protection claims); *Verzani*, 2010 U.S. Dist. LEXIS 107699, at *5-7 (considering entire label on a food tray, which listed each item on the tray and its relative weight, in dismissing case alleging that the food tray's "net weight" label referred only to one item in the tray, not all of the items on the tray).

Although dismissal of false-advertising cases on this ground was once rare, a recent rash of meritless lawsuits has created a growing body of Rule 12 case law in this Circuit dismissing challenges to advertising claims because they would not deceive a reasonable consumer. *See, e.g., Sarr v. BEF Foods*, No. 18-cv-6409-ARR, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020) (dismissing case against a food label because it would not communicate a misleading message to a reasonable consumer); *Campbell-Clark v. Blue Diamond Growers*, No. 1:18-cv-

12

5577-WFK (E.D.N.Y. Dec. 17, 2019) (dismissing allegations that packaging for "nut and rice" crackers implicitly overstated their nut content); *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971, at *8-16 (E.D.N.Y. July 26, 2019) (dismissing implausible allegations that "made with real butter" on mashed potato product implied absence of margarine); *Solak v. Hain Celestial Grp., Inc.*, No. 3:17-cv-0704-LEK-DEP, 2018 U.S. Dist. LEXIS 64270, at *8-36 (N.D.N.Y. April 17, 2018) (name of "veggie straws" snacks and images of vegetables are truthful in that they imply the snacks are made from vegetables, and do not reasonably imply that the snacks contain fresh, whole, ripe vegetables); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 341 (E.D.N.Y. 2018) (truthful claim that a juice is "cold-pressed" does not imply that it is only cold-pressed, and not also processed in any other way); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (beer did not mislead reasonable consumers that it was of Japanese origin where its Canadian origin was clearly stated); *Fermin*, 215 F. Supp. 3d at 211-12 (unused volume of pill bottle did not deceive consumers as to number of tablets where the table count was clearly disclosed on the bottle).

  **B.**  **No Reasonable Consumer Believes that Identifying "Vanilla" as a Flavor of Ice Cream Has Any of the Implications Alleged by Plaintiffs**

   The fundamental claim of the Complaint, repeated as to every Product challenged by Plaintiff, is that calling the Products "vanilla ice cream" (or "vanilla light ice cream," etc.) implies not just a flavor or taste claim, but an ingredient claim.  Plaintiffs allege that "vanilla ice cream" communicates not just any ingredient claim, such as that the ice cream contains vanilla extract, nor even that it is predominantly flavored with vanilla extract, but that it must be exclusively flavored with vanilla extract.

The plausibility of Plaintiffs' key allegation must be considered in the context of what Plaintiffs contend that is required to completely cure the deception – simply the insertion of the word "flavored," so that the product would be called "vanilla flavored ice cream."  Comp. ¶ 32. By adding this one word – arguably a redundant word, because as Plaintiffs admit, vanilla is nothing but a flavoring (Comp. ¶ 74) – suddenly, Plaintiffs assert, no reasonable consumers would get the impression that vanilla extract is the exclusive flavoring, the exclusive source of vanilla flavoring, or even necessarily present in sufficient quantity to lend a vanilla character to the food.

Further, Plaintiffs completely ignore the context of other labeling claims and disclosures on the Products' labeling that may alter consumers' perceptions of the challenged statement, which appears only in small print on the labels of many of the multiple-flavor Products, such as Neapolitan.  Plaintiffs' claim that "vanilla ice cream" communicates one of their three alleged ingredient claims also is implausible, as a matter of law, because it is thus independent of context.  Marketing claims are evaluated by consumers, and by courts, in their full context of other claims, disclaimers, and disclosures.  *See Fermin* 215 F. Supp. 3d at 211-12.  Plaintiffs never describe or depict more than isolated pieces of the labeling of any of the challenged Products.  They show and discuss only the front panel of each, and quote only the front panel and the ingredient statement.  For all but a handful of the challenged Products, Plaintiffs do not even this – they merely assert that the Products bear the words "vanilla ice cream," as if this ended the inquiry into deceptive labeling.

Plaintiffs ignore the context of the Products' packaging, effectively insisting that inserting the word "flavored," and no other possible remedy, would clear up the alleged misrepresentation on the Products' packaging, because they are fully committed to the idea that

14

if they have identified an instance of technical non-compliance with the FDCA, it relieves them of any burden to plead that the Products' labeling plausibly deceives consumers. This is incorrect. Even if this suit were not preempted, Plaintiffs must still plead plausibly that "vanilla ice cream," no matter where, how, and in what context it is used, communicates that an ice cream is flavored exclusively with vanilla extract.

Indeed, one of the other statements Plaintiffs challenge on the labeling of some of the Products – "Made with Milk, Cream and Natural Vanilla Flavor" – is likely to cure any alleged ambiguity in the Products' name, according to Plaintiffs' own logic. This sentence does not say "Made with Milk, Cream and Vanilla Extract," or even "Made with Milk, Cream and Vanilla." It says "natural vanilla flavor" – which consumers are likely to interpret as not necessarily vanilla extract, but just as likely some natural favor simulating vanilla. Indeed, Plaintiffs contend elsewhere that Wegmans would never use the phrase "natural flavor" when it means "vanilla extract," because it would be "illogical" not to call out the desirable ingredient specifically by name (Comp. ¶¶ 86-87), and they allege throughout their Complaint that therefore "natural flavor" always means non-vanilla-derived flavoring (Comp. ¶¶ 13, 40, 49-51, 64-65, 79-80, 81-87). By Plaintiffs' own logic, then, Wegmans must be referring to non-vanilla-extract natural flavors, at least in part, when it says "natural vanilla flavor," and consumers must understand this.

There is no basis to allege that consumers receive any of Plaintiffs' three alleged ingredient claims from the Products' packaging – especially compared with the cure that Plaintiffs assert would make the label "non-misleading." The actual message communicated to consumers by "vanilla ice cream" is that the carton they are holding contains ice cream that tastes like vanilla, as opposed to chocolate, strawberry, or mango.

15

### C.    Plaintiffs Have No Basis for Their Assumptions about the Product Ingredients

Plaintiffs' sole basis for alleging that the Products do not contain the represented type and amount of vanilla flavoring (i.e., vanilla bean extract in an amount sufficient to impart their vanilla flavor) is that the ingredient statements of the products include the item "natural flavor" rather than "vanilla extract."  Comp. ¶¶ 40, 45, 49, 51, 65.  There are three errors with this assumption that are each individually fatal.

First, Plaintiffs plead around, but would have to concede, the fact that vanilla extract is a natural flavor, and that a manufacturer may therefore label a product flavored solely by vanilla extract with "natural flavor" as the ingredient representing vanilla extract in the ingredient statement.  Plaintiffs evince their belief that Wegmans would never use "natural flavor" to designate vanilla extract because Plaintiffs believe that there is no "need" to do so, or that it would be "illogical."  Comp. ¶¶ 86-87.  But it is undisputed that Wegmans can list vanilla extract as a "natural flavor" in its ingredient list if it so desires.  21 U.S.C. § 343(i)(2) (spices, flavorings and colors may be designated in ingredient statements as spices, flavorings and colors, without naming each).   Therefore, when Plaintiffs allege that "'Natural Flavor' means the Products contain flavor not derived from vanilla beans …" (Comp. ¶ 51), that is merely Plaintiffs' unwarranted supposition.  Designating "natural flavor" in the ingredient statement is consistent with any of the following:  (1) a product flavored only with vanilla extract; (2) a product whose vanilla flavor component is supplied entirely by vanilla extract, that also has other natural flavors not tasting of vanilla; or (3) a product whose vanilla flavor component is predominantly supplied by vanilla extract, that also has other non-vanilla natural flavors, some of which may taste of vanilla.  This, alone, establishes that Plaintiffs' allegations are without basis, because Plaintiff

16

has no other support for its speculative assumptions about the contents of the Products than the declaration of "natural flavor" in their ingredient statements.

Second, Plaintiffs fail to acknowledge that a product labeled "vanilla ice cream" may also contain secondary, non-vanilla flavor notes. They allege that an ice cream characterized as vanilla must contain only vanilla-imparting flavors, and nothing else. Comp. ¶ 51. There is no basis in law, regulation, or common sense for such a contention. It is as if Plaintiffs alleged that an apple pie, which often contains additional flavors such as cinnamon and nutmeg to complement the main flavor of apple, is required to be labeled "apple and cinnamon and nutmeg pie" because every single flavor present must be disclosed. Then, leveraging this initial false and unfounded assumption, Plaintiffs incorrectly deduce that when a vanilla product's ingredient statement discloses that it contains "natural flavors" or "other natural flavors," all of those flavors must be vanilla flavors. Again, this allegation is without basis. A vanilla ice cream may include other, non-characterizing flavor notes such as creaminess, roundness, or sweetness (pure vanilla extract is quite bitter), provided by other natural flavors, to make up a complex flavor profile.[2] An ice cream manufacturer can either list vanilla extract and these other natural flavors separately or combine them all as "natural flavors," at its option.

_____

[2] The FDA regulations, on which Plaintiffs rely so heavily, contemplate that ice cream may include added flavors not simulating the characterizing flavor(s). If flavorings not simulating the characterizing flavor are artificial, 21 C.F.R. § 135.110 (3)(i) provides that the label shall bear the disclosure, "artificial flavor added." If such flavors are natural, the regulations do not require any special disclosure.

Third, Plaintiffs do not limit their Complaint to Products that feature only vanilla as their characterizing flavor, but also include products that feature vanilla together with other characterizing flavors, such as chocolate, strawberry, coffee, and many others.  Comp. ¶ 6.  In the context of these multiple-flavor Products, "natural flavor" in the ingredient statement obviously is an efficient way of referring to all of the vanilla and non-vanilla flavorings in the ice creams, including those providing or supporting the other featured flavors.  For such Products, there obviously is no basis to assume that "natural flavor" denotes any simulated vanilla flavor. Tellingly, after identifying such multiple-characterizing-flavor ice creams as constituting fully 15 of the 22 Products that they purport to challenge (Comp. ¶ 6), Plaintiffs never again discuss these Products, and never plead any detailed allegations about their labeling or ingredient statements. To do so would make it obvious that Plaintiffs' interpretation of "natural flavor" in the ingredient statements is baseless, because, as to these Products where there are clearly other flavors present, it is facially absurd.  Plaintiffs' logic actually is no less absurd when applied to ice cream products characterized only as vanilla, but the absurdity is less apparent when there are not obvious other flavors to be imparted.

> ### D.     The Allegations of Insufficient Quantity of Vanilla Extract Are Completely Unsupported

As noted above, one of Plaintiffs' key allegations – that there is vanilla extract in the Products, but not enough to make the Products taste like vanilla – is repeated several times, but never supported by any alleged facts.  Even if all of Plaintiffs' allegations regarding FDCA non-compliance are taken as true and relevant for purpose of this motion, and even if Plaintiffs' allegations that not <u>all</u> of the vanilla flavor in the Products comes from vanilla extract are likewise taken to be true, nothing in those allegations provides any basis to allege that vanilla extract is not the predominant source of vanilla flavor in the Products or that the amount of

vanilla extract would not make the Products taste like vanilla.  In fact, not a single factual allegation in the Complaint addresses the amount of vanilla extract in the Products.  Plaintiffs plead facts only about the alleged presence of <u>additional</u> things, not how little vanilla there is. Plaintiffs' allegations that the Products contain insufficient vanilla extract to characterize the Products are baldly conclusory allegations without any support.

Plaintiffs concede, throughout the Complaint, that there is likely vanilla extract in the Products.  They do not, and cannot, allege even that vanilla extract is not, by far, the most predominant flavoring in the Products.  Plaintiffs' tortured chains of reasoning, surmise, and supposition reveal that they don't know, and have no basis to allege, that there is insufficient vanilla extract in the Products to impart the vanilla taste enjoyed and expected by consumers.

### E.    "Made with … Natural Vanilla Flavor" Is Not Plausibly Deceptive

Plaintiffs allege:

44.  The above Vanilla Ice Cream Product is also misleading because the front label states "Made with Milk, Cream and Natural Vanilla Flavor."

45. The Product's ingredient list discloses the presence of "Natural Flavor," which means that the "Natural Vanilla Flavor" is *part* of "Natural Flavor."

46. Consumers are misled by a material omission – failing to disclose that the flavoring component is not only comprised of "Natural Vanilla Flavor.["]

These interpretations are facially meritless, for two reasons.  Firstly, this label claim, promoting featured ingredients in the Product, makes no pretense of being an exhaustive ingredient statement.  It does not include sugar, for example, which any reasonable consumer knows is present in regular ice creams.  "Made with Milk, Cream and Natural Vanilla Flavor" simply promotes ingredients that Wegmans wants to point out are present in the product, and it is undisputed that all of them are present.  Plaintiffs have no basis to assert that "natural vanilla flavor" is not present in the Products in adequate and expected amounts.  It also is implausible to

19

allege that alerting consumers that a product is "made with" one ingredient creates any negative implication that other ingredients are not contained in the product. *See Sarr v. BEF Foods*, No. 18-cv-6409-ARR, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020) (holding that a "made with" ingredient claim (butter) does not imply the absence of other ingredients); *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971, at *8-16 (E.D.N.Y. July 26, 2019) (same).

Secondly, as with their allegations pertaining to "vanilla ice cream," Plaintiffs in Paragraph 45 interpret the item "natural flavor" in the ingredient statement to carry far more water than it can. As set forth above, it is not necessarily true that "natural flavor" indicates the presence of flavorings other than "natural vanilla flavor;" it could just be a less specific term for the exact same thing. Moreover, as Plaintiffs concede, even if the Products contain vanilla-simulating natural flavor in addition to vanilla extract, it would be "non-misleading" to call the Product "naturally vanilla flavored" so long as the latter is predominant. Comp. ¶ 32. Plaintiffs have no basis to contend that this is not the case.

Thirdly, as noted above, Plaintiffs' allegations that "natural vanilla flavor" refers to vanilla extract directly contradicts allegations throughout the Complaint that Wegmans would never use a vague term like "natural flavor" when it could describe the ingredient as the more desirable and specific "vanilla extract." Comp. ¶¶ 13, 40, 49-51, 64-65, 79-80, 81-87. When it suits their purposes, Plaintiffs inconsistently accuse Wegmans of using words in ways whose use they dismiss as "illogical" in other contexts.

### F.     The Ice Cream's Color Is Not Plausibly Deceptive

Plaintiffs' allegations that the addition of annatto and/or turmeric for coloring purposes on some of the Products, purportedly in order to deceive consumers as to their vanilla content,

show how far into the realm of implausibility Plaintiffs are prepared to carry their case.  Foods are routinely colored to make them more attractive and appetizing, as Plaintiffs concede with their own example of the same colorings being added to cheddar cheese to evoke milkfat.  Comp. ¶ 105.  These colorings can just as easily be incorporated into ice cream, which also contains milkfat, for the exact same reason.  Plaintiffs allege absolutely no basis for their contention that Wegmans adds natural coloring to its ice cream with either the intent or effect of deceiving consumers as to its vanilla content.

### III.   Plaintiffs Fail to Plead with the Requisite Particularity

A motion to dismiss should be granted where Plaintiffs have not pled "enough facts to state a claim to relief which is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a court generally must accept factual allegations pled in the Complaint as true, it need not accept at least three categories of allegations:  (1) conclusions of law cast as factual allegations, including all of Plaintiffs' contentions that the Products' labeling violates the FDCA or its regulations; and (2) unreasonable inferences; and (3) bare assertions amounting to nothing more than a formulaic recitation of a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-681 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between 'possibility and plausibility of entitlement to relief.'"  *Id.* at 678, quoting *Twombly*, 550 U.S. at 557.  The factual allegations in the Complaint must do more than "create[] a suspicion of a legally cognizable right of action" and "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Courts draw on judicial experience and common sense in making these determinations.  *Iqbal*, 556 U.S. at 679.

B5027443.4

A.      **Plaintiffs Do Not Identify Most of the Products and Claims They Purport to Challenge**

Plaintiffs have failed to plead even the most basic elements of their claim under *Twombly* and *Iqbal*, let alone the heightened pleading standard required by Rule 9(b).  These include which Products are being challenged, which challenged statements appear on which of the products, and any details about the Plaintiffs' purchases of the Products and reliance on the challenged misrepresentation.

Plaintiffs assert the existence of "no fewer than twenty-two" Wegmans Products that "purport to contain types of vanilla ice cream" and that are therefore challenged Products in the Complaint.  Actually, by separately tallying each flavor variety listed for each product line cited in Complaint ¶ 6, there are as many as thirty-three different Products.  After this initial listing, however, most of the Products are never referenced in the Complaint again.  As noted above, it is understandable that Plaintiffs avoid further mention of the multiple-characterizing-flavor ice creams that make up the majority of this list, because these Products highlight the falsity of Plaintiffs' central contention that "natural flavors" in the Products' ingredient statements always means "non-vanilla flavors simulating vanilla."  Even as to vanilla-only products, however, only a few are described or depicted in the Complaint.  Regular Vanilla Ice Cream (Comp. ¶ 43), Organic Vanilla Premium Ice Cream (¶ 49), Light Vanilla Ice Cream (¶ 63), No Sugar Added Vanilla Light Ice Cream (¶ 63), and French Vanilla Ice Cream (¶ 79) are the only Products described or depicted at all, and then very selectively, with incomplete descriptions of their labels.  The other Products purportedly challenged are never even precisely identified, let alone made the subject of allegations as to how they are deceptive.

As to the contents of these Products, Plaintiffs make sweeping, conclusory allegations about every product in Wegmans' relevant product lines, keying off the premise that "the

Products' flavor components are identical across the Products purporting to be vanilla ice cream varieties" (Comp. ¶ 41). This premise is unsupported and implausible, given the evident variety in flavor profiles, quality tiers, and other variations in the more than 30 different Products identified, as well as the undefined time span to which Plaintiffs' allegations pertain. Because the same flavor allegations are not applicable to all Products over all times, Plaintiffs must allege specifically as to which Products, at which times, their allegations pertain. They have made no effort to do this.

### B.    Nothing of Substance is Pled about Plaintiffs Steele and Arriola

The two Plaintiffs are alleged to be residents of Pennsylvania and New York. Both are alleged to have purchased an unspecified number of unspecified Products at unspecified times within the undefined "class period" at unspecified locations for unspecified prices. Comp. ¶ 154. The Complaint is bereft of any allegations as to which of the alleged label claims described in the Complaint these Plaintiffs saw, what they understood them to mean, and what they purportedly did in reliance on these claims.

If this were merely an action by Plaintiffs Steele and Arriola to recover the purchase price of the Products they bought, these Complaint allegations would be woefully inadequate to put Wegmans on notice as to Plaintiffs' claims, and as to what defenses may be available. At a minimum, Plaintiffs would have to plead what products they bought, when they bought them (to establish which version of Products they bought that may have changed over time, as well as whether the suit is timely), what they paid, what packaging they saw, how they interpreted that packaging, what they now believe about the Products, and why any alleged misrepresentation about the source of a flavoring is material to them. Plaintiffs are not relieved of these requirements as to the individual Plaintiffs merely by styling their case as a class action.

IV.    **Plaintiffs' Ancillary Causes of Action are Improperly Pled and/or Inappropriate**

Plaintiffs allege several common-law causes of action that piggyback on the facts of its main claim lodged under state consumer protection statutes.  These ancillary claims all fail because Plaintiffs' core theory of deception fails.  Even if Plaintiffs' deception theory held water, however, the ancillary claims would have to be dismissed because they are inadequately or improperly pled and/or simply inappropriate to the fact pattern Plaintiff alleges.

A.    **Plaintiffs Fail to State a Claim for Breach of Express Warranty or Implied Warranty of Merchantability**

Plaintiff alleges that Wegmans "warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not" and that they "informed and warranted to Plaintiff the Products contained only the characterizing ingredients to impart flavor, and that they were present in amounts sufficient to independently characterize the food and that the flavor imparted to the Products was a result of the food ingredients and not 'natural flavors' or 'other natural flavors.'" Comp. ¶ 180, 181.  All of these are allegedly implied, not express, representations.  Express warranty claims must be founded on express representations – that is, a literal affirmation of fact or promise about the specific thing Plaintiffs allege to be untrue.  *See In re Frito-Lay North America All Natural Litigation*, 12-MD-2413, 2013 U.S. Dist. LEXIS 123824, at *84-85 (E.D.N.Y. Aug. 29, 2013).

Plaintiff's claim for breach of implied warranty of merchantability must also be dismissed because Plaintiff does not allege that the Products are not of merchantable quality.  A breach of the implied warranty of merchantability occurs only when a product is "unfit for the

ordinary purposes for which such goods are used" (U.C.C. § 2-314(c)) – in this case, unfit for human consumption.  Plaintiff do not cannot plead any such thing.  The only other plausible argument for a breach of implied warranty of merchantability is that the Products do not "conform to the promise or affirmations of fact made on the container or label" (U.C.C. § 2-314(f)), which is just a restatement of the definition of an express warranty, and requires a literal affirmation or promise.  These, again, were not pled; Plaintiffs' case is based entirely on implied, not express, claims.

### B.      Plaintiffs Fail to State a Claim for Negligent Misrepresentation

Plaintiffs' claim for negligent misrepresentation is inappropriate under these circumstances, in which Plaintiffs allege misstatements by an advertiser to a mass audience of consumers engaging in arm's-length transactions.  In New York, there must be a special relationship of confidence and trust to establish potential liability for negligent misrepresentation.  *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) (requiring "special relationship" that places an exceptional duty of care on a speaker, such as where plaintiffs were investors in a limited partnership and defendant was attorney and director of an affiliated company who personally solicited plaintiffs as investors).  The duty to speak with care arises when "the relationship of the parties, arising out of a contract or otherwise, [is] such that in morals and good conscience the one has a right to rely upon the other for information."  *Id.* at 263, quoting *International Prods. Co. v. Erie R. R. Co.*, 244 N.Y. 331, 338 (1927).  To establish a claim for negligent representation the plaintiff must demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011); *see also J.A.O. Acquisition*

*Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007); *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 115 A.D.3d 128, 141 (App. Div. 2014) (cause of action dismissed for complaint's lack of allegation of a relationship of trust and confidence between the parties). Negligent misrepresentation claims generally are lodged against individuals with a direct, one-on-one relationship with the plaintiff, especially professionals having special expertise, such as attorneys, accountants and consultants. *Kimmell*, 89 N.Y.2d at 263-64. Applying this theory where Plaintiffs, and the putative class, are members of a mass audience of consumers, with no direct relationship to Wegmans, is improper, and the claim should be dismissed.

### C.    Plaintiffs Fail to State a Claim for Fraud

Plaintiffs' claim for fraudulent misrepresentation fails because they has not pled fraud with the required specificity. "To state a cause of action for fraudulent misrepresentation under New York law, a plaintiff must allege 'a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" *McBeth v. Porges*, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006)). Claims of fraud "must be pled with particularity" beyond that of a normal claim. *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014). Further, under Fed. R. Civ. P. 9(b), Plaintiffs must plead "details that 'give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Id.*, quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).

New York courts have held that in false-advertising cases involving mass-marketed products, allegations that the defendant was commercially motivated to increase its market share,

to satisfy consumer desires and expectations, and to increase its sales and profits do not give rise to the necessary strong inference that the defendant had an intent to defraud. *See Sarr*, 2020 U.S. Dist. LEXIS 25594 at 26-27, citing *In re Frito-Lay North America All Natural Litigation*, 12-MD-2413, 2013 U.S. Dist. LEXIS 123824, at \*\*25 (E.D.N.Y. Aug. 29, 2013) and *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996). Plaintiffs here do no more than this. They allege that Wegmans' "intent was to secure economic advantage in the marketplace" and "knows consumers prefer" certain types of products. Comp. ¶¶ 190-191. This is exactly the type of general allegation of desire for commercial profit that has been held inadequate to establish fraudulent intent, and Plaintiffs' fraud claim should be dismissed.

### D.    Plaintiffs Fail to State a Claim for Unjust Enrichment

Plaintiffs' claim for unjust enrichment must fail because it is duplicative of their fraud and false advertising claims. An unjust enrichment claim is not available where it simply replicates another claim. *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296-97 (S.D.N.Y. 2015) (dismissing unjust enrichment claim that was duplicative of GBL claims); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (same). This rule has been repeatedly applied by New York's federal courts to dismiss add-on unjust enrichment claims in cases similar to the current one. S*ee, e.g.*, *Price v. L'Oreal USA, Inc.*, No. 17-civ-0614, 2017 U.S. Dist. LEXIS 165931, at \*13 (S.D.N.Y. Oct. 5, 2017) ("All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants that the Products contain keratin. Accordingly, Plaintiffs' New York unjust enrichment claim is dismissed as duplicative."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) (dismissing unjust enrichment claim on the grounds that it was duplicative).

B5027443.4

## V.        Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs in this case have no standing to seek injunctive relief.  Numerous District Courts in the Second Circuit have dismissed claims for injunctive relief in false advertising cases where, as here, the plaintiff is "now aware of the alleged misrepresentations that they challenge" and therefore "there is no danger that they will again be deceived by them." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 339 (E.D.N.Y. 2018) ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way.  He therefore lacks standing to seek an injunction."); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 U.S. Dist. LEXIS 63464, at *8 (E.D.N.Y. May 14, 2015); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295-96 (S.D.N.Y. 2015) ("A plaintiff lacks standing to bring an action for injunctive relief when, as here, she does not allege that she will suffer any future injury as a result of defendant's continued conduct"); *Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (denying standing because plaintiff "has made clear that she does not believe the ANR products have the effects advertised by Estee Lauder").

## CONCLUSION

For the foregoing reasons, Wegmans respectfully requests that this Court grant its motion to dismiss Plaintiffs' Complaint.

Dated: February 24, 2020

Respectfully submitted,

*/s/ August T. Horvath*
August T. Horvath (AH 8776)
*ahorvath@foleyhoag.com*
FOLEY HOAG LLP
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel:  (646) 927-5500
Fax (646) 927-5599

*Attorneys for Defendant Wegmans Food Markets, Inc.*

B5027443.4

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 24th day of February 2020, a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service via ECF.


*/s/ August Horvath*
August T. Horvath