**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Quincy Steele and Jimmy Arriola,
individually and on behalf
of all others similarly situated,

                  Plaintiffs,

      -against-

Wegmans Food Markets, Inc.,

              Defendant.

Case No. 1:19-cv-09227-LLS

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

FOLEY HOAG LLP

August T. Horvath
(*ahorvath@foleyhoag.com*)
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel:  (646) 927-5500
Fax:  (646) 927-5599

*Attorneys for Defendant Wegmans*
*Food Markets, Inc.*

B5027443.4

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................1

FACTUAL BACKGROUND......................................................................................................3

PLAINTIFFS' ALLEGATIONS ................................................................................................6

ARGUMENT...............................................................................................................................8

**I.**     Plaintiffs' Attempt at Private Enforcement of the FDCA Is Preempted..............................8

**II.**    Plaintiffs Fail to Allege a Plausible Deception ..................................................................13

    **A.**     Legal Standard .........................................................................................................13

    **B.**     No Reasonable Consumer Believes that Identifying "Vanilla" as a Flavor of Ice Cream Has Any of the Implications Alleged by Plaintiffs ...............................14

    **C.**     Plaintiffs Have No Basis for Their Assumptions about the Product Ingredients...............................................................................................................16

    **D.**     The Allegations of Insufficient Quantity of Vanilla Extract Are Completely Unsupported..........................................................**Error! Bookmark not defined.**

    **E.**     "Made with … Natural Vanilla Flavor" Is Not Plausibly Deceptive............. **Error! Bookmark not defined.**

    **F.**     The Ice Cream's Color Is Not Plausibly Deceptive...............................................21

**III.**   Plaintiffs Fail to Plead with the Requisite Particularity......................................................23

    **A.**     Plaintiffs Do Not Identify Most of the Products and Claims They Purport to Challenge ..............................................................**Error! Bookmark not defined.**

    **B.**     Nothing of Substance is Pled about Plaintiffs Steele and Arriola ................. **Error! Bookmark not defined.**

**IV.**    Plaintiffs' Ancillary Causes of Action are Improperly Pled and/or Inappropriate ............24

    **A.**     Plaintiffs Fail to State a Claim for Breach of Express Warranty or Implied Warranty of Merchantability....................................................................................25

    **B.**     Plaintiffs Fail to State a Claim for Negligent Misrepresentation...........................25

    **C.**     Plaintiffs Fail to State a Claim for Fraud ..............................................................26

i

|     | **D.** | Plaintiffs Fail to State a Claim for Unjust Enrichment ..........................................28 |
| **V.** | | Plaintiffs Lack Standing to Seek Injunctive Relief............................................................28 |
| CONCLUSION............................................................................................................................29 |

ii

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 23

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*,
   115 A.D.3d 128 (App. Div. 2014) ........................................................................................... 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................................. 23

*Bowring v. Sapporo U.S.A., Inc.*,
   234 F. Supp. 3d 386 (E.D.N.Y. 2017) ............................................................................... 14, 28

*Buonasera v. Honest Co., Inc.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016) ..................................................................................... 28

*Campbell v. Freshbev LLC*,
   322 F. Supp. 3d 330 (E.D.N.Y. 2018) ..................................................................................... 14

*Campbell-Clark v. Blue Diamond Growers*,
   No. 1:18-cv-5577-WFK (E.D.N.Y. Dec. 17, 2019) ................................................................. 13

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996) .................................................................................................... 27

*Cohen v. S.A.C. Trading Corp.*,
   711 F.3d 353 (2d Cir. 2013) .................................................................................................... 27

*Davis v. Hain Celestial Grp., Inc.*,
   297 F. Supp. 3d 327 (E.D.N.Y. 2018) ..................................................................................... 29

*Elkind v. Revlon Consumer Prods. Corp.*,
   No. 14-2484, 2015 U.S. Dist. LEXIS 63464, (E.D.N.Y. May 14, 2015) ................................. 29

*Fermin v. Pfizer Inc.*,
   215 F. Supp. 3d 209 (E.D.N.Y. 2016) ........................................................................ 13, 14, 15

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) .................................................................................................... 13

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ..................................................................................................... 13

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015) ................................................................................ 29, 30

iii

*In re Frito-Lay North America All Natural Litigation*,
   12-MD-2413, 2013 U.S. Dist. LEXIS 123824, (E.D.N.Y. Aug. 29, 2013)........................ 25, 27

*In re Trader Joe's Tuna Litig.*,
   289 F. Supp. 3d 1074 (S.D. Cal. 2017)........................................................................................ 9

*International Prods. Co. v. Erie R. R. Co.*,
   244 N.Y. 331 (1927) ................................................................................................................. 26

*J.A.O. Acquisition Corp. v. Stavitsky*,
   8 N.Y.3d 144 (2007) ................................................................................................................. 26

*Kimmell v. Schaefer*,
   89 N.Y.2d 257 (1996). .............................................................................................................. 26

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)...................................................................................................... 27

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (2011) ............................................................................................................... 26

*McBeth v. Porges*,
   171 F. Supp. 3d 216 (S.D.N.Y. 2016) ...................................................................................... 27

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015)...................................................................................................... 13

*Patane v. Nestle Waters North America, Inc.*,
   314 F. Supp. 3d 375 (D. Conn. 2018)............................................................................. 9, 10, 11

*Patane v. Nestle Waters of North America, Inc.*,
   369 F. Supp. 3d 382 (D. Conn. 2019)....................................................................................... 11

*PDK Labs, Inc. v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997)...................................................................................................... 9

*Price v. L'Oreal USA, Inc.*,
   No. 17-civ-0614, 2017 U.S. Dist. LEXIS 165931 (S.D.N.Y. Oct. 5, 2017) .............................. 28

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
   No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971 (E.D.N.Y. July 26, 2019)....................... 13, 14

*Sarr v. BEF Foods*,
   No. 18-cv-6409-ARR, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020).............. 13, 27

*Schwartzco Enterprises LLC v. TMH Mgmt., LLC*,
   60 F. Supp. 3d 331 (E.D.N.Y. 2014)......................................................................................... 27

iv

*Solak v. Hain Celestial Grp., Inc.*,
No. 3:17-cv-0704-LEK-DEP, 2018 U.S. Dist. LEXIS 64270 (N.D.N.Y. April 17, 2018) ...... 14

*Tomasino v. Estee Lauder Cos., Inc.*,
44 F. Supp. 3d 251 (E.D.N.Y. 2014) ....................................................................................... 30

*Verzani v. Costco Wholesale Corp.*,
No. 09-cv-2117, 2010 U.S. Dist. LEXIS 107699 (S.D.N.Y. Sept. 28, 2010),
aff'd, 432 Fed. Appx. 29 (2d Cir. 2011) .............................................................................. 9, 13

*Weisblum v. Prophase Labs, Inc.*,
88 F. Supp. 3d 283 (S.D.N.Y. 2015) ....................................................................................... 28

## Statutes & Regulations

10 N.Y.C.R.R. § 5-6.3 ............................................................................................................... 11

21 C.F.R. § 135.110 ............................................................................................................. 8, 18

21 C.F.R. § 101.22 ...................................................................................................................... 8

21 U.S.C. § 337 ...................................................................................................................... 9, 10

21 U.S.C. § 343 ............................................................................................................... 10, 12, 17

Fed. R. Civ. P. 9(b) ................................................................................................................ 3, 27

New York GBL §§ 349-350 .................................................................................................. 2, 9, 13

Sherman Food, Drug, and Cosmetic Law, H.S.C. §§ 109875 ...................................................... 11

U.C.C. § 2-314 .......................................................................................................................... 25

v

## INTRODUCTION

This case is about Wegmans Food Markets, Inc.'s ("Wegmans'") private-label vanilla ice cream, and whether its designation as "vanilla ice cream" communicates to consumers an extensive series of implied messages about the source of the vanilla flavoring in the ice cream. Plaintiffs allege that it does, and then further allege – unsupported by any factual basis – that the contents of Wegmans' vanilla ice creams contradict those implied messages.  Common sense and common knowledge dictate the opposite conclusion – that consumers understand "vanilla" as a flavor designator, not an ingredient claim.  A reasonable consumer would not perceive the misleading messages alleged by Plaintiffs to be communicated about the products, and the remedies suggested by Plaintiffs would make no difference in a reasonable consumer's interpretation of the packaging.

Despite extensive allegations, many of them unrelated to the facts and substantive allegations of the lawsuit, Plaintiffs have failed to plead any plausible basis on which a consumer would either (1) receive any specific message from Wegmans' vanilla ice cream labeling as to the source of its vanilla taste, or (2) care what the source is, so long as the vanilla ice cream tastes of vanilla.  Consumers do not desire vanilla bean extract for its nutritive properties, for it is not a nutrient – it is strictly a flavoring, as Plaintiffs formerly conceded (Complaint, Dkt. 1 ¶ 74) and cannot dispute.  Some consumers prefer that flavorings and other ingredients be naturally derived, but Plaintiffs do not dispute that this is true of the flavorings used in Wegmans' ice creams, so that the label claim "No artificial colors, flavors or preservatives" is truthful and accurate.

Even if Plaintiffs could establish that the product's labeling communicates what they claim it does, Plaintiffs have failed to allege plausibly that the contents of the product differ from

1

what is allegedly represented.  Plaintiffs have no basis for anything that they allege about the contents of the product other than the occurrence of one term – "natural flavor" – in its ingredient statement, to which Plaintiffs attach unwarranted interpretations and exaggerated significance, and a chromatography analysis that is self-evidently worthless.

Plaintiffs' substantive allegations are concerned almost entirely with accusations that Wegmans violated the Food, Drug & Cosmetic Act (FDCA), as interpreted by Plaintiffs. Plaintiffs' entire basis for asserting consumer deception is that a violation of the FDCA is, *per se*, a deceptive practice under state consumer protection laws such as New York's GBL §§ 349-350. This theory is fatally flawed, for two primary reasons.  First, Plaintiffs incorrectly interpret the FDCA.  They mischaracterize and misconstrue the regulations under the statute, and rely on unreliable third-party sources and their own non-expert intuition for their interpretations.  In fact, Wegmans' practices comply with the FDCA.  Second, and moreover, the parties should not be litigating whether Wegmans violated the FDCA before this Court in the guise of New York GBL §§ 349-350 claims.  Not only are alleged violations of the FDCA not *per se* deceptive practices under GBL §§ 349-350, but Plaintiffs are expressly preempted from attempting to enforce the FDCA privately by positing state-law duties that are tantamount to FDCA compliance.

To plead a cause of action, Plaintiffs must step away from alleged technical violations of the FDCA, and plausibly plead that a reasonable consumer would interpret the phrase "vanilla ice cream" to mean that all of the vanilla flavor in an ice cream comes from vanilla bean extract, yet not interpret the phrase "vanilla flavored ice cream" – which Plaintiffs contend would cure both the regulatory non-compliance and any alleged deception – as meaning the same thing. This, Plaintiffs are unable to do.  Plaintiffs' strategy with this, and with the over 70 other lawsuits their counsel have filed against producers of vanilla-containing products in the past

2

year, is to spot what they believe is a technical violation of FDA flavoring regulations and then hold up food companies for expensive settlements.

Further, Plaintiffs' claims sound in fraud, including a specific count of fraud, and therefore must be pled with the particularly required by Fed. R. Civ. P. 9(b). There are almost no allegations specific to Wegmans' ice cream products in the Complaint, most of which is copy-and-pasted from one of Plaintiffs' counsels' many related lawsuits, and contains discourses on the history of vanilla, sweeping generalizations about the food industry's purportedly deceptive labeling practices, historical FDA enforcement correspondence referring to unrelated parties, and so forth. Plaintiffs' factual allegations about Wegmans' conduct and the contents of the Wegmans ice cream products are based on unfounded speculation about the meaning of their ingredient statements.

Plaintiffs plead assorted secondary causes of action that should all fail together with their core false-advertising claims, but in the alternative, should be dismissed because they are inappropriate for the situation alleged by Plaintiffs, who therefore do not and cannot plead necessary elements of these causes of action.

Finally, Plaintiffs Steele and Arriola plead for injunctive relief, which should be dismissed because, by their own admission, they are now aware of the alleged deception, and are at no risk of being deceived and injured in the future.

## FACTUAL BACKGROUND

Wegmans is a supermarket chain based in Rochester, New York, with over 100 locations in New York, Pennsylvania, New Jersey, Maryland, Massachusetts, Virginia and North Carolina. Wegmans markets and sells several varieties of ice cream and other frozen desserts under its store brand. Like most retailers, Wegmans does not manufacture its private-label ice cream, but

3

obtains it from a supplier, which develops its formulation and labeling in consultation with Wegmans.

For many food companies, developing a vanilla ice cream is not as simple as adding vanilla extract to the basic ice cream ingredients, as Plaintiffs pretend. Flavoring only with vanilla extract is sometimes done, but if it were the universal practice, every producer's vanilla ice cream would taste similar, and consumers would have little reason to prefer one brand over another. In a highly competitive market for consumer taste, ice cream producers seek not just a vanilla ice cream, but a different and better tasting vanilla ice cream than their competitors. To this end, many manufacturers flavor their vanilla ice creams not just with vanilla extract, but with a package of flavorings of which vanilla extract is the predominant, but not the only, flavoring component. These flavoring packages often are carefully developed by specialized flavor suppliers, with their proprietary formulations kept as a trade secret. Generically, these packages are termed "vanilla with other natural flavors," or "vanilla WONF."

Most, and sometimes all, of the secondary flavorings included in these flavor packages do not taste of vanilla, but contribute additional, subtle flavor notes to the finished product. These flavor notes have names in the industry, such as roundness, smoothness, creaminess, nuttiness, and others, that contribute to a vanilla ice cream with a rich, complex, and differentiated flavor profile. Another important purpose is often to provide consistency in the product's taste. Consumers want not only a great tasting vanilla ice cream; they also want their current carton to taste just like the previous ones. Vanilla, as an agricultural product requiring careful cultivation produced primarily in distant, developing countries whose practices can be difficult to control, can vary in taste from region to region, season to season, and grower to grower. Plaintiffs admit that additional flavorings, whether they taste of vanilla or not, help

4

ensure "greater consistency in pricing, availability and quality."  FAC ¶ 47.  The inclusion of such flavors does not mean that there is not enough vanilla extract to supply the vanilla taste of the final product, or that the ice cream would not still taste like vanilla if the other natural flavors were removed.  It simply helps produce a satisfying, consistent, high-quality product.

Each vanilla ice cream has its own formulation, with differing amounts of different ingredients, including flavorings, and is differently labeled.  Even for those products that feature "vanilla" as their only designated characterizing flavor, there are differences in the nature and amount of included flavorings and other ingredients depending on whether the product is, for example, Premium, or Organic, or contains a variation of vanilla flavoring such as "French Vanilla."  In ice creams that incorporate a vanilla WONF package, the flavor supplier, without disclosing its exact ingredients, generally certifies that the flavoring meets any requirements set by the ice cream manufacturer, such as being all-natural, organic, and so forth, as well as providing guidance on the declaration of the flavoring in the ingredient statement.  The ice cream manufacturer, and also the retailer in the case of a private-label product such as the Product here, create labeling for the ice cream that meets the requirements of the Food, Drug & Cosmetic Act and also is truthful and transparent to consumers.

Ice cream manufacturers, and retailers with private-label brands, change their product formulations and their labeling from time to time.  The product challenged in this suit likely had different flavoring ingredients and/or labeling at different times within the unspecified span in which Plaintiffs allege that violations occurred.

Plaintiffs first filed this suit on October 19, 2019.  The allegations of that suit pertained to any Wegmans ice cream product that included vanilla ice cream, including ones that also included other flavors of ice cream or other flavors mixed in, such as chocolate or coffee -  a

5

total of at least 22, and possibly as many as 33, Wegmans' ice cream varieties. Dkt. 1 at ¶ 6. Wegmans, in its motion to dismiss that Complaint, noted that it was obviously illegitimate for Plaintiffs' to interpret "natural flavor" in the ingredient statements of the majority of these products always to mean natural <u>vanilla</u> flavor, given the presence of other flavors. Dkt. 8 at 22-23. In the First Amended Complaint, Plaintiffs have withdrawn their list of these many ice cream varieties and any allegations as to them, and now define the "Products" as "ice cream purporting to contain flavor only from its natural characterizing flavor, vanilla." FAC ¶ 1. The only product specifically named and depicted is Wegmans Vanilla Ice Cream, FAC ¶ 3, which throughout most of the First Amended Complaint is called "the Product" in the singular, indicating that only one product, Wegmans Vanilla Ice Cream, is now being challenged.[1] E.g., FAC ¶¶ 64, 66, 72, 73, 75, 106, 111, 113 119, 125.

## PLAINTIFFS' ALLEGATIONS

None of the above-described sophisticated process of developing a great tasting ice cream fits into Plaintiffs' simplistic, cynical worldview. Plaintiffs allege that the designation of a product as "vanilla ice cream," regardless of the nature or context of the representation, implies, to consumers, <u>all</u> of the following:

1.      vanilla is the characterizing flavor;

2.      vanilla is contained in a sufficient amount to flavor the product;

---

[1] Other Wegmans vanilla ice creams identified in the prior Complaint, such as Wegmans Vanilla Light Ice Cream and Wegmans French Vanilla Ice Cream, are no longer mentioned in any allegation, and no longer appear to be part of this suit. This is supported by the fact that Plaintiffs' counsel, the day after filing the First Amended Complaint in this action, filed another purported class action with substantially identical allegations targeting Wegmans French Vanilla Ice Cream, which formerly was part of this suit. *See Cohen v. Wegmans Food Markets*, No. 1:20-cv-04109-RRM (EDNY) (Complaint, filed March 15, 2020).

B5027443.4

3.      the flavor is derived from vanilla extract or vanilla flavoring;

4.      no other flavors simulate, resemble, reinforce, extend or enhance flavoring from vanilla or permit less real vanilla to be used; and

5.      vanilla is the exclusive source of flavor.

FAC ¶ 4.  Except for #1, it is implausible that reasonable consumers perceive any, let alone all, of these meanings from the mere designation of a product as "vanilla ice cream."  Some of the implied meanings contradict each other:  vanilla flavoring, as Plaintiffs admit, may come from sources other than vanilla beans (FAC ¶ 99), so the third alleged meaning is inconsistent with the fifth.  Indeed, vanilla flavor, by definition, <u>must</u> come from a vanilla flavoring; otherwise it would taste like something else.  The second and fourth implied meanings are too vague ever to be proven or disproven – who, if not consumers through their purchasing decisions, is to be the judge of whether there is a "sufficient amount [of vanilla] to flavor the product"?  There is no accepted standard for such an amount.  If "simulate, resemble, reinforce, extend or enhance" in the fourth imputed meaning are not synonyms, what does each mean?  Moreover, Plaintiffs allege not the slightest factual basis to contend that consumers read "vanilla ice cream" to mean anything other than the first meaning – that the ice cream has a vanilla taste.

Plaintiffs allege that these implied statements are deceptive because, allegedly, there are other flavorings in the products besides vanilla extract; there are simulated vanilla flavorings in the products; and/or there is "de minimis" vanilla extract in the products, insufficient to impart vanilla flavor.  FAC ¶¶ 5.  The main basis for these allegations is that the ingredient lists on the side or back labels of the Products include the item "natural flavor" rather than specifying "vanilla extract."  FAC ¶¶ 72.  For the second allegation, Plaintiffs cite and attach a gas chromatography/mass spectrometry analysis, whose interpretation is entirely their attorneys',

7

with no support from the researcher who conducted the analysis or any other expert.  FAC ¶¶ 89-113.  As detailed below, this analysis is facially invalid and provides no support for the allegations.

## ARGUMENT

### I.    Plaintiffs' Attempt at Private Enforcement of the FDCA Is Preempted

Plaintiffs' Complaint is largely an epistle on Food and Drug Administration regulations. It contains no less than 30 citations to chapter 21 of the Code of Federal Regulations implementing the FDCA, and seven of its eight exhibits are outdated FDA correspondence with unrelated parties.  Much of the Complaint is spent arguing the intricacies of FDA regulations as they apply to various categories of ice cream and related products.  The only factual bases for Plaintiffs' allegations that Wegmans' ice cream labels deceive consumers are conclusory allegations that any Products not conforming to FDA regulations, as interpreted by Plaintiffs, are deceptive.  FAC ¶¶ 65-66, 68, 109.  Plaintiffs' most relied-on source for how consumers allegedly interpret "vanilla ice cream" is a 1979 letter from an FDA official to an ice cream company interpreting FDA regulations at 21 C.F.R. 135.110 and 101.22.  FAC Ex. C, Dkt. 10-3. That letter says nothing about how consumers, even in 1979, interpreted or perceived ice cream labels.  It is an advisory interpretation of the FDA's enforcement position at the time, like the rest of Plaintiffs' Exhibits A-F and H.

This focus on food and drug regulations as the sole basis for Plaintiffs' allegations of consumer deception reveals the Complaint for what it is:  Plaintiffs' attempt to privately enforce the FDCA, filed because Plaintiffs' counsel believes it has spotted a technical violation of FDA regulations.  But Plaintiffs are not the FDA, and are neither competent to interpret FDA regulations nor empowered to enforce them.  The right to enforce the FDCA rests exclusively

8

with the FDA.  *See* 21 U.S.C. § 337(a); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (there can be no private cause of action if a plaintiff's "true goal is to privately enforce alleged violations of the FDCA"); *Verzani v. Costco Wholesale Corp*., No. 09-cv-2117, 2010 U.S. Dist. LEXIS 107699, at *8 (S.D.N.Y. Sept. 28, 2010) ("The FDCA lacks a private right of action and therefore [a plaintiff] cannot rely on it for purposes of asserting a state-law consumer claim under G.B.L. § 349"), aff'd, 432 Fed. Appx. 29 (2d Cir. 2011).

Not only can Plaintiffs not explicitly seek to enforce the FDCA directly, they also cannot do so, under New York law, under the guise of a state-law cause of action.  Such claims are impliedly preempted by the federal statute.  "Where a state law claim would not exist but for a FDCA regulation, [21 U.S.C.] § 337(a) impliedly preempts the claim."  *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp. 3d 375, 387 (D. Conn. 2018) (dismissing state-law deceptive practices claims where "Each and every one of plaintiffs' claims are wholly FDCA-dependent"). "[I]n New York and many other states, courts have concluded that where a state has not adopted statutes that expressly mirror the FDCA, like California's Sherman Law, a plaintiff's claim that relies on the defendant's failure to comply with federal regulations is impliedly preempted."  *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1086 (S.D. Cal. 2017) (dismissing New York G.B.L. §§ 349-350 claims). "Where, like here, a plaintiff's true purpose is to enforce federal regulations, masquerading as a state-law claim where the state has not adopted a parallel statutory scheme is not sufficient to escape preemption."  *Trader Joe's*, 289 F. Supp. 3d at 1086.

There could be no clearer example of a lawsuit that seeks to enforce the Food, Drug & Cosmetic Act, thinly veiled as a state consumer protection law claim, than this case.  Every aspect of Plaintiffs' claims centers on one of the many FDA regulations cited throughout the Complaint, with no allegations of any independent state-law duty and no independent supporting

9

factual contentions.  The positions Plaintiffs adopt with respect to the interpretation of

Wegmans' labeling and ingredient statement would be implausible on their own merit, and

Plaintiffs can argue that they are unlawful only because they purportedly constitute technical

violations of the FDA and its implementing regulations.  This is truly a case that "would not exist

but for a FDCA regulation."  *Patane*, 314 F. Supp. 3d at 387.

Plaintiffs' core claims, and the almost exclusive focus of their Complaint, is on the three-

word phrase "vanilla ice cream," which is not just a marketing claim.  It is, as Plaintiffs correctly

alleged in their original Complaint, the "statement of identity" of the Products.  Dkt. 1 ¶ 6.

"Statement of identity" is the FDA's term of art for the formal name of a product, and it is

among the most closely regulated things on a product label.  Dozens, if not hundreds, of

regulations govern the phrasing of the statement of identity, and manufacturers, given a

particular product formulation, have relatively little discretion in how to construct it.  This is why

Plaintiffs must rely so heavily on their FDA regulatory discussion in challenging the phrase

"vanilla ice cream," but is also why it must be preempted.

An especially instructive case is *Patane v. Nestle Waters North America, Inc.*, 314 F.

Supp. 3d 375 (D. Conn. 2018) ("*Patane I*").  In that case, as here, Plaintiff challenged a food's

statement of identity – "spring water" in that case – and contended that it was deceptive because,

allegedly, it did not conform to the FDCA's requirements, lodging its claims under the laws of

several states, including New York.  *Id.* at 378.  The court initially dismissed the case as to all

states, noting that one preemption provision in the FDCA prevents anyone except the U.S.

government from enforcing its provisions (*id.* at 385, citing 21 U.S.C. § 337(a)), while another

preempts any state from imposing standards of identity that are "not identical" to those of the

FDCA (*id.* at 384-85, citing 21 U.S.C. § 343-1(a)(1)).

The one exception to FDCA preemption is that if a state has enacted food regulations imposing standards identical to those of the FDCA, then states may enforce those laws, and they may provide private rights of action to do likewise.  Some states, such as California, have enacted broad mini-FDCAs (the Sherman Food, Drug, and Cosmetic Law, H.S.C. §§ 109875), which may enable plaintiffs to, in effect, enforce the FDCA, if they are careful to plead violations of the Sherman Law instead of the federal statute.  Some other states have enacted more limited laws regulating particular foods, again imposing requirements identical to the FDCA, which may enable plaintiffs effectively to enforce the FDCA as to those products – again, provided they are careful to plead state, not federal, regulatory violations.  The plaintiffs in *Patane I* thus amended their complaint, and ultimately were allowed to proceed in New York, among other states, because New York has a limited law defining "spring water" as part of its Sanitary Code, and does so consistently with the FDCA.  *Patane v. Nestle Waters of North America, Inc.*, 369 F. Supp. 3d 382, 392-93 (D. Conn. 2019) ("*Patane II*"), citing 10 N.Y.C.R.R. § 5-6.3.  As to that product, plaintiffs' amendments met the requirement of pleading an independent state-law duty that could serve as the basis for their claims.  *Patane II*, 369 F. Supp. 3d at 388.

New York has no comprehensive state food regulatory law like California's Sherman Law, and it has no special regulation of vanilla ice cream like its regulation of spring water.  Therefore, under the analysis of *Patane I* and *Patane II*, Plaintiffs' attempts to enforce the FDCA are preempted and should be dismissed.  Further, because there exists no independent state law duty that Plaintiffs could allege, amendment of the Complaint would be futile and should not be allowed.

11

Although this is not the forum to litigate Wegmans' FDCA compliance in this motion, one aspect of Plaintiffs' FDA argument merits attention because it underscores the implausibility of Plaintiffs' consumer deception argument.  In Plaintiffs' view, assuming the Products' vanilla taste comes predominantly from vanilla bean extract but is supplemented by vanilla-imparting flavors naturally derived from other plants, everything can be cured by inserting the word "flavored" between "vanilla" and "ice cream" in the Products' statement of identity.  FAC ¶¶ 61, 85, 112.  In a nutshell, the whole Complaint is about the alleged omission of this one word, which Plaintiffs contend, wrongly, is required by FDA regulations and would make the statement of identity non-misleading.[2]  But it is implausible that consumers would interpret "vanilla flavored ice cream" so differently from "vanilla ice cream."  If, as Plaintiffs contend, consumers read "vanilla" as "vanilla bean extract," then why wouldn't "vanilla flavored ice cream" imply "ice cream flavored with vanilla bean extract"?  Plaintiffs have no plausible answer to this, because they have no genuine interest in how consumers understand the Products' labeling, and have conducted no investigation into this topic.  Plaintiffs mistakenly believe they have caught Wegmans, as well as many other companies, in technical violations of the FDCA that Plaintiffs can convert into a series of lawsuits.

---

[2] In an attempt to obscure their reliance on the FDCA, Plaintiffs have removed explicit references in the First Amended Complaint to the fact that merely inserting the word "flavored" would render the Product label non-misleading.  But Plaintiffs cannot walk away from this theory, because it clearly would be all that is required by their interpretation of FDA regulations.  Plaintiffs cannot impose on Wegmans additional requirements inconsistent with the FDCA, because then their theory would be preempted under the Act's implied preemption provisions, 21 U.S.C. § 343-1(a)(1).

## II.   Plaintiffs Fail to Allege a Plausible Deception

### A.   Legal Standard

To prove conduct is materially misleading as required under New York General Business Law §§ 349 and 350, a plaintiff must demonstrate that "a reasonable consumer acting reasonably under the circumstances" would be misled. *Orlander v. Staples, Inc*., 802 F.3d 289, 300 (2d Cir. 2015).  A court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer.   *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).  In so doing, courts consider the entire context of the alleged misrepresentations, including disclaimers and other disclosures elsewhere on the packaging.  *See Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211-12 (E.D.N.Y. 2016); *Freeman v. Time, Inc*., 68 F.3d 285, 289 (9th Cir. 1995) (considering both large and small print in ad in dismissing consumer protection claims); *Verzani*, 2010 U.S. Dist. LEXIS 107699, at *5-7 (considering entire label on a food tray, which listed each item on the tray and its relative weight, in dismissing case alleging that the food tray's "net weight" label referred only to one item in the tray, not all of the items on the tray).

Although dismissal of false-advertising cases on this ground was once rare, a recent rash of meritless lawsuits has created a growing body of Rule 12 case law in this Circuit dismissing challenges to advertising claims because they would not deceive a reasonable consumer.  *See, e.g., Sarr v. BEF Foods*, No. 18-cv-6409-ARR, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020) (dismissing case against a food label because it would not communicate a misleading message to a reasonable consumer); *Campbell-Clark v. Blue Diamond Growers*, No. 1:18-cv-5577-WFK (E.D.N.Y. Dec. 17, 2019) (dismissing allegations that packaging for "nut and rice" crackers implicitly overstated their nut content); *Reyes v. Crystal Farms Refrigerated Distrib.*

13

*Co.*, No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971, at *8-16 (E.D.N.Y. July 26, 2019)

(dismissing implausible allegations that "made with real butter" on mashed potato product

implied absence of margarine); *Solak v. Hain Celestial Grp., Inc.*, No. 3:17-cv-0704-LEK-DEP,

2018 U.S. Dist. LEXIS 64270, at *8-36 (N.D.N.Y. April 17, 2018) (name of "veggie straws"

snacks and images of vegetables are truthful in that they imply the snacks are made from

vegetables, and do not reasonably imply that the snacks contain fresh, whole, ripe vegetables);

*Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 341 (E.D.N.Y. 2018) (truthful claim that a

juice is "cold-pressed" does not imply that it is only cold-pressed, and not also processed in any

other way); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (beer

did not mislead reasonable consumers that it was of Japanese origin where its Canadian origin

was clearly stated); *Fermin*, 215 F. Supp. 3d at 211-12 (unused volume of pill bottle did not

deceive consumers as to number of tablets where the table count was clearly disclosed on the

bottle).

### B.     No Reasonable Consumer Believes that Identifying "Vanilla" as a Flavor of Ice Cream Has Any of the Implications Alleged by Plaintiffs

The fundamental claim of the First Amended Complaint is that calling the Product

"vanilla ice cream" implies not just a flavor or taste claim, but an ingredient claim.  Plaintiffs

allege that "vanilla ice cream" communicates not just any ingredient claim, such as that the ice

cream contains vanilla extract, nor even that it is predominantly flavored with vanilla extract, but

that it must be <u>exclusively</u> flavored with vanilla extract.

The plausibility of Plaintiffs' key allegation must be considered in the context of what

Plaintiffs contend that is required to completely cure the deception – simply the insertion of the

word "flavored," so that the product would be called "vanilla flavored ice cream."  FAC ¶ 61, 85,

112.  By adding this one word – arguably a redundant word, because as Plaintiffs formerly

14

admitted, vanilla is nothing but a flavoring (Dkt. 1 ¶ 74) – suddenly, Plaintiffs assert, no reasonable consumers would get the impression that vanilla extract is the exclusive flavoring, the exclusive source of vanilla flavoring, or even necessarily present in sufficient quantity to lend a vanilla character to the food.

Further, Plaintiffs completely ignore the context of other labeling claims and disclosures on the Product's labeling that may alter consumers' perceptions of the challenged statement. Plaintiffs' claim that "vanilla ice cream" communicates their five alleged ingredient claims also is implausible, as a matter of law, because it is thus independent of context.  Marketing claims are evaluated by consumers, and by courts, in their full context of other claims, disclaimers, and disclosures. *See Fermin* 215 F. Supp. 3d at 211-12.  Plaintiffs never describe or depict more than the front label of the Product, or consider all of the elements even of the front label.

Plaintiffs ignore the context of the Product's packaging, effectively insisting that inserting the word "flavored," and no other possible remedy, would clear up the alleged misrepresentation on the Products' packaging, because they are fully committed to the idea that if they have identified an instance of technical non-compliance with the FDCA, it relieves them of any burden to plead that the Product's labeling plausibly deceives consumers.  This is incorrect.  Even if this suit were not preempted, Plaintiffs must still plead plausibly that "vanilla ice cream," no matter where, how, and in what context it is used, communicates that an ice cream is flavored exclusively with vanilla extract.

As an example of the importance of context, one of the other statements on the front label of the Product – "Made with Milk, Cream and Natural Vanilla Flavor" – is likely to cure any alleged ambiguity in the Product's name, according to Plaintiffs' own logic.  This sentence does not say "Made with Milk, Cream and Vanilla Extract," or even "Made with Milk, Cream and

15

Vanilla." It says "natural vanilla flavor" – which consumers are likely to interpret as not necessarily vanilla extract, but just as likely some natural flavor simulating vanilla. Indeed, Plaintiffs consider it illogical that Wegmans would ever use the phrase "natural flavor" when it means "vanilla extract," and allege that therefore "natural flavor" always means non-vanilla-derived flavoring (FAC ¶¶ 72, 74, 77). By Plaintiffs' own logic, then, consumers understand that Wegmans must be referring to non-vanilla-extract natural flavors, at least in part, when it says "natural vanilla flavor."

There is no basis to allege that consumers receive any of Plaintiffs' alleged ingredient claims from the Product's packaging – especially compared with the cure that Plaintiffs assert would make the label fully compliant and non-misleading. The actual message communicated to consumers by "vanilla ice cream" is that the carton they are holding contains ice cream that tastes like vanilla, as opposed to chocolate, strawberry, or mango.

## C.   Plaintiffs Have No Basis for Their Assumptions about the Product Ingredients

### a.   Plaintiffs' Assumptions Based On the Product Label Are Invalid

Plaintiffs' first basis for alleging that the Products do not contain the represented type and amount of vanilla flavoring (i.e., vanilla bean extract in an amount sufficient to impart their vanilla flavor) is that the ingredient statements of the products include the item "natural flavor" rather than "vanilla extract." FAC ¶¶ 72, 74, 77. There are three errors with this assumption that are each individually fatal.

First, Plaintiffs plead around, but would have to concede, the fact that vanilla extract is a natural flavor, and that a manufacturer may therefore label a product flavored solely by vanilla extract with "natural flavor" as the ingredient representing vanilla extract in the ingredient statement. Plaintiffs evince their belief that Wegmans would never use "natural flavor" to

16

designate vanilla extract because Plaintiffs believe that a manufacturer would not pass up the chance to promote the presence of vanilla extract if it is in the product.  Plaintiffs also appear to assert, wrongly, that FDA regulations require natural flavors that have common and usual names to be broken out and named specifically.  FAC ¶¶ 76-78.  But the regulations are clear that Wegmans can list vanilla extract as a "natural flavor" in its ingredient list if it so desires. 21 U.S.C. § 343(i)(2) (spices, flavorings and colors may be designated in ingredient statements as spices, flavorings and colors, without naming each).  Therefore, when Plaintiffs allege that "That the Product contains flavor from sources other than the characterizing natural flavor can be confirmed because the front label from the ingredient list, identifying 'Natural Flavor' as the flavoring ingredient" [sic] (FAC ¶ 72), that is merely Plaintiffs' unwarranted supposition. "Natural flavor" in the ingredient statement is consistent with any of the following:  (1) a product flavored only with vanilla extract; (2) a product whose vanilla flavor component is supplied entirely by vanilla extract, that also has other natural flavors not tasting of vanilla; or (3) a product whose vanilla flavor component is predominantly supplied by vanilla extract, that also has other non-vanilla natural flavors, some of which may taste of vanilla.  This, alone, establishes that Plaintiffs' allegations are without basis, because Plaintiffs have no other support for their speculative assumptions about the contents of the Product than the declaration of "natural flavor" in their ingredient statements.

Second, Plaintiffs fail to acknowledge that a product labeled "vanilla ice cream" may also contain secondary, non-vanilla flavor notes.  They allege that an ice cream characterized as vanilla must contain only vanilla-imparting flavors, and nothing else.  FAC. ¶¶ 1, 4.  There is no basis in law, regulation, or common sense for such a contention.  It is as if Plaintiffs alleged that an apple pie, which often contains additional flavors such as cinnamon and nutmeg to

17

complement the main flavor of apple, is required to be labeled "apple and cinnamon and nutmeg pie" because every single flavor present must be disclosed.  Plaintiffs fail to acknowledge that that characterizing flavor of a food is only its <u>main</u> flavor, not its <u>only</u> flavor.  Leveraging this initial false and unfounded assumption, Plaintiffs then incorrectly deduce that when a vanilla product's ingredient statement discloses that it contains "natural flavors" or "other natural flavors," all of those flavors must be vanilla flavors.  Again, this allegation is without basis.  A vanilla ice cream may include other, non-characterizing flavor notes such as creaminess, roundness, or sweetness (pure vanilla extract is quite bitter), provided by other natural flavors, to make up a complex flavor profile.[3]  An ice cream manufacturer can either list vanilla extract and these other natural flavors separately or combine them all as "natural flavors," at its option.

In Plaintiffs' original Complaint, they did not limit their allegations to Products that feature only vanilla as their characterizing flavor, but also included products that feature vanilla together with other characterizing flavors, such as chocolate, strawberry, coffee, and many others. Dkt. 1 ¶ 6.  These products disappeared from the First Amended Complaint after Wegmans pointed out that in the context of these multiple-flavor Products, "natural flavor" in the ingredient statement obviously is an efficient way of referring to all of the vanilla and non-vanilla flavorings in the ice creams, including those providing or supporting the other featured flavors.  But Plaintiffs' logic is just as flawed when applied to the remaining Vanilla Ice Cream Product in the First Amended Complaint.  A vanilla ice cream can have non-vanilla flavorings as

---

[3] The FDA regulations, on which Plaintiffs rely so heavily, contemplate that ice cream may include added flavors not simulating the characterizing flavor(s).  If flavorings not simulating the characterizing flavor are artificial, 21 C.F.R. § 135.110 (3)(i) provides that the label shall bear the disclosure, "artificial flavor added."  If such flavors are natural, the regulations do not require any special disclosure.

18

well, just as an apple pie can have non-apple flavorings such as cinnamon.  "Natural flavor" can and does refer to those flavors, as well as to any naturally derived vanilla flavors.

        b.      <u>Plaintiffs' Chromatography Analysis Is Worthless</u>

Plaintiffs introduce a mass spectrometry analysis conducted by Dr. Thomas Hartmann as a purported basis for alleging that there is de minimis vanilla extract and that the vanilla flavor in the Product comes predominantly from non-vanilla extract vanillin.  Plaintiffs allege that besides the vanillin chemical that primarily imparts vanilla flavor, three other marker compounds - vanillic acid, p-hydroxybenzaldehyde, and p-hydroxybenzoic acid – should be present in vanilla extract in very small concentrations, ranging from 6% to 0.2% of the amount of vanillin. Plaintiffs claim that because Dr. Hartmann's analysis did not detect any of these markers, they have a plausible basis for their allegations with respect to the Product's flavoring.  FAC ¶¶ 89-108.

Significantly, the researcher who performed the mass spectrometry analysis does not back up Plaintiffs' claims.  In his report, Dr. Hartmann does <u>not</u> say that the chemical markers vanillic acid, p-hydroxybenzaldehyde, and p-hydroxybenzoic acid were not detectable in the sample, nor even that he looked for them.  Nor does he say that any chemicals not detected in the sample necessarily are not present in it.  Such a statement would be irresponsible, because a failure to detect any chemical in an analysis such as this could be the fault of the test itself, especially were – as here – the chemicals are expected to be present in very small concentrations.

Without getting into a review of the mass spectrometry's methodology, Plaintiffs' analysis suffers from one clear, fatal flaw that renders it worthless.  The analysis has no "control" condition to show what the results would look like if the same method were applied to an ice cream that contains whatever Plaintiffs would deem an adequate amount of vanilla extract.

19

Without such a control condition, Plaintiffs have no basis to allege that their test could have detected the tiny amounts of vanillic acid, p-hydroxybenzaldehyde, and p-hydroxybenzoic acid that they assert should be there.  Plaintiffs' assertion that these markers are "not detectable by advanced scientific means" is empty rhetoric, supported by no reason to believe that their test is capable of detecting them.  In fact, there is no basis to believe that Plaintiffs' mass spectrometry analysis does not look exactly like the analysis of an ice cream whose vanilla flavor derives solely from vanilla extract.

On the contrary, there is ample reason to suspect that the test commissioned by Plaintiffs was not capable of detecting the small amounts of vanillic acid, p-hydroxybenzaldehyde, and p-hydroxybenzoic acid expected to be present.  Extracting only the "flavor" components of a complex product such as ice cream for analysis is complex and imprecise, and there are several ways to do it.  Laboratory equipment cannot tell which chemicals in a substance are "flavors" and which are not, and relative to the main ingredients of ice cream – milk, cream, sugar, whey, and so forth – the total amount of flavorings is always very small.  As described in the First Amended Complaint and in the laboratory report, the researcher attempts to extract the chemicals of interest using a series of transformations, including vaporization, ionization (FAC ¶¶ 91-92), mixing with other chemicals, extraction with methylene chloride, clarification, drying with anhydrous sodium sulfate, and concentration with nitrogen Dkt. 10-7 at 2.  These transformations can cause reactions that modify or eliminate some chemicals in the substance.  The researcher must be focused on preserving the specific chemicals of interest in deciding upon the method of extraction.

The researchers who conducted Plaintiffs' mass spectrometry analysis were given the wrong assignment.  They were assigned to "extract and analyze the flavors from the vanilla ice

20

cream" (Dkt. 10-7 at 1) – not to test specifically for the presence of the chemical markers of concern to Plaintiffs, i.e., vanillic acid, p-hydroxybenzaldehyde, and p-hydroxybenzoic acid. A researcher tasked with determining whether those specific chemicals are present in the product would take special steps to preserve those chemicals during the extraction and preparation process. The researchers retained by Plaintiffs did not do this. As a result, the researchers' methodology was likely to have failed to preserve these chemicals. This is supported by the detection of vanillin ethyl ether, a derivative of vanillic acid, which is not expected to be present in either vanilla extract or artificial vanillin, and which is likely an artifact of the testing process. FAC ¶ 102; Dkt. 10-7 at 6. This could have been resolved by the simple procedure, standard in all fields of science, of having a control condition to establish that the test can detect the chemicals if they are there in the expected amounts. Because this simple, obvious step was not taken, Plaintiffs' mass spectrometry analysis tells nothing about the vanilla flavoring ingredients in Wegmans' vanilla ice cream, and should be disregarded.

### D.    The Ice Cream's Color Is Not Plausibly Deceptive

Plaintiffs also take issue with the color of the ice cream itself as depicted on the package, asserting that its "rich yellow-orange color" somehow imply that "it appears as if it contains more vanilla than it actually does." FAC ¶¶ 120-124.[4] These allegations are illustrated with an image of homemade vanilla ice cream, taken off the Internet, that does not depict or resemble the

---

[4] This motion largely ignores many of the irrelevant allegations of the First Amended Complaint copied and pasted from other lawsuits, that make no reference to Wegmans or its products. These include exegeses of the history of vanilla and ice cream (FAC ¶¶ 7-27); rhetoric about "food fraud" dating as far back as the 19th century (FAC ¶¶ 28-34); and speculation about a food-industry-wide conspiracy to use less vanilla (FAC ¶¶ 35-59).

color of Wegmans Vanilla Ice Cream.[5]  The actual color of Wegmans Vanilla Ice Cream, as depicted on the package shown in the First Amended Complaint (¶ 64), is nearly pure white, not at all resembling the image Plaintiffs used.  Here are the two images from the First Amended Complaint – the challenged Product on the left, and Plaintiffs' image of a homemade ice cream from the Internet on the right.

 

Plaintiffs' allegations regarding the color of Wegmans Vanilla Ice Cream thus are shown to be false by their own pleading.

Even if Plaintiffs' false factual allegation that Wegmans Vanilla Ice Cream is as deeply yellow-orange colored as a homemade vanilla ice cream were taken as true for purposes of this motion, Plaintiffs' allegations that the addition of annatto and/or turmeric for coloring purposes on some of the Products, purportedly in order to deceive consumers as to their vanilla content, show how far into the realm of implausibility Plaintiffs are prepared to carry their case.  Foods are routinely colored to make them more attractive and appetizing, as Plaintiffs formerly admitted with their own example of the same colorings being added to cheddar cheese to evoke

---

[5] See original image used by Plaintiffs at https://www.joyofbaking.com/VanillaIceCream.html.

milkfat.  Dkt. 1 ¶ 105.  These colorings can just as easily be incorporated into ice cream, which also contains milkfat, for the exact same reason.  Plaintiffs allege absolutely no basis for their contention that Wegmans adds natural coloring to its ice cream with either the intent or effect of deceiving consumers as to its vanilla content.

### III.    Plaintiffs Fail to Plead with the Requisite Particularity

A motion to dismiss should be granted where Plaintiffs have not pled "enough facts to state a claim to relief which is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a court generally must accept factual allegations pled in the Complaint as true, it need not accept at least three categories of allegations:  (1) conclusions of law cast as factual allegations, including all of Plaintiffs' contentions that the Products' labeling violates the FDCA or its regulations; and (2) unreasonable inferences; and (3) bare assertions amounting to nothing more than a formulaic recitation of a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-681 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between 'possibility and plausibility of entitlement to relief.'"  *Id.* at 678, quoting *Twombly*, 550 U.S. at 557.  The factual allegations in the Complaint must do more than "create[] a suspicion of a legally cognizable right of action" and "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Courts draw on judicial experience and common sense in making these determinations.  *Iqbal*, 556 U.S. at 679.

The two Plaintiffs are alleged to be residents of Pennsylvania and New York.  Both are alleged to have purchased an unspecified number of "the Product" at unspecified times within

23

the undefined limitations periods relevant to their claims.  FAC ¶ 171.[6]  The Complaint is bereft

of any allegations as to which of the alleged label claims described in the Complaint these

Plaintiffs saw, what they understood them to mean, and what they purportedly did in reliance on

these claims.

If this were merely an action by Plaintiffs Steele and Arriola to recover the purchase price

of the Products they bought, these Complaint allegations would be woefully inadequate to put

Wegmans on notice as to Plaintiffs' claims, and as to what defenses may be available.  At a

minimum, Plaintiffs would have to plead what products they bought, when they bought them (to

establish which version of Products they bought that may have changed over time, as well as

whether the suit is timely), what they paid, what packaging they saw, how they interpreted that

packaging, what they now believe about the Products, and why any alleged misrepresentation

about the source of a flavoring is material to them.  Plaintiffs are not relieved of these

requirements as to the individual Plaintiffs merely by styling their case as a class action.

## IV.     Plaintiffs' Ancillary Causes of Action are Improperly Pled and/or Inappropriate

Plaintiffs allege several common-law causes of action that piggyback on the facts of its

main claim lodged under state consumer protection statutes.  These ancillary claims all fail

because Plaintiffs' core theory of deception fails.  Even if Plaintiffs' deception theory held water,

however, the ancillary claims would have to be dismissed because they are inadequately or

improperly pled and/or simply inappropriate to the fact pattern Plaintiff alleges.

---

[6] In the original Complaint, these named Plaintiffs were merely alleged to have purchased one or more of the 22 to 33 different Products then challenged.  Dkt. 1 ¶ 154.  Now that the First Amended Complaint has been narrowed to just one Product, it seems improbable that both original named Plaintiffs actually purchased this specific Product, and suspicious that no details are alleged.

### A.    Plaintiffs Fail to State a Claim for Breach of Express Warranty or Implied Warranty of Merchantability

Plaintiffs allege that Wegmans "warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not." FAC ¶ 196.  These are allegedly implied, not express, representations.  Express warranty claims must be founded on express representations – that is, a literal affirmation of fact or promise about the specific thing Plaintiffs allege to be untrue.  *See In re Frito-Lay North America All Natural Litigation*, 12-MD-2413, 2013 U.S. Dist. LEXIS 123824, at *84-85 (E.D.N.Y. Aug. 29, 2013).

Plaintiff's claim for breach of implied warranty of merchantability must also be dismissed because Plaintiffs do not allege that the Product is not of merchantable quality.  A breach of the implied warranty of merchantability occurs only when a product is "unfit for the ordinary purposes for which such goods are used" (U.C.C. § 2-314(c)) – in this case, unfit for human consumption.  Plaintiffs do not and cannot plead this.  The only other plausible argument for a breach of implied warranty of merchantability is that the Product does not "conform to the promise or affirmations of fact made on the container or label" (U.C.C. § 2-314(f)), which is just a restatement of the definition of an express warranty, and requires a literal affirmation or promise.  These, again, were not pled; Plaintiffs' case is based entirely on implied, not express, claims.

### B.    Plaintiffs Fail to State a Claim for Negligent Misrepresentation

Plaintiffs' claim for negligent misrepresentation is inappropriate under these circumstances, in which Plaintiffs allege misstatements by an advertiser to a mass audience of consumers engaging in arm's-length transactions.  In New York, there must be a special

25

relationship of confidence and trust to establish potential liability for negligent misrepresentation. *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) (requiring "special relationship" that places an exceptional duty of care on a speaker, such as where plaintiffs were investors in a limited partnership and defendant was attorney and director of an affiliated company who personally solicited plaintiffs as investors). The duty to speak with care arises when "the relationship of the parties, arising out of a contract or otherwise, [is] such that in morals and good conscience the one has a right to rely upon the other for information." *Id.* at 263, quoting *International Prods. Co. v. Erie R. R. Co.*, 244 N.Y. 331, 338 (1927). To establish a claim for negligent representation the plaintiff must demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011); *see also J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007); *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 115 A.D.3d 128, 141 (App. Div. 2014) (cause of action dismissed for complaint's lack of allegation of a relationship of trust and confidence between the parties). Negligent misrepresentation claims generally are lodged against individuals with a direct, one-on-one relationship with the plaintiff, especially professionals having special expertise, such as attorneys, accountants and consultants. *Kimmell*, 89 N.Y.2d at 263-64. Applying this theory where Plaintiffs, and the putative class, are members of a mass audience of consumers, with no direct relationship to Wegmans, is improper, and the claim should be dismissed.

## C. Plaintiffs Fail to State a Claim for Fraud

Plaintiffs' claim for fraudulent misrepresentation fails because they has not pled fraud with the required specificity. "To state a cause of action for fraudulent misrepresentation under

26

New York law, a plaintiff must allege 'a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" *McBeth v. Porges*, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006)).   Claims of fraud "must be pled with particularity" beyond that of a normal claim. *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014). Further, under Fed. R. Civ. P. 9(b), Plaintiffs must plead "details that 'give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Id.*, quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).

New York courts have held that in false-advertising cases involving mass-marketed products, allegations that the defendant was commercially motivated to increase its market share, to satisfy consumer desires and expectations, and to increase its sales and profits do not give rise to the necessary strong inference that the defendant had an intent to defraud.  *See Sarr*, 2020 U.S. Dist. LEXIS 25594 at 26-27, citing *In re Frito-Lay North America All Natural Litigation*, 12-MD-2413, 2013 U.S. Dist. LEXIS 123824, at \*\*25 (E.D.N.Y. Aug. 29, 2013) and *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996).  Plaintiffs here do not even do this.  Their only allegation of fraudulent intent just circularly reiterates their allegation of a false or misleading statement:  "Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when they knew this was not true" [sic].  FAC ¶ 205.  No basis for any finding of "strong inference of intent to defraud" is pled.

27

### D.    Plaintiffs Fail to State a Claim for Unjust Enrichment

Plaintiffs' claim for unjust enrichment must fail because it is duplicative of their fraud and false advertising claims. An unjust enrichment claim is not available where it simply replicates another claim. *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296-97 (S.D.N.Y. 2015) (dismissing unjust enrichment claim that was duplicative of GBL claims); *Bowring*, F. Supp. 3d at 392 (same). This rule has been repeatedly applied by New York's federal courts to dismiss add-on unjust enrichment claims in cases similar to the current one. S*ee, e.g.*, *Price v. L'Oreal USA, Inc.*, No. 17-civ-0614, 2017 U.S. Dist. LEXIS 165931, at \*13 (S.D.N.Y. Oct. 5, 2017) ("All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants that the Products contain keratin. Accordingly, Plaintiffs' New York unjust enrichment claim is dismissed as duplicative."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) (dismissing unjust enrichment claim on the grounds that it was duplicative).

### V.    Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs in this case have no standing to seek injunctive relief. Numerous district courts in the Second Circuit have dismissed claims for injunctive relief in false advertising cases where, as here, the plaintiff is "now aware of the alleged misrepresentations that they challenge" and therefore "there is no danger that they will again be deceived by them." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 339 (E.D.N.Y. 2018) ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way. He therefore lacks standing to seek an injunction."); *Elkind v. Revlon Consumer Prods. Corp*., No. 14-2484, 2015 U.S. Dist. LEXIS 63464, at \*8 (E.D.N.Y. May 14, 2015); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc*., 148 F. Supp. 3d 285, 295-96 (S.D.N.Y. 2015) ("A

28

plaintiff lacks standing to bring an action for injunctive relief when, as here, she does not allege that she will suffer any future injury as a result of defendant's continued conduct"); *Tomasino v. Estee Lauder Cos., Inc*., 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (denying standing because plaintiff "has made clear that she does not believe the ANR products have the effects advertised by Estee Lauder").

## CONCLUSION

For the foregoing reasons, Wegmans respectfully requests that this Court grant its motion to dismiss Plaintiffs' First Amended Complaint.

Dated: April 20, 2020                              Respectfully submitted,

*/s/ August T. Horvath*
August T. Horvath (AH 8776)
*ahorvath@foleyhoag.com*
FOLEY HOAG LLP
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel:  (646) 927-5500
Fax (646) 927-5599

*Attorneys for Defendant Wegmans Food Markets, Inc.*

29

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 20th day of April 2020, a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service via ECF.

/s/ *August Horvath*
August T. Horvath