United States District Court
Southern District of New York                    7:19-cv-09227-LLS

Quincy Steele, Jimmy Arriola,
individually and on behalf of all others
similarly situated,

                          Plaintiffs,

              - against -

Wegmans Food Markets, Inc.,

                          Defendant

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the Complaint

SHEEHAN & ASSOCIATES
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

REESE LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*
Attorneys for Plaintiffs

Table of Authorities ............................................................................................... iii

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 1

I.      Legal Standard ........................................................................................... 1

        A.      Factual Allegations Should Be Accepted as True ............................ 1

        B.      Plaintiff has Shown that it is Plausible a Reasonable Consumer Would
                be Misled ........................................................................................... 2

        C.      Defendant's Labeling Should be Viewed in Context ......................... 2

        Federal Law Does Not Preempt Plaintiffs' Claims ................................... 5

II.     5

        A.      Regulatory Background ..................................................................... 5

        B.      There Is a Presumption Against Federal Preemption of State Law,
                Especially in Fields the States Have Traditionally Occupied, Such as
                Food Labeling .................................................................................... 6

        C.      The NLEA Explicitly Does Not Preempt Plaintiffs' Claims .............. 7

III.    Contrary to Defendant's Argument, New York State has Food Standards Identical to
        those of the FDCA ..................................................................................... 8

IV.     Defendant Cannot Dictate What a "Reasonable Consumer" Should Expect from "Vanilla
        Ice Cream" When Congress Already Did ................................................... 10

V.      Plaintiffs State a Claim Under GBL §§ 349 and 350 ................................. 14

        A.      Legal Standard .................................................................................. 14

        B.      Defendant's Statements Were Materially Misleading ....................... 14

                1.      FDA Guidance Demonstrates that the Ice Cream is Mislabeled ................. 15

                2.      Label Deficiencies Cannot Be Cured by Contextual Statements ................. 19

        C.      Plaintiffs Sufficiently Allege That They Have Suffered an Injury as a
                Result of Defendant's Deceptive Conduct ......................................... 20

        D.      Questions of Fact Remain Which Make Disposition of Case at Motion
                to Dismiss Stage Inappropriate .......................................................... 20

VI.    Plaintiffs Properly Plead Common Law Claims ................................................................ 22

     A.    Plaintiffs Properly Pleaded a Claim of Negligent Misrepresentation .................. 22

     B.    Plaintiffs Properly Pleaded a Claim of Fraud ....................................................... 23

     C.    Plaintiffs Adequately Alleged Breach of Express Warranty Claims .................... 24

     D.    Plaintiffs' Claim of Unjust Enrichment Is Not Duplicative ................................. 26

VII.   Plaintiffs Have Standing to Seek Injunctive Relief ........................................................ 27

Conclusion .................................................................................................................................. 28

**Table of Authorities**

**Cases**

*62 Cases of Jam v. United States*,
   340 U.S. 593, 71 S. Ct. 515,
   95 L. Ed. 566 (1951) ........................................................................................................ 11

*Ackerman v. Coca-Cola Co.*,
   No. 09-cv-00395, 2013 WL 7044866, (E.D.N.Y. July 18, 2013) ................................ 7, 21, 28

*Aetna Cas. And Sur. V. Aniero Concrete Co., Inc.*,
   404 F.3d 566 (2d Cir. 2005) ......................................................................................... 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 1, 2

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   No. 10-cv-4387, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ........................................ 6

*Ault v. J.M. Smucker Co.*,
   No. 13-cv-3409, 2014 WL 1998235 (S.D.N.Y. 2014) .................................................. 24, 25

*Avola v. La.-Pac. Corp.*,
   No. 11-cv-4053, 2013 WL 4647535 (E.D.N.Y. Aug. 28, 2013) ........................................ 25

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005) ........................................................................................................ 7

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*,
   290 F.3d 476 (2d Cir. 2002) ............................................................................................ 2

*Belfiore v. Procter & Gamble Co.*,
   No. 14-cv-4090, 311 F.R.D. 29, 38, 2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015) ............. 4, 28

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 1, 2

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003) .......................................................................................... 3, 14

*Broder v. MBNA Corp.*,
   281 A.D.2d 369, 722 N.Y.S.2d 524 (1st Dep't 2001) ...................................................... 4

*Buonasera v. Honest Co., Inc.*,
   208 F.Supp 3d 555 (S.D.N.Y. 2016) ............................................................................. 24

*Burton v. Iyogi, Inc.*,
   No. 13-cv-6926, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015) ........................................ 26

*Carias v. Monsanto Co.*,
No. 15-cv-03677, 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016) ......................................... 20

*Cohn v. Lionel Corp.*,
289 N.Y.S.2d 404 (1968) ...................................................................................................... 26

*Cummings v. FCA US LLC*,
401 F. Supp. 3d 288 (N.D.N.Y. 2019) .................................................................................. 26

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ................................................................................................. 28

*Eternity Glob. Master Fund. Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004) ................................................................................................... 23

*Federal Security Administrator v. Quaker Oats Co.*, 318 U.S. 218, 63 S. Ct. 589,
87 L. Ed. 724 (1943) .............................................................................................................. 12

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) ..................................................................................................... 4

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir.1995) ....................................................................................................... 4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ............................................................................................................... 27

*Gant v. Wallingford Bd. of Educ.*,
69 F.3d 669 (2d Cir. 1995) ....................................................................................................... 1

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F.Supp 3d 467 (S.D.N.Y. 2014) .................................................................................... 25, 27

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
774 N.E.2d 1190, 98 N.Y.2d 314 (2002) ................................................................................. 3

*Greene v. Gerber Products Co.*,
262 F.Supp 3d 38 (E.D.N.Y. 2017) ...................................................................................... 23

*Hanley v. Chicago Title Ins. Co.*,
No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ............................................... 1

*Henry v. Daytop Vill., Inc.*,
42 F.3d 89 (2d Cir.1994) ........................................................................................................ 26

*Holk v. Snapple Beverage Corp.*,
575 F.3d 329 (3d Cir. 2009) ..................................................................................................... 7

*Huang v. iTV Media, Inc.*,
   13 F. Supp. 3d 246 (E.D.N.Y. 2014) ................................................................. 26

*J.A.O.Acquisition Corp. v. Stavitsky*,
   8 NY3d 144 (2007) ............................................................................................ 22

*Jackson-Mau v. Walgreen Co.*,
   18-cv-04868, 2019 WL 5653757 (E.D.N.Y. Oct. 31, 2019) ................................ 27

*Jovel v. i-Health, Inc.*,
   No. 12-cv-5614 JG, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013)........................ 5, 6, 7, 13

*Kacocha v. Nestle Purina Petcare Co.*,
   No. 15-cv-5489 (S.D.N.Y. 2016)....................................................................... 20

*Karlin v. IVF Am., Inc., et. al.*,
   93 N.Y.2d 282 (1999) ......................................................................................... 3

*Larsen v. Trader Joe's Co.*,
   917 F. Supp. 2d 1019 (N.D. Cal. 2013) .............................................................. 13

*Libby, McNeill & Libby v. United States*,
   148 F.2d 71 (2d Cir. 1945).................................................................................. 12

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC,
   797 F.3d 160 (2d Cir. 2015)................................................................................ 24

*Mandarin v. Wildenstein*,
   16 N.Y.3d 181 (2011) ......................................................................................... 22

*Mantikas v. Kellogg Company*,
   910 F.3d 633 (2018)........................................................................................... 4, 19

*Mennen Co. v. Gillette Co.*,
   565 F. Supp. 648 (S.D.N.Y. 1983)...................................................................... 3, 14

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
   710 F.3d 71 (2d Cir. 2013)................................................................................. 20

*New York State Rest. Ass'n v. New York City Bd. of Health*,
   556 F.3d 114 (2d Cir. 2009)............................................................................... 5, 6, 7

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015)............................................................................... 3, 14

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y.2d 20 (1995) .......................................................................................... 3, 14

*Patane v. Nestle Waters North America, Inc.*,
    314 F. Supp 3d 375 (D. Conn. 2018) ..................................................................... 8

*Paulino v. Conopco, Inc.*,
    No. 14-cv-05145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ......................... 21

*Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005) ................................................................................. 3

*People ex rel. Spitzer v. Gen. Elec. Co.*,
    756 N.Y.S.2d 520 (App. Div. 2003) ..................................................................... 14

*Plumley v. Com. of Mass.*,
    155 U.S. 461 (1894) ............................................................................................. 7

*Quiroz v. Beaverton Foods, Inc.*,
    No. 17-cv-7348 (E.D.N.Y. 2019) ......................................................................... 10

*Ross v. Bolton,*
    904 F.2d 819 (2d Cir.1990) ................................................................................. 24

*Sciortino v. Pepsico, Inc.*,
    108 F. Supp. 3d 780 (N.D. Cal. 2015) ................................................................. 6

*Silva v. Smucker Nat. Foods, Inc.*,
    No. 14-cv-06154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ................... 20, 21

*Sims v. First Consumers Nat. Bank*,
    303 A.D. 2d 288, 758 N.Y.S. 2d 284 (1st Dept. 2003) ........................................ 4

*Sitt v. Nature's Bounty, Inc.*,
    No. 15-cv-4199, 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ......................... 20

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    No. 14-cv-03826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ......................... 20

*Weisman v. LeLandais*,
    532 F.2d 308 (2d Cir. 1976) ................................................................................. 1

*Williams v. Calderoni*,
    2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012) ........................................ 2

*Williams v. Schwartz*,
    529 F. App'x 89 (2d Cir. 2013) ............................................................................. 2

*Winick  Realty Grp. LLC v. Austin & Assocs.*,
    857 N.Y.S.2d 114 (1st Dep't 2008) ..................................................................... 26

*Woods v. Maytag Co.*,
    807 F.Supp.2d 112 (E.D.N.Y. 2011) ............................................................... 2

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ........................................................................................... 6

*Zupnik v. Tropicana Prods., Inc.*,
    No.  09-cv-6130 2010 WL 6090604 (C.D. Cal. Feb. 1, 2010) ........................... 13

**Regulations**

1 NYCRR § 17.19 ........................................................................................... 9, 10

1 NYCRR § 250.1(a) ............................................................................................ 9

1 NYCRR § 259.1(a) ............................................................................................ 9

21 C.F.R § 135.110(f) ....................................................................................... 15

21 C.F.R. § 10.85(f) .......................................................................................... 17

21 C.F.R. § 135.110 .......................................................................................... 15

21 C.F.R. § 135.110(a) ..................................................................................... 15

21 C.F.R. § 135.110(g) ........................................................................................ 5

21 C.F.R. § 169.175(b)(1) ................................................................................. 19

**Statutes**

21 U.S.C. § 301 .................................................................................................... 5

21 U.S.C. § 337(a) ............................................................................................... 8

21 U.S.C. § 341 .................................................................................................... 5

21 U.S.C. § 343 .................................................................................................... 5

21 U.S.C. § 343(a)(1) .......................................................................................... 5

21 U.S.C. § 343(g) ............................................................................................... 5

21 U.S.C. § 343(i)(2) ......................................................................................... 18

21 U.S.C. § 343-1 ................................................................................................ 5

21 U.S.C. § 343-1(a)(1) .................................................................................... 5, 8

AGM § 71-a ............................................................................................................ 10

N.Y. Gen. Bus. Law § 349 ............................................................................ 2, 3, 4, 13

N.Y. Gen. Bus. Law § 350 ............................................................................ 2, 3, 5, 13

**Federal Register**

56 Fed. Reg. 60,528 .............................................................................................. 14

56 Fed. Reg. 60,530 .............................................................................................. 14

**Rules**

Fed. R. Civ. P.  8(a) ................................................................................................ 3

Fed. R. Civ. P.  8(e)(2) .......................................................................................... 26

Fed. R. Civ. P.  9(b) ........................................................................................... 3, 23

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1, 2

**Other Authorities**

Advisory Opinion Letter from Hile to Adams, FEMA President, February 12, 1981 ................ 17

Advisory Opinion Letter from Hile to Industry Members, February 9, 1983 ............................ 16

Dr. Mark Black, The Use of Vanilla in Ice Cream: Rules, Regulations and Interpretations – All
    Are Needed for a Thorough Understanding .......................................................................... 15

Letter from J.L. Summers, Assistant to the Director, Division of Regulatory Guidance, Bureau of
    Foods to David B. Daugherty, Zink & Triest Company, Inc. April 10, 1979 ...................... 16

Letter from R.E. Newberry, Assistant to the Directory, Division of Regulatory Guidance, Bureau
    of Foods to Thompson, October 30, 1979. .......................................................................... 17

Letter from Taylor M. Quinn to Kenneth Basa, National Food Ingredient Company, August 22,
    1979 .......................................................................................................................................... 17

Letter from Taylor M. Quinn, Associate Director for Compliance, Bureau of Foods, to Glenn P.
    Witte, International Association of Ice Cream Manufacturers, May 31, 1979 ...................... 16

**Introduction**

Plaintiff submits this memorandum of law in opposition to defendant's Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Def. Notice of Motion and Memorandum of Law in Support ("Mem.").  For the reasons below, the motion should be denied it in its entirety.

**Argument**

**I.     Legal Standard**

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).

    A.     Factual Allegations Should Be Accepted as True

A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. "A claim has facial plausibility

1

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For purposes of a Rule 12(b)(6) motion, facts alleged by the nonmoving party are presumed to be true and construed in the light most favorable to plaintiff. *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F.Supp.2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

B.   <u>Plaintiff has Shown that it is Plausible a Reasonable Consumer Would be Misled</u>

Plaintiff needs only to assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," *Id.* at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557.

However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 556 U.S. at 559 129 S. Ct. at 1937. Plaintiff need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548; *Williams v. Calderoni*, 2012 U.S. Dist. LEXIS 28723, at *20 (S.D.N.Y. Mar. 1, 2012) (in evaluating a complaint under a Rule 12(b)(6) standard, the Court need not accept "implausible allegations or legal conclusions expressed as facts"), *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013)

C.   <u>Defendant's Labeling Should be Viewed in Context</u>

To state a claim pursuant to GBL §§ 349 and 350, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff was injured as a result. *See, e.g.*, *Oswego Laborers' Local 214 Pension*

*Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal citation omitted).

Thus, to prevail on their claims, Plaintiff need only provide proof of a deceptive act or practice and not "proof that a statement is false." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003); *see also People v. General Elec. Co.*, 756 N.Y.S.2d 520 (1st Dep't 2003) (explaining that "literal truth is not an availing defense" if the representation has the capacity "to mislead even reasonable consumers acting reasonably under the circumstances"). Additionally, there is no requirement that plaintiff prove that defendant's practices or acts were intentional, fraudulent or even reckless. Nor does plaintiff have to prove reliance upon defendant's deceptive practices. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d at 532-33; *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 655 (S.D.N.Y. 1983)

The purpose of these laws is "to secure an 'honest market place' where 'trust,' and not deception, prevails." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, 98 N.Y.2d 314, 324 (2002) (citation omitted). These statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad." *Karlin v. IVF Am., Inc., et. al.,* 93 N.Y.2d 282, 290 (1999). "The reach of these statutes provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State." *Id.* at 291 (alteration in original) (quotation marks and citation omitted). Moreover, a plaintiff is not required to meet the enhanced pleading requirements of Rule 9(b) for GBL §§ 349 and 350 claims but rather need only meet the Rule 8(a) standard. *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

Courts within this state have consistently held that "issues of deceptiveness and good faith are not resolved as a matter of law" through a fine print disclaimer. *Broder v. MBNA Corp.*, 281

A.D.2d 369, 371, 722 N.Y.S.2d 524 (1st Dep't 2001) (credit card agreement where the disclaimer was present "in the small print footnote to the solicitation offer" is insufficient to defeat a claim of deception).

Whether a particular act or practice is deceptive is intensely factual, and, therefore, motions to dismiss are disfavored. *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288, 289, 758 N.Y.S. 2d 284, 285-286 (1st Dept. 2003) ("Whether defendant's conduct was deceptive or misleading is a question of fact").

"To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Though defendant asserts the issues before the Court are unambiguous, a closer look reveals nuance and context, requiring a fact-intensive analysis. *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial") citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) (magazine sweepstakes mailer was not deceptive where "promotions expressly and repeatedly state the conditions which must be met in order to win" and such disclaimer "appears immediately next to the representations it qualifies"); *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, 311 F.R.D. 29, 38, 2015 WL 5781541, at *35 (E.D.N.Y. Oct. 5, 2015) (to establish a prima facie case under GBL § 349, "The entire mosaic is viewed rather than each tile separately.").

Moreover, technical accuracy is not a defense to a claim of misleading labelling. *Mantikas v. Kellogg Company*, 910 F.3d 633 (2018). Plaintiff's detailed allegations regarding Defendant's deceptive practices adequately pleads claims under New York General Business Law §§349 and

350; negligent representation; breach of express warranty; fraud; and unjust enrichment. Defendant's motion to dismiss the complaint should be denied in its entirety.

Defendant concedes that Plaintiff alleges a consumer-oriented conduct, but argues that Plaintiff fails to allege injury or a materially misleading conduct. Defendant simply ignores the allegations supporting Plaintiff's GBL claims.

## II. Federal Law Does Not Preempt Plaintiffs' Claims

### A. Regulatory Background

Congress originally enacted the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (the "FDCA"), in 1938. The FDCA generally prohibits misbranding of food. 21 U.S.C. § 343; *see New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2009). Under the statute, a food is misbranded if "its labeling is false or misleading in any particular," 21 U.S.C. § 343(a)(1), and if:

This statute's requirements are further specified by the ice cream regulations, which require its ingredients to be identified "as required by the applicable sections of parts 101 and 130" of the regulations. *See* 21 C.F.R. § 135.110(g).

In 1990, Congress enacted the Nutrition Labeling and Education Act of 1990, Pub. L. No. 101–535, 104 Stat. 2353 (the "NLEA"), which added an express preemption provision to the FDCA. 21 U.S.C. § 343-1; *Jovel v. i-Health, Inc.*, No. 12-cv-5614 JG, 2013 WL 5437065, at *3 (E.D.N.Y. Sept. 27, 2013). Under the provision, no state "may directly or indirectly establish . . . any requirement for a food which is the subject of a standard of identity established under [21 U.S.C. § 341] that is not identical to such standard of identity or that is not identical to the requirement of [21 U.S.C. § 343(g)]." 21 U.S.C. § 343-1(a)(1).

"The purpose of the NLEA . . . is not to preclude all state regulation of nutritional labeling, but to 'prevent State and local governments from adopting *inconsistent* requirements with respect

to the labeling of nutrients.'" *Astiana v. Ben & Jerry's Homemade, Inc.*, 10-cv-4387, 2011 WL 2111796, at *8 (N.D. Cal. May 26, 2011) ("*Ben & Jerry's*") (emphasis added) (quoting H.R. Rep. No. 101–538, at 10 (1990)). Thus, if Plaintiff seeks to bring an action under state consumer protection law alleging defendant's Product labeling is inconsistent with federal regulations and their identical state-level counterparts, the NLEA does not expressly preempt the state law claim. *Jovel*, 2013 WL 5437065, at *3 (NLEA preemption clause "has been repeatedly interpreted not to preempt requirements imposed by state law that effectively parallel or mirror the relevant sections of the NLEA").

Congress expressly limited the NLEA's preemptive reach, stating that the statute "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1]." NLEA § 6(c), 104 Stat. at 2364; *see New York State Rest. Ass'n*, 556 F.3d at 123. The note on construction "provides an 'express definition of the pre-emptive reach' of the NLEA." *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 797 n.5 (N.D. Cal. 2015). "Congress's enacted note on construction has the 'force of law' and 'works together' with the statute." *Id.* As the FDA has explained, the note "clearly manifests Congress' intention" that the NLEA is not to preempt state law beyond its express terms. State Petitions Requesting Exemption From Federal Preemption, 56 Fed. Reg. 60,528, 60,530 (Nov. 27, 1991).

B. <u>There Is a Presumption Against Federal Preemption of State Law, Especially in Fields the States Have Traditionally Occupied, Such as Food Labeling</u>

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). "Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). In all preemption cases, and particularly in those in which Congress has "legislated . . . in a field which the States have traditionally occupied," the courts "start with the assumption that the historic police powers of the

States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth*, 555 U.S. at 565.

Thus, in fields the states have traditionally occupied, "such as health and safety regulation," including regulation of food labeling, "there is a strong presumption against federal preemption." *Jovel*, 2013 WL 5437065, at *5; *see also Plumley v. Com. of Mass.*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control . . . it is the protection of the people against fraud and deception in the sale of food products."); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) ("Health and safety issues have traditionally fallen within the province of state regulation. This is true of the regulation of food and beverage labeling."). And "[a]s a result, where the text of a preemption clause is ambiguous or open to more than one plausible reading, courts 'have a duty to accept the reading that disfavors pre-emption.'" *New York State Rest. Ass'n*, 556 F.3d at 123 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

C.      The NLEA Explicitly Does Not Preempt Plaintiffs' Claims

The NLEA's "express preemption" provision at 21 U.S.C. § 343-1(a) only applies to state laws which impose requirements different from FDA regulations. "New York . . . broadly prohibits the misbranding of food in language largely identical to that found in the FDCA." *Ackerman v. Coca-Cola Co.*, No. 09-cv-00395, 2013 WL 7044866, at *6 (E.D.N.Y. July 18, 2013). Courts routinely recognize that state law causes of action are not preempted by the NLEA if they "seek to impose requirements that are identical to those imposed by the FDCA." *Id*. at *6. This is so because "a state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damages remedy for conduct that would otherwise violate federal law, even if the federal statute provides no private right of action." *Id* (citing *Bates*).

7

**III.     Contrary to Defendant's Argument, New York State has Food Standards Identical to those of the FDCA**

The Defendant cites "an especially instructive case" which "challenged a food's statement of identity – 'spring water' in that case – and contended that it was deceptive because, allegedly, it did not conform to the FDCA's requirements, lodging its claims under the laws of several states, including New York." Def. Mem. At 10 citing *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp 3d 375 (D. Conn. 2018) ("*Patane I*").

Defendant adopts the argument of that court and asserts that the present action is subject to implied preemption, 21 U.S.C. § 337(a) and express preemption. Def. mem. At 10 ("another [premption provision in the FDCA] preempts any state from imposing standards of identity that are 'not identical' to those of the FDCA" citing 21 U.S.C. § 343-1(a)(1)).

Defendant then acknowledges that the "one exception to FDCA preemption is that if a state has enacted food regulations imposing standards identical to those of the FDCA, then states may enforce those laws, and they may provide private rights of action to do likewise."

According to defendant, California has such a "broad mini-FDCA," but "New York has no comprehensive state food regulatory law like California's Sherman Law, and it has no special regulation of vanilla ice cream like its regulation of spring water." Mem. At 11.

This is not the case and fails to bring to the Court's attention the very thing defendant claims does not exist: New York State's adoption and incorporation of the FDCA. The reason why defendant is unable to locate the New York State food regulatory laws is because defendant has not adequately navigated through Title 1 ("Agriculture and Markets Law") of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").  In its defense, defendant's failure to identify New York's parallel and identical food labeling laws was

likely stymied by the relative disorganization of these regulations, as they are spread across ten chapters, each with various subchapters, Parts and Sections.

For instance, locating the sections of 1 NYCRR which specifically incorporate the FDCA labeling requirements entails drilling down to Chapter VI., "Food Control," Subchapter C., Food and Food Products, Part 259, § 259.1 ("Packaging and labeling of food.") ("the commissioner hereby adopts the current regulations [Parts 100-102] as they appear in title 21 of the *Code of Federal Regulations*").  *See* 1 NYCRR § 259.1(a).

The specific standards of identity established through the FDCA are also adopted by New York, but they are not all in one place.

The non-dairy standardized foods are placed within Part 250, "Definitions and Standards." *See* 1 NYCRR § 250.1(a)(17) (incorporating federal standards of identity for foods including vanilla products at "21 CFR part 169, containing the Federal definitions and standards for *Food Dressings and Flavorings* at pages 600-606.").

Standards of identity for dairy products are not where one might expect, in a chapter entitled "Milk Control." The relevant regulations are found within Subchapter A, Dairy Products in Part 17 (of 18 Parts), entitled "Requirements for the Labeling of, and Definitions and Standards of Identity for, Milk, Milk Products and Frozen Desserts."

After getting to the correct Part, the reader is faced with close to thirty sections, many which have been repealed.  The "vanilla ice cream" section is found at 1 NYCRR § 17.19, with the inconspicuous section title of "Additional standards of identity for frozen desserts."  1 NYCRR § 17.19 states:

> The standards of identity for ice cream and frozen custard, goat's milk ice cream, ice milk, goat's milk ice milk, mellorine, sherbet, and water ices as set forth in sections 135.110, 135.115, 135.120, 135.125, 135.130, 135.140 and 135.160, respectively, of title 21 of the Code of Federal Regulations (revised as of April 1, 2010) are *adopted and incorporated by reference* herein.

> 1 NYCRR § 17.19, Additional standards of identity for frozen desserts. (emphasis added).

> In fact, New York Agriculture and Markets Law ("AGM") § 71-a ("Declaration of policy")

makes clear that:

> It is further declared to be in the interest of the dairy industry and of the consuming public that there be *uniformity of standards for frozen desserts as between the various states and the federal government* to the end that there may be free movement of frozen desserts between the states and to the end that the inefficiency, needless expense, and confusion caused by differences in products sold under the same name, and *differences in labeling of identical products may be eliminated*.

> (emphasis added).

Second, defendant has not argued that *if* these sections were invoked in the FAC, plaintiffs would adequately state a claim. According to defendant, these sections do not exist.  Should the Court require it, plaintiffs will file the identical FAC but include a footnote which states, "The federal regulations for vanilla ice cream are mirrored by those incorporated and adopted by New York State."

## IV.  Defendant Cannot Dictate What a "Reasonable Consumer" Should Expect from "Vanilla Ice Cream" When Congress Already Did

According to defendant, the FAC's "technical" allegations are irrelevant to a "reasonable consumer."  Def. Mem at 6 ("A reasonable consumer would not perceive the misleading messages alleged by Plaintiffs to be communicated about the products, and the remedies suggested by Plaintiffs would make no difference in a reasonable consumer's interpretation of the packaging.").

*Quiroz v. Beaverton Foods, Inc.*, No. 17-cv-7348 (E.D.N.Y. 2019) is instructive on this point. In that case, the plaintiff contended that the defendant's product, mustard marketed as

10

containing "no preservatives," contained citric acid. In support of her contention, the plaintiff referred to the statutory definition of a preservative. There, the court denied the defendant's motion to dismiss finding that the plaintiff's claim was "not premised on a violation of federal labeling requirements" but instead "it is based on the contention that the label 'no preservatives' is misleading because the product does in fact contain preservatives." *Id*.

The same logic applies to this case. Plaintiffs here cite often to the statutory definitions and requirements because they are the best touchstone available to define what is deceptive behavior. At the heart of the complaint, however, is an inherently deceptive act that would be deceptive "regardless of the existence of the FDCA and its implementing regulations." *Id*.

Defendant insists no "reasonable consumer would interpret the phrase 'vanilla ice cream' to mean that all of the vanilla flavor in an ice cream comes from vanilla bean extract." Def. Mem. At 7.

These arguments fail to grasp the purposes of requirements for standardized foods, which is what "vanilla ice cream" has always been.  FAC at ¶ 62 ("The ice cream standard of identity, 21 C.F.R. § 135.110, established in the early 1960s "provided for a system for designating characterizing flavors in ice cream which has come to be referred to as the '3 category flavor labeling.'"); ¶ 109 ("the standard for ice cream does not provide for the label designation of 'With other [natural] flavors' (WONF)"). *See 62 Cases of Jam v. United States*, 340 U.S. 593, 600, 71 S. Ct. 515, 95 L. Ed. 566 (1951) ("Section 403(g) was designed to protect the public from inferior foods resembling standard products but marketed under distinctive names.")

The touchstone for what a reasonable consumer expects of a product labeled as "vanilla ice cream" is not defendant, its attorneys, plaintiffs' counsel or the Court, but Congress.  Defendant's

position is similar to the respondent in *Federal Security Administrator v. Quaker Oats Co.*, 318 U.S. 218, 229, 63 S. Ct. 589, 87 L. Ed. 724 (1943).

The Quaker Oats Company had been marketing a farina product with added vitamin D, despite federal regulations authorizing this fortification in a product labeled "enriched farina." The Federal Security Agency seized the products because Quaker's farina failed to comply with the regulatory framework. However, this was hardly a per se or technical violation. The hearings for the farina standards contained significant testimony from expert nutritionists and consumer organizations which stated:

> that such products, because of the variety and combination of added ingredients, are widely variable in nutritional value; and that consumers generally lack knowledge of the relative value of such ingredients and combinations of them…the number, variety and varying combinations of the added ingredients tend to confuse the large number of consumers who desire to purchase vitamin-enriched wheat food products but who lack the knowledge essential to discriminating purchase of them; that because of this lack of knowledge and discrimination they are subject to exploitation by the sale of foods described as "enriched," but of whose inferior or unsuitable quality they are not informed.

*Fed. Sec. Adm'r v. Quaker Oats Co.*, 318 U.S. 218, 226.

Though the Seventh Circuit Court of Appeals found the evidence presented as to consumer confusion "conjectural," the Supreme Court reversed, finding the "[Food, Drug and Cosmetic] Act does not contemplate that courts should thus substitute their own judgment for that of the Administrator."

Defendant's emphasis on the "context of other labeling claims and disclosures on the Product's labeling that may alter consumers' perceptions of the challenged statement" is inconsistent with the purpose of a standardized food. Def. Mem. At 20. The standards "reflect a recognition by Congress of the inability of consumers to determine, solely on the basis of informative labeling, the relative merits of a variety of products superficially resembling each other." *Libby, McNeill & Libby v. United States*, 148 F.2d 71, 73 (2d Cir. 1945).

As detailed herein, Plaintiffs' claims under GBL §§ 349 and 350, for breach of express and implied warranty, for fraud, for negligent misrepresentation and for unjust enrichment seek only to protect consumers from deceptive behavior..

The requirement that the statements on the Defendant's ice cream  labeling, including the "vanilla" representation, be truthful and non-misleading is identical in both Plaintiffs' state consumer protection claims and in federal law, 21 U.S.C. § 343(a)(1) (prohibiting labeling that is "false or misleading in any particular") and other relevant sections of the FDCA. *Jovel*, 2013 WL 5437065, at *6 ("[A] claim that [the defendant's] representations are false or misleading does not impose a requirement other than those imposed by federal law."); *Larsen v. Trader Joe's Co.*, 917 F. Supp. 2d 1019, 1023 (N.D. Cal. 2013) ("[W]hile federal law does prohibit state food labeling requirements that are not identical to federal requirements, the FDCA and California law contain *identical* prohibitions on false or misleading labeling."). Because Plaintiffs' state law claims that the "vanilla" representation is false and misleading seek to impose requirements that parallel the requirements of § 343(a)(1) and other FDCA sections, the NLEA does not preempt the claims. *Zupnik v. Tropicana Prods., Inc.*, No.  09-cv-6130 2010 WL 6090604, at *2 (C.D. Cal. Feb. 1, 2010) ("[A] private party equipped with a private right of action under state law is able to sue to enforce a state statute identical to § 343(a) . . . .").

**V.     Plaintiffs State a Claim Under GBL §§ 349 and 350**

    A.     <u>Legal Standard</u>

"To successfully assert a claim under either section of the GBL, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Thus, to prevail on their claims, Plaintiffs need only provide proof of a deceptive act or practice and not "proof that a statement is false." *Boule v. Hutton*, 328 F.3d 84, 93 (2d Cir. 2003); *see also People ex rel. Spitzer v. Gen. Elec. Co.*, 756 N.Y.S.2d 520, 523 (App. Div. 2003) (explaining that "literal truth is not an availing defense" if the representation has the capacity "to mislead even reasonable consumers acting reasonably under the circumstances"). Additionally, there is no requirement that Plaintiffs prove that Defendant's practices or acts were intentional, fraudulent, or even reckless. Nor do Plaintiffs have to prove reliance upon Defendant's deceptive practices. *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744–45; *see also Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 655 (S.D.N.Y. 1983).

    B.     <u>Defendant's Statements Were Materially Misleading</u>

Defendant argues Plaintiffs fail to allege materially misleading conduct as a matter of law because "a reasonable consumer would not perceive the misleading messages alleged by Plaintiffs to be communicated about the products, and the remedies suggested by Plaintiffs would make no difference in a reasonable consumer's interpretation of the packaging." Mem. at 1. Further, Defendant states, "[I]t is implausible that consumers would interpret 'vanilla flavored ice cream' so differently from 'vanilla ice cream." Mem. at 12. This stance ignores clear guidance issued by the FDA regarding the labelling of ice cream as well as promulgated FDA regulations, on an issue where preventing consumer deception was the Agency's purpose.

### 1.    *FDA Guidance Demonstrates that the Ice Cream is Mislabeled*

Leaving aside, for the moment, that Defendant seeks to speak for reasonable consumers, if it were the case that consumers would not interpret "vanilla" differently than "vanilla flavored," the FDA would not have promulgated rules specifically outlining the naming conventions to be used for ice cream. 21 C.F.R. § 135.110. General flavor regulations are not applicable to vanilla ice cream. FAC ¶ 68. The ice cream regulations specifically detail a "standard of identity" for "ice cream and frozen custard." 21 C.F.R. § 135.110. Ice cream is a regulated term, which by definition includes not only the milk and cream but also the flavor ingredients and what proportion of such ingredients are from the characterizing flavor. 21 C.F.R. § 135.110(a) (defining "ice cream"); *Id*. at § 135.110(f) ("the name of the food is 'ice cream'"). Plainly, given the regulatory definition of ice cream and the close scrutiny under which the naming conventions are placed, there is nothing implausible about Plaintiffs' allegations that a reasonable consumer would interpret "vanilla" to mean that the entire ice cream product is flavored exclusively by vanilla bean.

The labeling of ice cream has been a source of confusion. *See* FAC Exhibit B, Dr. Mark Black, The Use of Vanilla in Ice Cream: Rules, Regulations and Interpretations – All Are Needed for a Thorough Understanding ("There has been longstanding confusion within the U.S. food industry about how vanilla is defined for use in vanilla ice cream products"). The FDA has stepped in to clear that confusion. There are three categories of ice cream, as defined by the FDA Standard of Identity. 21 C.F.R. § 135.110, FAC ¶ 60-62. Vanilla ice cream in Category I contains only vanilla extract and is labeled as "vanilla" ice cream. FAC ¶ 60. Category II ice cream contains vanilla made up of one ounce of synthetic vanillin per gallon of 1-fold vanilla extract and may be labeled as "vanilla flavored." *Id*. Category III ice cream contains synthetic ingredients and may be labeled as "artificial vanilla." *Id*. Defendant's ice cream is labeled as a Category I ice cream. That is its label states solely that it is "vanilla" ice cream. FAC ¶ 64.

This schema has been underscored by guidance delivered to an ice cream company by the Bureau of Foods in 1979. The Assistant Director of the Division of Regulatory Guidance stated, "The labeling requirements for the declaration of flavors in the name of ice cream are specifically provided by the standard and is separate and apart from the general flavor regulations. Therefore, the standard for ice cream does not provide for the label designation of 'with other natural flavors' (WONF)." FAC Exhibit C, Letter from J.L. Summers, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods to David B. Daugherty, Zink & Triest Company, Inc. April 10, 1979. Specifically, "A product identified as 'Vanilla Ice Cream' is subject to the category I ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans." *Id. See also*, FAC Exhibit A, Letter from Taylor M. Quinn, Associate Director for Compliance, Bureau of Foods, to Glenn P. Witte, International Association of Ice Cream Manufacturers, May 31, 1979 ("The designation of a characterizing flavor for category I ice cream is based on the premise that only natural flavor derived from the product whose flavor is simulated may be used"). Defendant's product is labeled as a Category I ice cream. That is, the front label does not qualify its vanilla designation with the word "flavored" (Category II) or "artificial" (Category III). FAC ¶ 60-61.

The FDA has plainly stated in an advisory opinion that the "FDA must treat all natural flavors that simulate the characterizing flavor [vanilla] as artificial flavors when deciding what name should appear on the principal display panel." FAC Exhibit D, Advisory Opinion Letter from Hile to Industry Members, February 9, 1983 ("Hile Letter"). In 1983, the FDA was aware of Defendant's argument that "each vanilla ice cream has its own formulation, with differing amounts of differing ingredients." Mem. at 5. To this, the FDA responded clearly, "[T]here are available in the market place, natural flavoring compounds that resemble, simulate and/or enhance vanilla

16

flavor but are not derived from the vanilla bean." Hile Letter at 9. The use of these ingredients designate an ice cream as a Category II ice cream, necessitating the use of the word "flavored" on the front label. *Id. See also*, FAC Exhibit H, Letter from Taylor M. Quinn to Kenneth Basa, National Food Ingredient Company, August 22, 1979 ("The combination of vanilla-vanillin extract or vanilla-vanillin flavoring with natural flavors not derived from vanilla beans . . . may be marketed in a single package. However, such a combination should in no way imply or suggest that this combination is one of the standardized flavors covered under 21 C.F.R. 169").   Hile issued this opinion, and reaffirmed an advisory opinion from 1981, which further confirmed the interpretation in a 1979 letter to industry members. *See* FAC Exhibit F, Advisory Opinion Letter from Hile to Adams, FEMA President, February 12, 1981 (So that there would be no misunderstanding, Hile is "restating as an advisory opinion the advice contained in Mr. Newberry's letter to Mr. Thompson"); *see also* FAC Exhibit E, Letter from R.E. Newberry, Assistant to the Directory, Division of Regulatory Guidance, Bureau of Foods to Thompson, October 30, 1979 ("The non-vanilla flavor is deemed to simulate vanilla if the addition of the non vanilla flavor results in a reduction in the amount of vanilla bean derived flavor that would otherwise be used in a vanilla flavored ice cream"). "An advisory opinion represents the formal position of the FDA [and] obligates the agency to follow it until it is amended or revoked." 21 C.F.R. § 10.85(f). The opinion promulgated in the Hile letter has not been amended or revoked.

Defendant's own memorandum is a bald admission that its ice cream is not in compliance with federal ice cream labeling regulations. Defendant states, "Most, and sometimes all, of the secondary flavorings included in these flavor packages do not taste of vanilla, but contribute additional, subtle flavor notes to the finished product." Mem. at 4. However, it is not necessary that these "secondary flavorings…do not taste of vanilla."  The relevant issue is whether these

flavorings enhance the vanilla used and if their usage allows the Products to *use less vanilla* than they otherwise would. These are the exact type of ingredients referenced in the Hile Letter that categorize an ice cream as a Category II ice cream and necessitate the word "flavored" be inserted on the front label.

Defendant claims, "There is no basis to allege that consumers receive any of Plaintiffs' alleged ingredient claims from the Product's packaging – especially compared with the cure that Plaintiffs assert would make the label fully compliant and non-misleading [the insertion of the word 'flavored]." Mem. at 16.

Yet the FAC includes portions of Congressional Hearings where the elected officials charged with establishing what is and is not misleading are clear: if a flavor "tastes like" vanilla but is not from vanilla beans, then it should not be labeled as vanilla.

Further, the guidance, and the Congressional mandate to establish such standards, is clear and unambiguous. There is no leeway for the Defendant to speak for the reasonable consumer. Experts on the matter have taken great precautions to ensure that ice cream, specifically Category I vanilla ice cream, is labeled clearly and accurately so that it conveys what it means: an ice cream whose characterizing – and only – flavor is derived from vanilla beans.

Defendant's final attempt to cure its labeling deficiencies similarly fails. Defendant states, "[V]anilla extract is a natural flavor, and . . . a manufacturer may therefore label a product flavored solely by vanilla extract with 'natural flavor' as the ingredient representing vanilla extract in the ingredient statement." Mem. at 16. In support of this theory, Defendant relies upon 21 U.S.C. § 343(i)(2) for the contention that "spices, flavorings and colors may be designated in ingredient statements as spices, flavorings and colors, without naming each. Mem. at 17. This is plainly incorrect. Vanilla extract and vanilla flavoring are the only flavor that have standards of identity

and are required to be identified by name. 21 C.F.R. § 169.175(b)(1) ("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'"), FAC ¶ 82.

2.    *Label Deficiencies Cannot Be Cured by Contextual Statements*

Defendant alleges that "Plaintiffs ignore the context of other labeling claims and disclosures on the Product's labeling that may alter consumers' perceptions of the challenged statement." Mem. at 15. Moreover, Defendant asserts that it can make a roundly misleading claim such as "vanilla" ice cream on the front of the package because it also states, "Made with Milk, Cream and Natural Vanilla Flavor." *Id*.  Such a statement does not cure the initial deception of naming the product "vanilla" ice cream when it is, in fact, "vanilla flavored" ice cream. *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) is instructive on this point.

In *Mantikas*, the district court dismissed a complaint that alleged false advertising and deceptive business practices under the GBL, as well as under California law. The subject of the litigation was a cracker sold in boxes with the words "WHOLE GRAIN" or "MADE WITH WHOLE GRAIN" in large letters on the front. The district court determined that because the ingredients list was on the side of the box, any consumer who thought the crackers were made entirely with whole grains could see the first ingredient was enriched white flour, not whole grain. The district court granted the defendant's motion to dismiss. In reversing, the Second Circuit held that even though the crackers, in fact, contained whole grain and the front of the box accurately stated the amount of whole grain in the crackers per serving, "the conspicuous 'WHOLE GRAIN' and 'Made with WHOLE GRAIN' claims on the front and center of the Defendant's packaging communicates to the reasonable consumer the false message that the grain content of the crackers is exclusively, or at least predominately whole grain . . . ." Mantikas, 910 F.3d at 638–39. In other words, technical accuracy does not dispel a plaintiff's claim that a defendant's conduct is plausibly deceptive.

19

C.     Plaintiffs Sufficiently Allege That They Have Suffered an Injury as a Result of Defendant's Deceptive Conduct

"The law is clear that economic injury – including that caused by paying a premium – is sufficient to establish injury for standing purposes." *Kacocha v. Nestle Purina Petcare Co.*, No. 15-cv-5489 (S.D.N.Y. 2016) (citing *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) ("Even a small financial loss is an injury for purposes of Article III standing."). Here, plaintiffs clearly allege that they paid a premium for the misleadingly labeled ice cream. FAC ¶ 139.

D.     Questions of Fact Remain Which Make Disposition of Case at Motion to Dismiss Stage Inappropriate

Whether a reasonable consumer would be misled is usually a question of fact, and courts are reluctant to dismiss such claims on a motion to dismiss. *See, e.g.*, *Carias v. Monsanto Co.*, No. 15-cv-03677, 2016 WL 6803780, at *9 (E.D.N.Y. Sept. 30, 2016) ("[T]he instant litigation may very well turn on discrete factual questions"); *Sitt v. Nature's Bounty, Inc.*, No. 15-cv-4199, 2016 WL 5372794, at *8 (E.D.N.Y. Sept. 26, 2016) ("Usually the reasonable consumer determination is a question of fact") (citations omitted) (quotations omitted); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-03826, 2015 WL 5579872, at *4, *13–23 (E.D.N.Y. Sept. 22, 2015) (declining to dismiss complaint, noting "A federal trial judge, with a background and experience unlike that of most consumers is hardly in a position to declare that reasonable consumers would not be misled" (citations omitted) (quotations omitted); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-06154, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) (""What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss."); *Paulino v. Conopco, Inc.*, No. 14-cv-05145, 2015 WL 4895234, at *1, *5–6 (E.D.N.Y. Aug. 17, 2015) ("A reasonable juror could reach the conclusion that the label 'Naturals' means that the product is at least mostly comprised of natural

ingredients"); *Ackerman*, 2010 WL 2925955at *6, *22–23 (court cannot conclude that a reasonable consumer would not be misled as a matter of law).

Here, Defendant makes conclusory statements about what a reasonable consumer will believe. Mem. at 1 ("[T]he remedies suggested by Plaintiffs would make no difference in a reasonable consumer's interpretation of the packaging"); Mem. at 7 ("[I]t is implausible that reasonable consumers perceive any, let alone all, of these meanings from the mere designation of a product as 'vanilla ice cream'"); Mem. at 16 ("There is no basis to allege that consumers receive any of Plaintiffs' alleged ingredient claims from the Product's packaging.")

These are all statements in which Defendant's counsel seeks to speak for reasonable consumers. "What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss." *Silva*, at *10.

Additionally, Defendant claims "Plaintiffs' Chromatography Analysis Is Worthless." Mem. at 19. Defendant attempts to make conclusory statements about the inapplicability of the analysis done by researchers regarding the chemical makeup of their ice cream. Without offering any data or analyses of their own, defendant seeks to dismiss these laboratory findings out of hand. Whether or not these findings are correct is most clearly a question of fact that is not appropriate to be determined at this stage in the proceedings.  To the extent these findings are inaccurate, defendant has been free to provide a sample of the flavoring used in the Product to plaintiffs, which could quickly resolve this issue.

Defendant offers a critique of plaintiffs' GC-MS analysis which fails to withstand scrutiny. For instance, a one-fold Vanilla Extract, which is 1X, will have .1-.5% vanillin.

An average vanilla ice cream will have 1% of that and its vanillin level should be 0.001-0.0015. The p-hydroxybenzaldehyde and p-hydroxybenzoic acid should be 10-15x less than the

vanillin. The GC-MS analysis indicated 0.787 ppm, which means the amount of vanillin requires this number to be divided by 10,000 (ppm/10,000=percent).

The presence of the four vanilla markers are long established in the research literature. Moreover, their extraction through the methods applied here is not a unique or novel development. The methods used in plaintiffs' analysis are common in the trade.

Defendant claims the GC-MS analysis is not relevant because it lacked a "control." However, until defendant provides an ice cream sample that has not had flavors added to it, no control will be dispositive.

Finally, the extraction of the molecules is not performed manually, by a clumsy chemist with chopsticks trying to pick out the compounds from a melted sample of ice cream.  It is performed via a gas which passes over the sample, which obviates the need to be as "careful" as defendant claims is necessary.

## VI.    Plaintiffs Properly Plead Common Law Claims

### A.    Plaintiffs Properly Pleaded a Claim of Negligent Misrepresentation

In New York, "It is well settled that a claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information. *Mandarin v. Wildenstein*, 16 N.Y.3d 181, 173 (2011) (citing *J.A.O.Acquisition Corp. v. Stavitsky*, 8 NY3d 144, 148 (2007) (internal quotations omitted). Defendants claim plaintiff cannot plead negligent misrepresentation because there existed no special relationship and no misrepresentation. These assertions disregard facts asserted in the complaint as well as established law in New York State.

A special relationship sufficient to establish a claim of negligent representation existed between plaintiffs and defendant. A relationship is considered to approach that of privity if: "(1)

the defendant makes a statement with the awareness that the statement was to be used for a particular purpose; (2) a known party or parties rely on this statement in furtherance of that purpose; and (3) there is some conduct by the defendant linking it to the party or parties and evincing [the] defendant's understanding of their reliance." *Greene v. Gerber Products Co.*, 262 F.Supp 3d 38, 75 (E.D.N.Y. 2017) (citing *Aetna Cas. And Sur. V. Aniero Concrete Co., Inc.*, 404 F.3d 566, 584 (2d Cir. 2005)).

As to negligent misrepresentation, "because casual statements and contacts are prevalent in business, liability in the commercial context is imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Greene* F.Supp 3d at 75 (internal quotation marks omitted) (citing *Eternity Glob. Master Fund. Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004). Where a plaintiff fails to allege the existence of a special relationship, negligent misrepresentation is still properly pled where the plaintiff "emphatically" alleges (1) the person making the representation held or appeared to hold unique or special expertise and (2) the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Id*. at 75 (citing *Eternity Glob.*, 375 F.3d at 188).

Here, first, Plaintiffs adequately allege that Defendant held a unique or special expertise. FAC ¶ 191. Second, it defies logic that Defendant was not aware that consumers would rely upon the representations put on the front label of its ice cream products.

B.    Plaintiffs Properly Pleaded a Claim of Fraud

Defendant argues that Plaintiff's fraud allegations fail to be plead with the required specificity pursuant to Fed. R. Civ. P. 9(b). Mem. at 26-27. To satisfy Rule 9(b), "the complaint must: (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain

23

why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 171 (2d Cir. 2015). (internal quotation omitted). "Rule 9(b) requires only that Plaintiffs plead, with particularity, facts from which it is plausible to infer fraud; it does not require Plaintiffs to plead facts that make fraud more probable than other explanations." *Id.* at 175.

Here, Plaintiff has identified defendant as the speaker of the representations. Comp ¶ 204.

Plaintiff alleges Defendant made numerous fraudulent statements indicating that "the Products contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products." *Id*.

Plaintiff alleges Defendant made the misleading representations on the front label of their vanilla ice cream. FAC ¶ 1-4.

Finally, Plaintiff explains why the statements are fraudulent. Defendant's labeling of their ice cream is fraudulent because "Plaintiffs and class members desired to purchase, consume and use products or services which were as described and marketed by defendant and expected by reasonable consumers, given the product type." FAC ¶ 181.

The allegations in the Complaint thus meet the "primary purpose of Rule 9(b)" which "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

C.     Plaintiffs Adequately Alleged Breach of Express Warranty Claims

"To state a claim for breach of an express warranty, "a plaintiff must allege an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon the plaintiff's detriment" *Buonasera v. Honest Co., Inc.*, 208 F.Supp 3d 555, 567 (S.D.N.Y. 2016) (internal quotations omitted) (citing *Ault v. J.M. Smucker Co.*, No. 13-cv-3409, 2014 WL 1998235, at *6 (S.D.N.Y. 2014). Specifically, to state a claim for breach of an express warranty under New York Law, a plaintiff must allege (1) the existence of a

material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach. *Goldemberg v. Johnson & Johnson Consumer Cos*., 8 F.Supp 3d 467, 482 (S.D.N.Y. 2014) (citing *Avola v. La.-Pac.* Corp.*,* No. 11-cv-4053, 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013). Further, "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." *Ault*, 2014 WL 1998235, at *6.

Here, defendant contends simply that there was no express warranty. Mem. at 25 ("Express warranties must be founded on express representations – that is a literal affirmation of fact or promise about the specific thing Plaintiffs allege to be untrue").

Plaintiffs here allege that (1) Defendants expressly warranted that their vanilla ice cream had properties that it didn't, i.e. containing exclusively vanilla extract to flavor the ice cream; (2) Defendant's breached the express warranty on the label of, and/or in the advertising of their vanilla ice cream; (3) Defendants made such express warranty knowing the purpose for which its "vanilla ice cream" was to be used and advocating its use for such purpose; (4) Defendants' claims as to their vanilla ice cream did not conform to the express warranty made by Defendants and (5) Plaintiffs purchased the vanilla ice cream based up these representations. FAC ¶¶ 195-202.

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." *Goldemberg v. Johnson & Johnson Consumer Comp.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (quoting *Avola v. La.-Pac. Corp.*, No. 11-cv-4053, 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013). In *Goldemberg*, the court held that the defendant's motion to dismiss the claims for breach of express warranty must be denied where defendant advertised on their labels and marketing materials that

their products were "Active Naturals" when the products contained mostly synthetic ingredients. *Id*. at 482-83. Compare to here where defendant represents that its ice cream is flavored exclusively with vanilla, a representation which induced plaintiffs into purchasing defendant's products.

    D.    <u>Plaintiffs' Claim of Unjust Enrichment Is Not Duplicative</u>

        Defendant argues that the Court should dismiss Plaintiff's unjust enrichment claim because it is duplicative. Mem. at 21. However, "[u]nder Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir.1994) . To the extent that this Court finds that Plaintiff does not state claims pursuant to the GBL, fraud, negligent representation or breach of express warranty, the Court could hold that Plaintiff's unjust enrichment claim is viable. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 316-17 (N.D.N.Y. 2019). ("Plaintiff's claim for unjust enrichment arises outside of the scope of the Limited Warranty and is consequently not barred."). Thus, because questions of fact remain as to all of Plaintiff's claims, dismissal of Plaintiff's unjust enrichment claim at this stage is premature. *Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014) (declining to dismiss unjust enrichment claim as duplicative at motion to dismiss stage); *Burton v. Iyogi, Inc.*, No. 13-cv-6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (denying motion to dismiss New York unjust enrichment claim and stating that "it is well-settled that parties may plead in the alternative"); *Cohn v. Lionel Corp.,* 289 N.Y.S.2d 404, 408 (1968) ("Undeniably, a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery."); *Winick  Realty Grp. LLC v. Austin & Assocs.,* 857 N.Y.S.2d 114, 115 (1st Dep't 2008) ("[S]ince plaintiff is entitled to plead inconsistent causes of action in the alternative, the quasi-contractual claims are not precluded by the pleading of a cause of action for breach of an oral agreement.").

## VII.    Plaintiffs Have Standing to Seek Injunctive Relief

Plaintiffs have standing to pursue injunctive relief because Plaintiffs' inability to rely on the Products' labels in the future, which causes them to avoid purchasing the Products even though they would like to if they could trust the labels, constitutes an imminent threat of future harm sufficient to satisfy Article III's injury in fact requirement. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–85 (2000). Here Plaintiffs contend that they would not have bought the Products or would have paid less for them. FAC ¶ 137. This gives rise to the supposition that Plaintiffs cannot rely on Defendant's labels to convey accurate and truthful information.

Recently in *Jackson-Mau v. Walgreen Co.*, 18-cv-04868, 2019 WL 5653757 (E.D.N.Y. Oct. 31, 2019), the court found that the plaintiff could seek injunctive relief because her complaint stated she would purchase the product "again if she could be sure that the bottle actually contains what it is supposed to contain." *Jackson-Mau*, 2019 WL 5653757, at *3; *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) (holding that the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm").

Similarly, in *Davidson v. Kimberly-Clark Corp.*, the United States Court of Appeals for the Ninth Circuit held as follows:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.

27

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) (footnote omitted) (citation omitted).

Furthermore, many courts have concluded that the inability to rely on the labels in the future, as alleged in the FAC, constitutes a threat of harm and that to hold otherwise would eviscerate the New York consumer protection statute. *See, e.g.*, *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("Federal courts 'have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer,' because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief.'" (quoting *Ackerman* at *2–3, *14–15, *15 n.23 (E.D.N.Y. July 18, 2013)).

For all the foregoing reasons, Plaintiffs have standing to seek injunctive relief.

## Conclusion

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety or in the alternative, grant leave to amend or dismiss without prejudice.

Date:   April 4, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com


REESE LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025

28

Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*
Attorneys for Plaintiffs

7:19-cv-09227-LLS
United States District Court
Southern District of New York

Quincy Steele, Jimmy Arriola, individually and on behalf of all others similarly situated,

                Plaintiff,

        -against-

Wegmans Food Markets, Inc.,

                Defendant

Plaintiff's Memorandum of Law in Opposition to Defendant's
Motion to Dismiss the Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Date:   April 4, 2020

                /s/Spencer Sheehan
                Spencer Sheehan